# Exhibit 1

# AMENDMENT TO CONFIDENTIALITY, NONDISCLOSURE AND LIMITED USE AGREEMENT

This Amendment to **Confidentiality, Nondisclosure and Limited Use Agreement** ("Amendment") is made this 2 day of March, 2012 by and between **Alcoa Inc.**, a Pennsylvania corporation, with offices at 5600 North River Road, Suite 620, Rosemont, Illinois 60018 ("Alcoa"), and **Novelis Corporation**, a Texas corporation with offices at 3560 Lenox Road, Atlanta, Georgia 30326. Alcoa and Novelis being individually or collectively hereinafter referred to as "Party" or "Parties."

**WHEREAS**, Alcoa and Novelis each are parties to certain Confidentiality, Nondisclosure and Limited Use Agreement dated November 1, 2011 (the "Agreement"), which is incorporated herein by reference and a copy of which is attached as Exhibit A.

**WHEREAS**, the Parties desire to amend certain provisions of the Agreement as set forth below.

**NOW THEREFORE**, in consideration of these premises, the Parties hereby agree as follows:

1. **Incorporation of Recitals.** The above recitals are hereby incorporated into this Amendment as if fully set forth herein.

2. **Amendment to Section 1. Definitions.** Paragraph 1(c), Purpose, is deleted in its entirety and replaced with the following provision.

   c) "Purpose" shall mean discussions and information shared between the Parties relating to Alcoa's 951 coating process as provided on approximately 23 sample coils of Novelis aluminum sheet supplied by Novelis to Alcoa for provision to a third-party customer and the supply by Alcoa of 951 coating process chemicals to Novelis for use in support of the Ford P552 Program.

**Amendment to Section 4.** Non-Analysis. The following provisions are added to Section 4 of the Agreement:

   e) During the term, and in connection with Alcoa's treatment of the sample coils of Novelis aluminum sheet, Alcoa will provide to Novelis approximately 1000 gallons of the 951 coating process chemicals ("Chemicals"). The Chemicals are designated as Confidential Information hereunder. The Chemicals may only be used by Novelis in connection with the Purpose. Novelis may not analyze the Chemicals for chemical composition or cause the Chemicals to be analyzed for chemical composition and Novelis acknowledges and agrees that the chemical composition of the Chemicals

1

shall not be the subject of any chemical composition test performed by or at the direction of Novelis.

f) The submission of Chemicals to Novelis pursuant to this Agreement is not a sale nor offer for sale and Chemicals are for experimental purposes only, consistent with the Purpose.

**3.** **Amendment to Section 5. Termination.** Section 5. Termination of the Agreement is deleted in its entirety and replaced with the following provisions:

**5. Term and Termination**

a) The Term of this Agreement is one (1) year from the date first written above unless terminated early by either Party upon thirty (30) days written notice to the other Party.

b) All obligations of confidentiality, nondisclosure, and non-analysis under this Agreement will terminate five (5) years after the termination of this Agreement, but these obligations may be modified in a subsequent Technology Licensing Agreement as may be negotiated by and between the Parties.

**IN WITNESS WHEREOF**, the Parties to this Amendment have caused it to be executed by their duly authorized agents, effective as the date first written above.

Alcoa Inc.

By: _____

Title: Vice President - Commercial

3-2-12

Title: John Tillman

# CONFIDENTIALITY, NONDISCLOSURE
# AND LIMITED USE AGREEMENT

This **Confidentiality, Nondisclosure and Limited Use Agreement** ("Agreement") is made this 1 day of November, 2011 by and between **Alcoa Inc.**, a Pennsylvania corporation, with offices at 5600 North River Road, Suite 620, Rosemont, Illinois 60018 ("Alcoa"), and **Novelis Corporation**, a Texas corporation with offices at 3560 Lenox Road, Atlanta, Georgia 30326. Alcoa and Novelis being individually or collectively hereinafter referred to as "Party" or "Parties."

**WHEREAS**, Alcoa and Novelis each wish to investigate, analyze and possibly enter into various relationships or transactions between them, including but not limited to cooperating in connection with an evaluation of Alcoa's 951 coating process for purposes of supplying approximately 23 coil samples coated therewith to a third party (the "Relationship");

**WHEREAS**, during the course of the Relationship, it may become desirable for each Party ("Disclosing Party") to disclose to the other Party ("Receiving Party") information the Disclosing Party considers to be confidential and proprietary to it; and

**WHEREAS**, Alcoa and Novelis desire to protect the confidentiality of each other's Confidential Information.

**NOW THEREFORE**, in consideration of these premises, the Parties hereby agree as follows:

1. **Definitions.** As used herein:

    a) "Confidential Information" shall mean any and all information confidential and/or proprietary to either Party, including information of a technical, engineering, operational, strategic or economic nature, including physical embodiments thereof, disclosed, provided or revealed pursuant to this Agreement. Confidential Information disclosed in a documentary or tangible form shall be marked to indicate its confidential nature. Confidential Information disclosed in a form other than a tangible form shall be summarized in writing by the Disclosing Party and said writing shall be delivered to the Receiving Party within thirty (30) days of the disclosure of said Confidential Information. Confidential Information includes the existence of this Agreement and the nature of the activity hereunder.

    b) "Effective Date" shall mean the date first written above.

    c) "Purpose" shall mean discussions and information shared between the Parties relating to Alcoa's 951 coating process as provided on approximately 23 sample coils of Novelis aluminum sheet supplied by Novelis to Alcoa for provision to a third-party customer.

