IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARCONIC INC.,** | ) | CIVIL ACTION NO. 17-1434 |
| | ) | |
| Plaintiff, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| v. | ) | |
| | ) | |
| **NOVELIS INC.** *and* **NOVELIS CORP,** | ) | |
| | ) | |
| Defendants. | ) | |

SPECIAL MASTER REPORT & RECOMMENDATION # 5:

RE: MOTION TO DISMISS COUNTS I-VI AND VIII OF COMPLAINT

Novelis Inc, and Novelis Corp. ("Novelis", except where they are individually referred to below as "Inc."and "Corp.") together move for partial dismissal of the Complaint filed by Arconic under Rule 12 of the Federal Rules of Civil Procedure, alleging that Counts I-VI and VIII fail to state viable claims for relief. The primary grounds asserted in support of the motion are that: (1) the Complaint fails to plead compliance with a key condition precedent to termination of the license agreement between Arconic and Novelis; (2) the Complaint fails to plead sufficient particularity to provide factual support beyond mere conclusory legal statements in support of the causes of action alleging misappropriation of trade secrets and/or

confidential information; (3) the counts alleging common law torts are preempted and/or are pled in contravention of the "gist of the action" doctrine in Pennsylvania; (4) there is no plausibly asserted claim against Novelis Corp. . and (5) the independent count of the Complaint that seeks injunctive relief is impermissible, because a claim to an injunction is not an independent cause of action.

Arconic has filed an opposition to the motion, on all grounds asserted. Following full briefing and oral argument, the Special Master herein sets forth its recommendations to the Court with respect to each Count. For purposes of clarity, the Counts will be dealt with in the order in which they were argued at the oral argument, rather than presenting them in precise numerical order. In addition, the particular legal challenges asserted often relate to more than one count; therefore, the bases for the challenges will be discussed as they pertain to the counts challenged on each such basis where it is the same for multiple counts.

### Background of the Dispute

Arconic and Novelis have a history together, as both are competing suppliers of aluminum to Ford Motor Company for use in its F-150 series of pickup trucks. When Ford wanted certain aluminum parts used in these models to meet higher qualifications for bonding durability than had been used before, it asked both Arconic and Novelis (and others) to submit proposals for an aluminum pretreatment process to meet this goal.

The technology at issue in this case, described in broad brushstrokes, deals with pretreating aluminum sheets with chemicals that bind to the aluminum surface, which in

turn assist that aluminum surface to bind with other materials used in production. A951 is a chemical that is used to treat the surface of an aluminum sheet in the automotive industry.

Both companies made proposals for pretreatment to Ford. Ford ultimately opted to use the Arconic A951 pretreatment process. However, Ford requested that Arconic and Novelis enter into a license for A951 pretreatment so that both companies could be able to supply the pretreated aluminum to Ford.

Arconic alleges in its Complaint that in November, 2011, Novelis Corp. and Arconic signed a Nondisclosure Agreement ( "NDA") to facilitate the exchange of information between them; among other provisions, Novelis Corp. agreed that it would "only use the Confidential Information in furtherance of the Relationship [between the companies]." (Ex. A to NDA, section 2(a)). The NDA prohibited disclosure of Arconic's confidential information to third parties without prior consent. (Ex.A to NDA, section 2(b)) The provisions of the NDA upon which Arconic relies are set forth more fully in the Complaint. The term of the NDA was 1 year, unless terminated early by either party on written notice; however, important obligations under the NDA contemplated that they would be modified if the parties later entered into a Technology Licensing Agreement.

The NDA further stated that "all obligations of confidentiality, nondisclosure and non-analysis under this Agreement will terminate five (5) years after termination of [the NDA], but these obligations may be modified in a subsequent Technology Licensing Agreement as may be negotiated by and between the Parties."