2.  **Confidentiality, Nondisclosure and Limited Use.** As part of each Party's covenant to protect the confidentiality of each other's Confidential Information disclosed during the course of the Relationship, each Party agrees that:

    a)  the Receiving Party will only use the Confidential Information in furtherance of the Relationship;

    b)  Confidential Information will be received and maintained by the Receiving Party in confidence and except as set forth herein, not disclosed to third parties without the prior written consent of the Disclosing Party which shall not be unreasonably withheld or delayed. The Receiving Party will exercise reasonable efforts to prevent third parties from gaining access to Confidential Information;

    c)  upon the Disclosing Party's written request, or upon early termination of this Agreement for cause, whichever is earlier, the Receiving Party will deliver to the Disclosing Party, or certify the destruction of, all Confidential Information received by the Receiving Party pursuant to this Agreement, including all copies thereof made by the Receiving Party. Information in an electronic form may be retained on backup tapes and other media for archive purposes;

    d)  the Receiving Party may reveal and communicate Confidential Information to its employees only when and to the extent necessary to further the Relationship and for the Purpose; and

    e)  the Receiving Party will inform its employees of the proprietary interest of the Disclosing Party in the Confidential Information and of the obligations of the Receiving Party with respect thereto, and will be responsible for any breach of this Agreement by its employees.

3.  **Exclusions.** The confidentiality and nondisclosure provisions of this Agreement will not apply to Confidential Information which:

    a)  was properly known to the Receiving Party prior to receipt thereof from the Disclosing Party;

    b)  is or becomes generally publicly available, other than by violation of this Agreement by the Receiving Party;

    c)  becomes available to the Receiving Party from a source, other than the Disclosing Party, which is entitled to disclose it;

    d)  is independently developed by employees of the Receiving Party who have had no access to the Confidential Information disclosed pursuant to this Agreement; or

    e)  the Receiving Party is legally required to disclose by a competent tribunal, provided that the Receiving Party has given timely notice to the Disclosing Party of such legal

obligation, enabling the Disclosing Party to seek a protective order or other appropriate remedy, or waive compliance with appropriate provisions of this Agreement.

4. **Non-Analysis.**

   a) During the term Alcoa will treat the sample coils of Novelis aluminum sheet with Alcoa's 951 coating process and provide Novelis such sample ("Samples"). All Samples may only be used by Novelis in connection with the Purpose. Novelis may not analyze Samples for chemical composition or cause Samples to be analyzed for chemical composition and Novelis acknowledges and agrees that the chemical composition of the Samples shall not be the subject of any test performed by or at the direction of Novelis.

   b) The type and quantity of Samples to be provided shall be mutually determined by the Parties. The submission of Samples to Novelis pursuant to this Agreement is not a sale nor offer for sale and Samples are for experimental purposes only, consistent with the Purpose.

   c) Novelis agrees to the extent practicable to disclose to Alcoa the testing data and results of all performance tests involving the Samples to the extent relating to Alcoa's 951 coating process (the "Results"). The Results shall constitute Confidential Information and each of Alcoa and Novelis agree to take all appropriate steps to maintain and protect the confidential nature of the Results in accordance with the terms set forth herein.

   d) Alcoa shall own all rights worldwide in and to all improvements to the Samples to the extent relating to Alcoa's 951 coating process made during the Term of this Agreement, if any, by Alcoa.

5. **Termination.**

   a) The Term of this Agreement is one (1) year from the Effective Date.

   b) All obligations of confidentiality and nondisclosure with respect to Confidential Information relating to the approximate 23 sample coils will continue for a period of three (3) years from the termination of this agreement.

6. **Breach.** If either Party ("Breaching Party") breaches any provision of this Agreement, the Breaching Party shall promptly notify the other Party ("Non-breaching Party") of such breach and shall take all reasonably necessary measures to remedy such breach within 30 days and if such breach is not remedied within such timeframe the Non-breaching Party may terminate this Agreement by written notice thereof and without prejudice to any other right, claim or remedy it may have at law or in equity. The Breaching Party agrees to indemnify and hold harmless the Non-breaching Party for and against all damages, losses,

claims, liabilities, costs and expenses which the latter may incur or sustain as a direct consequence of such breach.