Less than one year later, on August 15, 2012, Arconic and Novelis, Inc. did in fact enter into a Technology Licensing Agreement (the "License"), as had been expressly contemplated by the NDA. Thus, one Novelis entity ("Inc.", the parent corporation) entered into the License; the other Novelis entity ("Corp"., the US subsidiary) had earlier signed the NDA.

### The License Agreement

Both Novelis and Arconic entered into their own long-term supply agreements with Ford. Arconic alleges that Novelis Inc. entered into the License on August 15, 2012, attached to the Complaint as Ex. 2. In the License, Arconic agreed to provide Novelis "access to its Alcoa 951 Pretreatment Process and the Alcoa Technology and Know-How…". Novelis, for its part, negotiated and obtained other provisions in the License to ensure that: (1) the License stated that Novelis would continue to own the technology and know-how that Novelis had previously developed independently from Arconic; and (2) the License also had a provision stating that, if Novelis developed improvements on the Arconic process in implementing the A951 process, that intellectual property would be owned by Novelis. As a result of this negotiation, the Licensing Agreement between Arconic and Novelis, Inc. has provisions that inure to the benefit of both companies. These provisions are at the heart of this dispute.

By way of example, the License provides that "[e]ach Party shall retain its ownership rights with respect to Improvements it develops independently of the other Party." (Section 2.2.3; "Improvements" is defined as "any changes, additions, expansions, revisions,

4

enhancements, inventions, or developments that are made to the Alcoa Technology and Know-How." Section 1.9). Novelis and Arconic also agreed in the License that Novelis, Inc as the Licensee, would be the owner of its own technology and know-how developed during the term of the License. (Section 2.2.2). Thus, the License Agreement contained provisions that protected both companies' rights.

The duration term of the License runs from August, 2012, until Novelis ceases its participation in the Ford program that produces the F-150 series of pick-up trucks. Article 8 of the License has a termination provision that sets forth how a party is permitted to terminate the License for breach, which is set forth in section 8.2 of the License. It provides that either party has the right to terminate the License Agreement by written notice to the other "in the event the other Party is in material breach of any of its obligations hereunder and shall fail to remedy any such breach within thirty (30) days after notice thereof by the non-breaching Party." (Section 8.2)

The epicenter of the dispute is Novelis' patent application, identified as "the '440 US Publication", dated November 3, 2016, and its identical International counterpart, identified as "the '963 International Publication", dated November 10, 2016. Arconic contends in this case that those patent applications misappropriated its trade secrets; Novelis contends that the patent applications protected its own innovations that the License permitted it to own. The United States Patent and Trademark Office has thus far rejected the '440 patent application.

In its Answer and Counterclaim, Novelis contends, *inter alia*, that, on November 8, 2017, a year after the patent applications at issue, and approximately one week after the Complaint was filed, Arconic purported to terminate the License in breach of the notice and cure provisions. Novelis contends that the argument about trade secret disclosure is actually a pretext for a business problem of Arconic. Arconic denies those allegations.

The Motion to Dismiss filed by Novelis raises numerous challenges to certain counts of the Complaint: insufficiency of factual pleading to support the counts alleging misappropriation of trade secrets; failure to plead compliance with a condition precedent to termination of a contract; statutory preemption by the state and federal trade secrets protection statutes, DTSA and PUTSA; state law tort claims that violate the "gist of the action" doctrine in Pennsylvania; claiming an injunction as an independent count of the Complaint; and lack of sufficiently pled facts to support a cause of action against the Novelis entity that did not sign the License Agreement. Arconic filed a brief in opposition as to each ground of the Motion to Dismiss. Oral argument was held on February 21, 2018.

## Legal Standard - Motions to Dismiss

A complaint must allege enough facts to set forth a claim to relief that is plausible, and from which, if proven, a reasonable inference of liability could be drawn. In evaluating a complaint against this standard, courts may only consider the complaint, the exhibits attached thereto, matters of public records, and undisputedly authentic documents that form the basis of the claims. Legal conclusions, or recitations of elements of a cause of action

6

supported by mere conclusory statements must be disregarded in evaluating a Rule 12(b)(6) Motion to Dismiss. *Bell Atl. Corp. V. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Davis v. Wells Fargo,* 824 F.ed 333, 341 (3d. Cir. 2016).