7. **Export Control Laws.** With respect to any information disclosed pursuant to this Agreement:

   a) Each Party agrees to comply with all applicable U.S. export control laws and regulations, specifically including, but not limited to, the requirements of the Arms Export Control Act, 22 U.S.C. 2751-2794, including the International Traffic in Arms Regulation (ITAR), 22 C.F.R. 120 et seq.; and the Export Administration Act, 50 U.S.C. 2401-2420, including the Export Administration Regulations, 15 C.F.R. 730-774; including the requirement for obtaining any export license or agreement, if applicable. Without limiting the foregoing, each Party agrees that it will not transfer or disclose any information it receives from the other Party that constitutes an export controlled item, data, or service to foreign persons employed by or associated with, or under contract to that Party or the Party's suppliers, without the authority of an export license, agreement, or applicable exemption or exception.

   b) The Disclosing Party agrees to notify the Receiving Party if any information the Disclosing Party discloses is restricted by U.S. export laws or regulations.

   c) Each Party shall immediately notify the other Party to this Agreement if it is, or becomes, listed in any Denied Parties List or if the Party's export privileges are otherwise denied, suspended or revoked in whole or in part by any U.S. Government entity or agency.

   d) Each Party, whether U.S. or foreign, engaged in the business of brokering, exporting or manufacturing (whether exporting or not) defense articles or furnishing defense services, or related technical data as defined on the United States Munitions List 22 C.F.R. Part 121, represents that it is registered with the Office of Defense Trade Controls as required by the ITAR.

   e) Each Party shall be responsible for its own losses, costs, claims, causes of action, damages, liabilities, and expenses, including attorneys' fees, all expense of litigation and/or settlement, arising from any action or admission of that Party, its suppliers or subcontractors in the performance of any of its obligations under this Section 7.

8. **Miscellaneous.**

   a) <u>No Obligation to Disclose.</u> Nothing in this Agreement shall obligate either Party to disclose any Confidential Information.

   b) <u>Assignment.</u> This Agreement will inure to the benefit of and be binding upon the Parties hereto, their successors and permitted assigns. This Agreement or any rights or obligations hereunder may not be assigned by either Party, except with the prior written consent of the other Party.

c) <u>Waiver</u>. If either Party fails to enforce any provision of this Agreement, this is not a waiver of such provision, nor of any other provision of this Agreement. No waiver of any breach of this Agreement is a waiver of any other or subsequent breach.

d) <u>No Relationship</u>. Nothing contained herein or done hereunder will be deemed to constitute or create any relationship of principal or agent or partners or joint venturers between the Parties or any other relationship other than expressly, and not impliedly, set forth.

e) <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Parties as to the subject matter of this Agreement. Furthermore, if any terms of this Agreement conflict with the confidentiality provisions of a prior or contemporaneous agreement, such as a Purchase Order, between the Parties in connection with the Purpose of this Agreement, the confidentiality-related terms of this Agreement shall take precedence and, to the extent necessary, modify the confidentiality-related terms of such prior agreement.

f) <u>Modification</u>. This Agreement may not be released, discharged or otherwise modified except by an instrument in writing, signed by both Parties. All notices required or permitted under this Agreement must be in writing (facsimile is agreed to be sufficient) and will be addressed to the other Party at the address written above, said address subject to change by subsequent written notification.

g) <u>Severability.</u> If any term, provision, covenant or condition of this Agreement is held invalid or unenforceable for any reason, the remaining provisions of this Agreement shall continue in full force and effect as if this Agreement had been executed with the invalid portion eliminated, provided the effectiveness of the remaining portions of this Agreement will not defeat the overall intent of the Parties. In such a situation, the Parties agree, to the extent legal and possible, to incorporate a replacement provision to accomplish the originally intended effect.

h) <u>Disclosure to Affiliates, Customers, Suppliers and Subcontractors.</u> The Receiving Party may, subject to the provisions of Paragraph 2(b) disclose Confidential Information to any of its customers, suppliers or subcontractors as required by the Receiving Party provided that such customers, suppliers or subcontractors agree in writing to be bound by an agreement having Confidentiality provisions at least as restrictive as those contained herein. The Receiving Party shall use commercially reasonable efforts to ensure compliance with the terms of any such agreement but shall not be liable for any breach of such terms by any third party. The Receiving Party shall notify the Disclosing Party prior to disclosure of the Confidential Information. Notwithstanding the above, the Receiving Party may disclose Confidential Information to any of its affiliates as required by the Receiving Party provided that such affiliates agree to be bound by the confidentiality provisions contained herein. The Receiving Party shall be liable for any breach of such terms by any such affiliates.

i) <u>Facsimile Signatures</u>. The Parties agree that a facsimile signature has the same effect as an original signature. This Agreement may be executed in multiple copies, each of which is an original and all of which constitute one instrument.

j) <u>Governing Law</u>. This Agreement will be interpreted under the laws of the Commonwealth of Pennsylvania, USA, excluding choice or conflict of laws provisions.

**IN WITNESS WHEREOF**, the Parties to this Agreement have caused it to be executed in duplicate by their duly authorized agents.

Alcoa Inc.

By: _____

Title: VICE PRESIDENT - COMMERCIAL GLOBAL AUTOMOTIVE

Novelis Corporation

By: _____

Title: Assistant Secretary