Neither party disputes the applicable legal standard.

### Analysis:

**A. Insufficiency of Pleading Factual Allegations of Trade Secret Misappropriation in Counts I, II, III, IV.**

Arconic's breach of Contract claim alleged in Count I, and its misappropriation of Trade Secrets claims, alleging violation of the federal and state trade secrets protection statutes, DTSA and PUTSA, (Counts III and IV) are predicated in large measure upon its allegation that Novelis has misappropriated Arconic's trade secrets. The motion to dismiss contends that Arconic has insufficiently pled factual allegations sufficient to identify the allegedly "misappropriated and misused Arconic confidential proprietary information and trade secrets". Without reasonably particular identification of what these secrets are, Novelis contends, several counts of the Complaint fail to state more than legal conclusions, in contravention of the standard set forth in *Twombly* and *Iqbal,* and the Third Circuit case law following those precedents.

In Report & Recommendation #3, the Special Master has found that Arconic has insufficiently identified the trade secrets and confidential information alleged to have been misappropriated or misused. It has recommended to the Court that Novelis' Motion to

Identify Trade Secrets be granted, and has set forth a format for such identification in the proposed form of Order that accompanies that recommendation. (See analysis in Report & Recommendation #3; and Proposed Form of Order in Report & Recommendation #4)

Therefore, it is recommended that Counts I, III and IV, be dismissed without prejudice; and it is further recommended that the Court grant leave to amend those Counts to incorporate the pleading that Arconic will file to comply with the R/R #4, the Order to Identify Trade Secrets/Confidential Information with reasonable particularity. The motion to dismiss Count II will be discussed separately below.

To the extent that Novelis has also moved to dismiss any of the above-identified Counts on other grounds, those grounds will be discussed in separate sections of this Report & Recommendation.

B. <u>Sufficiency of Pleading in Count I - Failure to Plead Compliance with a Condition Precedent to Termination of the License.</u>

Novelis argues that Count I should also be dismissed on a separate and independent ground: failure to plead a condition precedent to termination of the contract for breach. Specifically, Novelis argues that the lawsuit wrongfully attempts to terminate the contract in violation of the License's terms requiring advance notice of breach and the opportunity to cure. Because Arconic's Complaint does not allege that it complied with those "Notice and Cure" provisions of Section 8.2 of the License, Novelis argues, Count I should also be dismissed on this ground.

Arconic filed the instant Complaint on November 1, 2016; one week later, Arconic sent a letter to Novelis, accusing it of material breach of the License sufficient to terminate the License. The grounds of the material breach were stated to be the allegations of the Complaint. Therefore, Novelis argues that Count I, which alleges Breach of Contract, is in essence an allegation of the right to terminate the License.

Arconic responds that Count I does not allege a claim of proper termination of the License, because its action purporting to terminate the License post-dated the filing of the Complaint. Arconic argues that Count I states a cause of action for breach of contract by Novelis, arising under the terms of the License Agreement. As stated above, the allegations of Count I are almost entirely based on Arconic's claim of misappropriation of trade secrets/misuse of confidential proprietary information, which have been discussed in Part A above.

The Special Master notes that Novelis' Counterclaim sets forth a claim for improper termination of the License by Arconic for failure to comply with the conditions precedent to termination, as set forth in Section 8.2. Thus, that issue remains in the case. The Special Master recommends that the motion to dismiss Count I on the ground of failure to comply with a condition precedent (as distinguished from other grounds) be denied based on Arconic's brief, which disclaims that Count I is a claim that it properly terminated the contract, and it shall not be tried on that basis. Novelis, however, will have the right to proceed on its Counterclaim alleging improper termination of the contract one week after the Complaint was filed, for the reasons more fully set forth in the Counterclaim.

Count I also serves as an alternate basis for a contractual claim of breach of the duty not to disclose proprietary confidential information, which would survive as an alternate basis for relief if Arconic's primary claim of Trade Secret misappropriation does not succeed in establishing that the '440 patent application disclosed Arconic trade secrets. As Arconic has argued in its brief, Pennsylvania law does permit pleading in the alternative; thus, permitting a properly amended Count alleging misappropriation of confidential proprietary information to be filed fulfills this principle of state law. However, in order to be maintained as an alternative pleading for alleged breach of duty relating to confidential proprietary information, it is recommended that Arconic be required to identify the alleged confidential proprietary information that forms the essence of this alternate claim for relief sought from either Novelis Inc. or Novelis Corp. If Arconic wishes to plead in the alternative in this manner, because of the exceptional degree of overlap of the allegations of trade secret misappropriation and confidential information misuse, Arconic should be required to identify any such alleged confidential proprietary information on the Trade Secrets/Confidential Information chart to be filed under seal pursuant to the Report & Recommendation #4, which is the Order that executes Report & Recommendation #3. That pleading should then be incorporated by reference in any amended Count that is filed as the alternative pleading.

The Special Master recommends to the Court that this form of alternate pleading be ordered to be pled by Arconic in a separate count of the Amended Complaint, to avoid confusion with Count I when the case is tried. In this way, Count I can remain as the

primary breach of contract count that alleges misappropriation of trade secrets in violation of the License Agreement; a new Count would allege breach of contract based upon the claim of misuse of confidential proprietary information, as an alternative pleading.  This separation of the primary and alternative theories of breach of contract is especially beneficial for logical organization and case presentation where some of the counts may ultimately be tried to a jury and others to the bench.  In this way, discovery can then proceed as to both the primary claim of trade secret misappropriation, and the alternative claim as it relates to confidential proprietary information of Arconic.

### C.  Motion to Dismiss Common Law Claims of Unfair Competition (Count V) and Conversion  (Count VI) on Grounds of Preemption and "Gist of the Action."

Counts V and VI incorporate all preceding paragraphs of the Complaint.  Count V adds 2 paragraphs claiming that the actions described in the prior paragraphs constitute intentional torts of "misappropriating Arconic confidential information, and…using Arconic confidential and trade secret information to undermine Arconic's business to help the business of Novelis", which "has led to a diminution in value of Arconic's trade secrets and other damages." [Complaint, paragraphs 139-141].

The allegation in Count V that premises the tort claim upon misappropriation of trade secrets is preempted by the Pennsylvania Uniform Trade Secrets Act ("PUTSA").  PUTSA is clear that it "displaces conflicting tort, restitutionary and other law of [Pennsylvania] providing civil remedies for misappropriation of a trade secret." 12 Pa.C.S. Section 5308.

Thus, PUTSA preempts the common law claims of Count V that are premised on alleged trade secret misappropriation.

To the extent that Arconic responds that Count V is broader, in that it also covers "employee poaching", Count V fails to plausibly allege employee poaching. Arconic has only made reference to two of its former employees who later became employed by Novelis: one such employee left Arconic 5 years ago and did not begin employment with Novelis until after his restrictive covenant had expired, which also occurred years ago. The other employee was terminated by Arconic prior to becoming employed by Novelis, a fact pattern that does not support a plausible claim of "employee poaching" by Novelis. [1]

A separate and independent ground for dismissal of Count V is found in Pennsylvania's "gist of the action" doctrine, most recently enunciated by the Pennsylvania Supreme Court in *Bruno v. Erie Ins. Co.,* 630 Pa. 79, 106 A.3d 48 (2014). In *Bruno,* the Court adopted the "gist of the action" doctrine that had been established in earlier case law, and established a test to determine whether a claim stated sounds in tort or contract. That test is premised on the origin of the legal duties owed by the parties to each other.

The *Bruno* Court noted that the test is derived from the line of prior case law that consistently regarded "the nature of the duty alleged" in drawing the line between tort-based claims and contract-based claims. *See, e.g., Velocity Int'l, Inc v. Celebrity Healthcare, Inc.,*

---

[1] The brief purports to add additional facts that are not in the Complaint: to wit, that a Novelis employee had a discussion with an Arconic employee to ask if that person was interested in a job at Novelis. Even if this vague conversation had been alleged in the Complaint, it would still not have met the plausibility prong of the tort claim of "employee poaching."

No. CV 09-102, 2012 WL 12895053 (W.D. Pa. 2012) (Conti, C.J.) (citing *Jones v. ABN Amer Mortg. Grp. Inc.,* 606 F.3d 119, 123 (3d Cir. 2010). As the Pennsylvania Supreme Court stated "…the nature of the duty alleged to have been breached, as established by the underlying agreements supporting the claim in a plaintiff's complaint [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract… ." Id. At 114.

Applying the *Bruno* test here, the allegations of the plaintiff all derive from the contract between the parties. Here, the contract is the License Agreement that provided the basis and terms upon which Arconic agreed to share its claimed trade secrets and/or proprietary confidential information with Novelis. The claim of Unfair Competition is premised on the same factual allegations of misappropriation of the trade secrets/confidential information that Arconic says that it shared with Novelis under the terms of the contractual License Agreement. Novelis' defense also rests upon the terms of that contract, because the License Agreement also set forth the terms upon which Novelis retained ownership of the intellectual property that embodies its own preexisting intellectual property, as well as its claimed improvements on the Arconic process.

Thus, which party owns the right to disclose any non-public information contained in the '440 patent application is governed entirely by their contractual duties to each other. Here, the License Agreement clearly set forth in detail the duties from each party to the other. The "gist" of this action is in contract, and the tort claim of unfair competition should be dismissed on this separate and independent ground.

The Special Master also noted above that Pennsylvania cases recognize a party's right to plead in the alternative, such that a claim for breach of confidential proprietary information can serve as an alternative cause of action if Arconic fails to prove that its claimed trade secrets meet the legal requisites for such a claim. However, this is not a basis upon which to keep Counts V and VI in this case. As discussed above, in Part B, a new count, added after Count I, as amended, will serve as a basis upon which Arconic can plead, in the alternative, that its confidential proprietary information was misused in connection with a breach of contract.

Count VI similarly pleads a claim of common law conversion, re-alleging and incorporating by reference all of the preceding paragraphs of the Complaint. Count VI adds paragraphs that allege that Arconic provided Novelis confidential information, including but not limited to Arconic Technology and Know-How; that Arconic had a property interest in its confidential information; and that Novelis has wrongfully used it without lawful justification and appropriated it without consent by filing the '440 patent application. [2].

---

[2] In Paragraph 146 of the Complaint, there is a single sentence that purports to support the claim of conversion by stating that Novelis hired former Arconic employees with knowledge of the A951 process who "could not perform their job functions without using Arconic's proprietary information." This is not a plausible claim of conversion. Paragraph 147, in similar vein, states in one sentence a purported claim of interference with prospective contractual relations. This, too, conflates a conversion cause of action with a different tort, and does not plausibly allege such tort. These nascent claims, thrown into a count for Conversion, should be dismissed for this reason.

For the same reasons stated above, i.e., PUTSA preemption and "gist of the action doctrine", as separate and independent grounds for dismissal, Count VI, alleging a tort claim of conversion, should be dismissed.

**Sufficiency of Pleading - Count VIII, alleging Injunctive Relief as a Claim**

Injunctive relief can be pled as a remedy sought, upon successful proof of Arconic's claim(s). It is not, however, an independent count of a properly pled complaint. Therefore, Count VIII should be dismissed, but the request for injunctive relief may continue to be included in the "Prayer for Relief" in the amended complaint.

**Sufficiency of Pleading - Causes of Action Alleged Against Novelis Corp. (Counts II, III (in part), IV (in part), V (in part), VI (in part), VIII (in part).**

Novelis Corp. ("Corp") is the US subsidiary of Novelis, Inc. ("Inc"). "Corp" signed the initial NDA that was in effect for approximately 10 1/2 months from Nov. 1, 2011 until August 15, 2012, when it was replaced by the subsequent Licensing Agreement. The License Agreement was signed only by "Inc.", the parent company.

Count II is the only count alleged solely against "Corp". (The other counts, with the exception of Counts I and VII, are alleged against "All Defendants".). Count II alleges that "Corp" breached the Non-Disclosure Agreement, which states that: "All obligations of confidentiality, nondisclosure, and non-analysis under this Agreement will terminate five (5) years after the termination of the this Agreement, but these obligations may be modified in a

subsequent Technology Licensing Agreement as may be negotiated by and between the Parties." (NDA at 2; Paragraph 37 of Complaint)

Paragraphs 26 - 37 of the Complaint contain factual allegations about the NDA's contractual provisions.

There are no allegations of specific misconduct by "Corp.", as distinguished from "Inc.", but the ability to parse precisely who within a parent/subsidiary corporate structure took particular action often depends upon information in the hands of one's adversary, prior to the commencement of discovery. Furthermore, there has been no briefing on which NDA provisions were replaced by the License.

Thus, at this time it is premature to grant the motion to dismiss "Corp.", except as to those counts where the entire count is to be dismissed as stated in prior sections of this Report & Recommendation with respect to Counts V, VI, VIII. With respect to those counts where dismissal with leave to amend is granted, the Chart identifying trade secret/confidential proprietary information that is alleged to have been misappropriated shall contain an indication of who at which entity did the act of misuse or misappropriation, if known. However, reasonably tailored and proportionate discovery should be permitted to allow Arconic to ascertain which individuals at which entity took the actions upon which the Complaint is premised. While Arconic should be expected to be able to identify its trade secrets/confidential proprietary information with reasonable particularity, it cannot be held to the same level of particularity as to which personnel took the actions complained of where the identity of such persons, and whether they were employed by "Inc." or "Corp." within its

adversaries' corporate structures, is not a lack of information sufficient to require dismissal of the Complaint at this stage of the litigation.

### Conclusion

For the foregoing reasons, the Special Master recommends that the Court:

(1). dismiss Count I without prejudice;

    (a) granting leave to amend Count I to allege breach of contract by misappropriation of trade secrets; and

    (b). granting leave to add a new count that alleges, as an alternative theory of pleading, breach of contract by misusing confidential proprietary information; provided that

    (c) such trade secrets and confidential proprietary information alleged in amended Count I and the new count set forth herein are identified with reasonable particularity in the chart form set forth in Report & Recommendation #4, all in accordance with the provisions of Report & Recommendation #3 and this Report & Recommendation;

(2). dismiss Counts III and IV without prejudice to amend those counts to incorporate by reference the Trade Secret/Confidential Proprietary Information identification chart recommended in Report & Recommendation #4 ;

(3). dismiss Counts V, VI and VIII with prejudice;

(4). deny the motion to dismiss Count II at this stage of the litigation based upon the distinction between the actions of personnel by "Corp" versus "Inc.";

(5).  grant the motion to dismiss Count II, on the ground of insufficient identification of the "confidential proprietary information" alleged to have been misused by "Corp." ; with leave to amend Count II to incorporate by reference the chart to be filed pursuant to Report & Recommendation #4, provided that the filing identifies such information.

A proposed Form of Order will be filed by the Special Master as Report & Recommendation #6.

Respectfully submitted,

S/ Faith S. Hochberg			March 22, 2018
Faith S. Hochberg, U.S.D.J. (Ret.)		Date:
Special Master