IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARCONIC INC.,** | ) | CIVIL ACTION NO.  17-1434 |
| | ) | |
| Plaintiff, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **NOVELIS INC.** *and* **NOVELIS CORP,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

On February 25, 2019, the court ordered Arconic Inc. ("Arconic") to show cause why summary judgment should not be granted on Arconic's trade secret and confidential information claims (counts I through VI of the second amended complaint) (ECF No. 282) due to its repeated failures to comply with court orders to identify its trade secrets and confidential information. After extensive proceedings, the show cause order is now ripe for disposition.

I.   <u>Introduction</u>

Arconic and defendants, Novelis Inc. and Novelis Corporation (collectively, "Novelis"), are competitors in the aluminum industry.  Ford Motor Company ("Ford") decided to make its popular F-150 pickup truck with aluminum, starting with the 2015 model year.  Arconic's A951 pretreatment process was selected for exclusive use in the Ford F-150 project.  Ford was unwilling to be dependent upon a sole supplier.  As a condition of selection, therefore, Ford forced Arconic to license its technology to Novelis.

In 2011 and 2012, Arconic and Novelis entered into a Confidentiality, Nondisclosure and Limited Use agreement ("NDA") and a technology access and license agreement ("License") (ECF No. 177-1, 177-2). As applicable to the present dispute, the License provided, among other things, that Novelis could use processes that were part of general industry practices, retained its own technology and know-how, and owned improvements it developed independent of Arconic. License §§ 2.2.1, 2.2.2, 2.2.3. Arconic's disclosures to Novelis took place in the context of three patents related to the A951 process, which by reason of the public nature of patents involved disclosures in the public domain.

Arconic initiated this lawsuit over three years ago, alleging that Novelis disclosed Arconic trade secrets and confidential information in a Novelis patent application. Notably, the trade secret and confidential information claims cannot be based on the A951 chemical itself – because the specific chemical was never disclosed to Novelis. (ECF No. 269, Ex. K at 16, filed under seal).[1] Because the alleged patent disclosures involved already-public information and Novelis' own improvements, the court concluded (and explained clearly and repeatedly) that before allowing Arconic to undertake extensive discovery into its competitor's technology, it was incumbent upon Arconic to first articulate, with specificity, what it contends are its own trade secrets and confidential information, as opposed to general industry practices or Novelis' authorized improvements to the process. The special master and court have engaged in repeated efforts since the inception of this case to have Arconic identify its claimed trade secrets and confidential information in order for the case to proceed. Arconic submitted four trade secret identifications ("TS ID"), TS ID ##1, 2, 3 and 4.[2] Each TS ID was unavailing. After TS ID #4,

---

[1] Given the subject matter, virtually all the relevant filings of the parties are under seal. This opinion was circulated to the parties prior to publication to ensure that no confidential information is disclosed.
[2] Each trade secret was also identified, in the alternative, as confidential information (ECF No. 521-7 at 112).

2

the court ordered Arconic to show cause why summary judgment should not be entered on its trade secret and confidential information claims "for failure to identify its alleged trade secrets and confidential information with reasonable particularity, as required by numerous orders of court." (ECF No. 282).

After extensive filings (including Novelis' motion to strike the voluminous submissions Arconic made in response to the show cause order, ECF No. 330), the matters were assigned to the special master. The special master heard oral argument on September 24, 2019, which the court attended. On July 14, 2020, the special master filed an 81-page Report and Recommendation ("R&R") #33 (ECF No. 510) under seal.[3] Pending before the court are objections to R&R # 33 filed by both parties (ECF Nos. 520, 521). The court heard oral argument by video conference on November 16, 2020. The objections to R&R #33 and resolution of the court's show cause order are ripe for disposition.

II. <u>Procedural Background</u>

The special master's R&R #33 thoroughly recites the applicable procedural history. The court adopts that recitation. This summary highlights some of the pertinent details.

A. Initial Proceedings

At the beginning of the case, Arconic wanted to quickly move. On November 27, 2017, Arconic filed a motion for expedited discovery into Novelis' alleged appropriation of its trade secrets and confidential information to determine whether Arconic could obtain injunctive relief (ECF No. 17). As the special master explained in R&R #33, Arconic's apparent goal was to take discovery, first, on what Novelis misappropriated and only later disclose what constituted a trade

---

[3] The court very much appreciates the efforts of the special master, which went far beyond the call of duty.

secret (ECF No. 510 at 7).  Novelis opposed this motion and filed a counter-motion for pre-discovery identification of Arconic's trade secrets (ECF No. 31).

The court conducted an expedited, pre-answer, case management conference on December 14, 2017.  As an initial matter, the court informed the parties that appointment of an experienced special master would be important in this complicated and contentious litigation (Transcript, ECF No. 56).  On the expedited discovery issue, Arconic argued that in the complaint it had "already identified its trade secrets with particularity."  *Id.* at 6.  Arconic argued that its list of trade secrets was identical to the 22 claims in Novelis' patent application.  *Id.* at 10.  Arconic's counsel identified a document that purportedly performed a detailed analysis of how the disclosures in Novelis' patent application linked up to where, in Arconic documents, Novelis learned that information.  *Id.* at 6.  In response, Novelis argued that some of the disclosures in its patent application described public information, such as Arconic's patents, and other disclosures in the patent application were based on inventions Novelis was entitled to make under the parties' license agreement.

The court did not rule on the motions.  The court observed the problem was that Novelis did not know what "it" (i.e., Arconic's alleged trade secrets and confidential information) was.  *Id.* at 20.  The court commented:  "We've got to get something concrete so we can move forward."  *Id.* at 22.  In sum, Arconic was on notice from the court, as of December 2017, that a clear identification of its trade secrets and confidential information was necessary before Arconic could undertake the expedited discovery it sought.

B.  TS ID #1 and R&R ## 2 and 3

On January 10, 2018, the special master heard oral argument on Arconic's motion for expedited discovery.[4]  The special master suggested that Arconic start by providing a "tailored description" of its trade secrets and Arconic's counsel stated "we could do that."  (ECF No. 249 at 1-2, quoting Tr. at 33, 50).  Arconic's counsel represented that a list of its claimed trade secrets would be provided within 2 days of entry of the protective order.  *See* R&R #2, ECF No. 69.

In R&R #2, the special master recommended that Arconic's motion for expedited discovery be denied and stated:  "Once Arconic identifies all alleged trade secrets at issue in this case, (either as presently claimed or as it may become amended) with sufficient particularity to make it clear what they are, discovery can commence on both the claims and counterclaims."  *Id.* at 3.  The special master reiterated that she would "discuss the appropriate staging of discovery with the parties, once the trade secrets have been sufficiently identified, and that process will proceed efficiently."  *Id.* at 4.  R&R #2 was adopted by the court, without objection from the parties (ECF No. 82).

Arconic's first trade secret disclosure (TS ID #1) was not "something concrete" or a "tailored description."  TS ID #1 copied – verbatim -- the language of the 22 claims in Novelis' patent application and added 3 generic "catch-all" provisions for confidential information (including negative know-how) that former Arconic employees provided to Novelis, Novelis shared with third parties, or Novelis used beyond its legal rights (ECF No. 76, sealed).

Novelis moved to strike TS ID #1 (ECF No. 75).  Arconic renewed its motion for expedited discovery (ECF No. 77).  The special master heard oral argument on February 21,

---

[4] The special master's first task was to resolve the parties' disputes and implement a protective order to preserve confidentiality of the identification.  *See* R&R #1, ECF #63.

2018.  Arconic's counsel conceded that TS ID #1 did not disclose anything new about its trade secrets.  It remains unclear what Arconic hoped to accomplish with TS ID #1.

On March 14, 2018, the special master filed R&R # 3, which recommended granting Novelis' motion for pre-discovery identification of Arconic's claimed trade secrets (ECF No. 89).  The special master noted that because several months had passed and a protective order was in place, there was no reason for less than full disclosure of Arconic's trade secrets and confidential information.

R&R #3 contained four important instructions, mandating that:  (1) the parties set forth their respective claimed trade secrets and confidential information with "reasonable particularity"[5]; (2)  the disclosures follow the format set forth in an accompanying proposed order and chart; (3) the parties show "good cause" for leave to file future amendments to the

---

[5] The court defined Arconic's duty as follows:

> "Reasonable particularity" shall have the meaning as defined in *Hill v. Best Medical International, Inc*., No. CIV.A 09-1194, 2010 WL 2546023, at *3 (W.D. Pa. June 24, 2010) ("'Reasonable particularity' has been defined as a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets.") "Reasonable particularity" means a specific list and description of the alleged trade secrets and confidential information and not "general allegations or general references" to categories of information or processes. *See Id.* at *4. Reasonable particularity requires Arconic to identify each Trade Secret or item of Confidential Information "with sufficient particularity so that the reader understands how each such claim differs from public domain information—including public [] patent filings." *See USSA v. Mitek Systems, Inc*., 289 F.R.D. 244, 249 (W.D. Tex. 2013). Where an asserted Trade Secret or item of Confidential Information is a "combination of known components", plaintiff must specifically describe what [the] particular combination of components is; how these components are combined in a secret process, and how they operate in such combination to meet the legal requisites of a trade secret. *Hill*, 2010 WL 2546023 at *4 n.8 (citing *Struthers Sci. and Int'l Corp. v. General Foods Corp*., 51 F.R.D. 149 (D. Del. 1970)).

(ECF No. 101 at 2 n.1).

claimed trade secrets; and (4) because the trade secrets and confidential information claims are

so closely inter-related, "the same identification process should apply to both." *Id.* at 2, 4, 5.

Arconic conceded that much of the Novelis patent application involved information

already in the public domain. *Id.* at 3. The special master recognized that unique combinations

of public information can, in theory, support a trade secret claim, but found that TS ID #1 did not

explain how publicly-available claim elements were uniquely combined so as to comprise a trade

secret. *Id.* The special master recommended: "Arconic should be ordered to file, under seal, its

claimed trade secrets with particularity, specifically identifying which elements are in the public

domain and which are its trade secrets, including any combinations of elements claimed as a

trade secret, and setting forth what is it about such combination that meets the legal standard

stated above for combination trade secret claims." *Id.* at 4. Discovery would commence once

this disclosure was made. *Id.*

Attached to R&R #3 was a chart to be used for Arconic's disclosure. There were

separate rows for each claimed trade secret 1, 2, 3, etc., and each claimed confidential

information 1, 2, 3, etc. The columns required: (1) identification of the asserted trade

secret/confidential information; (2) the portion that is not in the public domain and is claimed to

be secret/confidential; (3) the portion that is in the public domain; and (4) for combinations of

public and private information, an explanation of the secret/confidential combination (ECF No.

89-1).

Arconic did not object to R&R #3. It was adopted as the opinion and order of court on

April 3, 2018 (ECF Nos. 100, 101). Novelis' motion for prediscovery identification of the trade

secrets and confidential information was granted. The standards set forth in R&R #3 became the

law of the case.[6]  The "reasonable particularity" standard was adopted, which required Arconic to identify each claimed trade secret or confidential information "with sufficient particularity so that the reader understands how each such claim differs from public domain information—including public [] patent filings."  (ECF No. 101 at 2-3 n.1).  For combinations, Arconic was required to "specifically describe what [the] particular combination of components is; how these components are combined in a secret process, and how they operate in such combination to meet the legal requisites of a trade secret."  *Id.*

C.  Dismissal of Arconic's claims and R&R #5

Novelis filed a partial motion to dismiss the trade secret and confidential information claims in Arconic's original complaint on the ground that Arconic failed to plead sufficient facts to support such claims (ECF No. 53).  On March 22, 2018, the special master issued R&R # 5, which recommended that those counts be dismissed, albeit without prejudice to replead after Arconic filed its TS ID in compliance with R&R #3 (ECF No. 92 at 8).  The special master recognized that under Pennsylvania law, confidential information claims may be pleaded in the alternative "if Arconic fails to prove that its claimed trade secrets meet the legal requisites for such a claim." (ECF No. 92 at 14).  Arconic was given the opportunity to set forth separate claims in the second amended complaint to assert that its confidential proprietary information was misused in connection with a breach of contract.  *Id.*  Arconic was permitted to incorporate

---

[6] The "law of the case doctrine" developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).  As the United States Supreme Court explained, a court has the power to revisit its prior decisions in any circumstance, although it should be reluctant to do so in the absence of extraordinary circumstances. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).  Arconic is not asking this court to revisit any of its previous decisions.

the TS ID chart by reference in the amended complaint. Arconic did not object to R&R #5.  It

was adopted as the opinion and order of court (ECF Nos. 113, 114).

To reiterate, the court **<u>dismissed</u>** the relevant counts of Arconic's original complaint for

failure to plead plausible trade secrets or confidential information.   Arconic did not object to the

dismissal.  By not objecting to R&R ## 3 and 5, Arconic admitted its duty to make pre-discovery

disclosures of its claimed trade secrets with reasonable particularity and to show good cause for

any revisions to its dsclosures.  Arconic also conceded that its trade secret and confidential

information claims were properly dismissed because it failed to do so.  The court emphasized

that the legal reasoning in R&R #5 "will govern future proceedings" and was the law of the case

(ECF No. 112 at 2).

### D.  TS ID #2 and R&R #12

On April 2, 2018, Arconic filed TS ID #2 (ECF No. 98, sealed).  The special master

allowed discovery to begin in the good faith assumption that the amended complaint and TS ID

would comply with the court's order.  In retrospect, this assumption was unfounded.

Arconic's chart purported to follow the format set forth in R&R #3, but the content was

noncompliant.  Arconic described a 6-step aluminum pretreatment process and identified 43

trade secrets/confidential information.  Arconic did not identify the trade secrets and confidential

information separately, as required in R&R #3.  Instead, it contended that all 43 items were trade

secrets but, in the alternative, the same 43 items constituted confidential information.  (ECF No.

98 at 21-22).  Instead of explaining how each combination of steps constituted a trade

secret/confidential information, Arconic conclusorily stated that "each individual piece of

information for one step of the process, when combined with the other steps of the process,

forms a unique trade secret." *Id.*  Arconic did not identify what portions were not in the public

domain.  To the contrary, the chart stated that many of the 6 steps (for example, cleaning, etching, rinsing, drying) were generally known to the extent described in a Petition to Institute Derivation Proceeding of U.S. Patent Application No. 15/142,384, dated November 2, 2017.  *Id.*  Arconic did not claim any trade secrets relating to the sixth step, drying.  *Id.*  Arconic did not describe how each of the rows in the chart constituted a unique trade secret; most of the entries on the chart simply said "see above."  Arconic stated that it was not disclosing every variation of the steps and again asserted generic, catch-all categories.  Novelis moved to strike TS ID #2.

The special master considered further briefing and oral argument.  In August 2018, the special master issued R&R #12 (ECF No. 147) and proposed order (ECF No. 149), which recommended that TS ID #2 be stricken.  The special master noted that some of the discrete disclosures[7] in TS ID #2 would be acceptable:  "Arconic followed the format and provided the needed information for the majority of the Trade Secret Identification—to which Novelis does not object—and must provide the same information for each combination trade secret it claims in the case."  (ECF No. 147 at 3).  The special master explained that Arconic failed to provide the required information about the public and private aspects and uniqueness of each combination trade secret claimed.  *Id.* at 2-3.  The special master also noted that inclusion of three broad catch-all categories frustrated any limitations on discovery or the claims and again recommended that the catch-all categories be dismissed, as incompatible with the reasonable particularity and good cause standards.  *Id.* at 4.  Arconic was given an opportunity to file TS ID #3.

Arconic did not object to R&R #12.  It was adopted as the opinion and order of court on August 21, 2018 (ECF No. 156).  TS ID #2 was stricken.[8]  The court reiterated: "a party must be

---

[7] Arconic does not  contend that  discrete components are its trade secrets; rather, it argues the combinations of the entire process are its trade secrets (ECF No. 521 at 15).
[8] Arconic's efforts to resuscitate TS ID #2 now, more than 2 years later, *see* ECF No. 521 at 5-6, are without merit.

able to identify its own trade secrets conveyed to the party that must defend the case." (ECF No. 149, adopted by ECF No. 156).

E.   The second amended complaint and R&R #18

On May 8, 2018, Arconic sought leave to file a second amended complaint[9] to restate the trade secret/confidential information claims that had been dismissed.  The special master considered briefing and oral argument and on August 31, 2018, issued R&R #18 (ECF No. 161), which recommended that Arconic be granted leave to file an amended complaint consistent with R&R #5.  In other words, leave to file the amended complaint was premised on the condition that Arconic would disclose its trade secrets and confidential information with reasonable particularity.  On September 18, 2018, the court adopted R&R #18, to which no objections were filed (ECF No. 171).  In retrospect, the court should have denied leave to amend, or held the motion in abeyance, until Arconic filed a proper TS ID.

On September 21, 2018, Arconic filed the second amended complaint (ECF No. 177), which is its operative pleading in this case.  The second amended complaint incorporates by reference TS ID #2 (ECF No. 177 ¶¶ 106, 112, 118, 124, 130, 145).  Arconic asserts 7 claims, 6 of which merely restate its original trade secret and confidential information claims separately: (1) breach of license agreement – misappropriation of trade secrets against Novelis Inc.; (2) breach of license agreement – misuse of confidential information against Novelis Inc.; (3) breach of non-disclosure agreement – misappropriation of trade secrets against Novelis Corp.; (4) breach of non-disclosure agreement – misuse of confidential information against Novelis Corp.; (5) misappropriation of trade secrets pursuant to 18 U.S.C. § 1831; (6) misappropriation of trade secrets pursuant to Pennsylvania law; and (7) declaratory judgment regarding the Ion Exchange

---

[9] Arconic's first amended complaint was stricken, with Arconic's consent, because Arconic failed to seek leave of court to file it (ECF No. 112).

Patent, No. 6,020,030.  Novelis filed an amended answer and counterclaims.[10]  (ECF No. 254,

filed under seal).  Counts I through VI are subject to the "show cause" order.  Count VII will

remain in the case.


F.  TS ID #3 and R&R #20

In response to R&R #12, on August 30, 2018, Arconic served TS ID #3 (ECF No. 163,

sealed).  TS ID #3 consisted of a 76-page chart in which Arconic claimed 568 trade secrets.  In

the columns for identifying public and private elements and uniqueness, the responses were

formulaic and unhelpful at best.  Arconic merely stated that the process, in its entirety, was not in

the public domain; no further details were provided.  Arconic did not explain or identify how any

combination of known and unknown steps constituted a trade secret or confidential information

other than a conclusory statement:  "The specific combination set forth in this trade secret is

unique."  Arconic made no attempt to explain how the 568 trade secrets differed from each other;

almost every line of the chart simply stated "see above."  Novelis moved to strike TS ID #3.

The special master considered briefing and oral argument.  During the oral argument,

Arconic's counsel disclosed that TS ID #3 contained almost 300 duplicate entries.  (Transcript,

ECF No. 543 at 89).  Arconic also conceded that portions of each claimed trade secret were in

the public domain and that it had not stated what those portions were.  *Id.* at 96.  The special

master expressed dismay at the vast expansion of the claimed trade secrets and believed it made

the case unmanageable.  *Id.* at 26, 89.  It bears repeating that the case had been pending for

---

[10] On February 7, 2019, Novelis was given leave to file amended counterclaims to assert antittrust
violations by Arconic (ECF No. 252).  The court explained that Novelis' failure to comply with the
deadline to amend pleadings in the case management order was excused because Arconic did not timely
produce a Technology Access & License Agreement between Arconic's predecessory, Alcoa, Inc., and
Chemetall US, Inc. dated October 29, 2012 (the "Chemetall Agreement").  *Id.* at 3.

almost a year; this was Arconic's third opportunity to identify its trade secrets and confidential information; the information is within Arconic's own knowledge; and the claims in the second amended complaint incorporate the TS ID by reference.[11]

On October 18, 2018, the special master filed R&R #20 (ECF No. 209). The special master explained that TS ID #3 fell "woefully short" of providing the disclosures required by this court's prior orders (ECF No. 209 at 1). In the R&R, the special master recounted the efforts to obtain a particularized identification of the claimed trade secrets/confidential information in this case. The special master noted that "Arconic is in possession of the information needed to articulate its own trade secrets" and also received the benefit of 6 months of discovery from Novelis. *Id.* The special master found that Arconic's chart "does not even begin to meet this Court's order" to explain how each claim met the standards to qualify as a trade secret. *Id.* The special master explained that many of the alleged trade secrets were based on a combination of publicly known elements and Arconic failed to explain what made each one unique and why.

The special master did not invoke a "three strikes and you're out" rule. Instead, the special master gave Arconic a fourth (albeit very narrow) bite at the apple. Discovery was suspended. The special master provided very precise instructions about Arconic's required disclosures. Before depositions would resume, Arconic was required to describe individually each and every trade secret it claimed as to each element. *Id.* at 3. Arconic was instructed to resubmit the "same chart" with the duplicates crossed out. *Id.* at 7. In addition, Arconic was instructed to update its interrogatory responses "with the required information about *each separate individual* trade secret of the 288 now asserted." *Id.* (emphasis in original).

---

[11] Although the second amended complaint incorporated TS ID #2, which was stricken, the court construes its orders permitting Arconic to resubmit other TS IDs as allowing those TS IDs to be incorporated by reference in the second amended complaint as well.

The special master resolved several disputes to guide Arconic's required responses to interrogatories and urged Arconic to consider reducing its list to assert only those trade secrets that were significant and provable.  *Id.*  For each trade secret, Arconic was required to provide "an individually composed answer as to each element of each numbered alleged trade secret in genuine, non-boilerplate English narrative prose."  *Id.*  The rationale was that if the chart formatting somehow prevented a full explanation, Arconic could use the interrogatory responses to (finally) identify what the "it" (i.e., the trade secret/confidential information) really was.

The special master cautioned that if Arconic's responses were "mere boilerplate" and did not include an explanation of what makes each trade secret unique, the depositions would not resume.  The special master reiterated:  "No blanket answers, such as 'same as above' or 'see above' will be deemed to be satisfactory."  *Id.* at 10.

Once again, even in light of the criticisms contained therein, Arconic did not object to the relevant R&R.  The court adopted R&R #20 as the opinion and order of court (ECF No. 212). To repeat, the woeful failure of TS ID #3 and the clear instructions for TS ID #4 became the law of the case.

### G.  TS ID #4 and R&R #28

On November 2, 2018, Arconic submitted TS ID #4, which consisted of a revised chart, interrogatory responses and summary slides. (ECF No. 269, Ex. K, filed under seal).  The TS ID #4 chart contained certain information in **bold**  (largely involving concentration levels, temperature and time ranges, etc.).  For reasons unknown and difficult to fathom, Arconic did not abide by the explicit instructions set forth in R&R #20.  Instead, Arconic (1) submitted a new chart with additional information, rather than the "same chart" with duplicates removed; and (2) framed its interrogatory responses in terms of parameters, rather than identifying with

14

particularity, in clear English sentences, why each of the 288 individual trade secrets was unique. The special master commented: "Now, more than a year into the case, it remains unclear what, if any, Arconic's trade secrets are." (ECF No. 249 at 6). The special master described Arconic's submission of TS ID #4 as "deliberate non-compliance with the clear mandate of [R&R #20]." (ECF No. 249 at 6).

Novelis objected that Arconic was attempting to change its claimed trade secrets without good cause and that the 16 parameters are not unique and protectable trade secret combinations. Novelis also objected to Arconic's proposal to reduce its trade secret disclosure to a 1-page table of parameters. In particular, Novelis argued that it was improper to inflate 16 parameters into 288 combinations because Arconic never alleged it disclosed any of the 288 combinations to Novelis.

On January 24, 2019, the special master issued R&R #28, captioned "Scheduling Briefing on Whether Arconic's Trade Secret Identification Should Be Stricken" (ECF No. 249). R&R #28 recommended that the November 2, 2018 chart be stricken as unauthorized. The special master recommended that Novelis be given leave to file a motion to strike the remainder of TS ID #4. R&R #28 set forth a briefing schedule for that purpose. The special master directed the parties to focus on the sufficiency of the August 30, 2018 chart from TS ID #3 (without duplicates) and the November 2, 2018 interrogatory responses. *Id.* Arconic was expressly prohibited from making a TS ID #5. Arconic filed objections to R&R #28.

    H. The "show cause" order (ECF No. 282)

Upon review of Arconic's objections to R&R #28, it appeared to the court that Arconic again failed to comply with the court's orders to identify its trade secrets/confidential information. On February 25, 2019, the court issued an opinion which stated:

> This case has been plagued, virtually from the beginning, by Arconic's unwillingness, or inability, to **describe precisely** what secret or confidential information Novelis allegedly disclosed. Arconic contends in its objections that the problem is primarily a formatting misunderstanding. The court cannot agree. Arconic's **failure to identify** its trade secrets and confidential information is a substantive flaw that may be fatal to the merits of its claims.

ECF No. 282 at 1 (emphasis added).  The court reviewed the procedural history of Arconic's previous failures to identify, as set forth in the R&Rs to which Arconic did not object.

The court determined that further briefing limited to the issue of striking TS ID #4, as recommended in R&R #28, would not materially advance the litigation.  Even if TS ID #4 were stricken, the underlying trade secrets and confidential information claims would still exist, discovery would remain stayed, and additional proceedings would be necessary about whether to permit Arconic to submit a TS ID #5, to consider sanctions for Arconic's noncompliance, or to otherwise allow the case to proceed.  The court invoked Rule 56(f) as a procedural mechanism to resolve the underlying claims in counts I-VI of the second amended complaint.  The purpose of the show cause order was clearly stated in the opinion:

> It appears to the court that Arconic's claims based on alleged trade secrets or confidential information must fail as a matter of law.  The claims were previously dismissed, without objection by Arconic, subject to renewal if Arconic **made an identification** with reasonable particularity.  (ECF Nos. 113, 114).  It appears that Arconic did not do so.

*Id.* at 6 (emphasis added).

The show cause order stated, in its entirety:

> AND NOW this 25th  day of February, 2019, in accordance with Federal Rule of Civil Procedure 56(f), the court gives Arconic, Inc. ("Arconic") notice and the opportunity to show cause why summary judgment should not be entered in favor of defendants Novelis Inc. and Novelis Corp. (collectively, "Novelis") on counts I, II, III, IV, V and VI of the amended complaint (ECF No. 177) for failure to identify its alleged trade secrets and confidential information with reasonable particularity, as required by numerous orders of court.  Count VII of the amended complaint would remain in the case.

>    The objections to special master R&R # 28 are DENIED WITHOUT
> PREJUDICE to reassert if the claims remain viable.

(ECF No. 282).

Pursuant to Rule 56(f), Arconic was given notice and a reasonable time to respond. Arconic was given a full opportunity to show the court where in its previous submissions, including its interrogatory responses, it had identified any trade secrets or confidential information with the reasonable particularity required by the court's orders.

## I.   Arconic's response to the show cause order and R&R #33

Given the procedural status, it was clear that the show cause order was focused on Arconic's failure to identify properly its trade secrets.  Instead of responding by showing where it had properly identified its trade secrets and confidential information, Arconic submitted a wealth of new information to the court about the merits of its underlying claims (Arconic's "post-show cause submissions") (ECF Nos. 300-306).  Novelis filed a motion to strike the vast majority of these voluminous filings (ECF No. 330).  The matters were referred to the special master.

In May 2019, the Arconic attorneys who prepared TS ID ## 1-4 were replaced.  The special master considered extensive briefing about the show cause order.  On September 19, 2019, the special master held an oral argument, which the court attended.  At that argument, Arconic's new counsel conceded that TS ID #4 did not abide by the strictures set forth in R&R #20 and agreed that he would not have done it that way.  (Transcript, ECF No. 521-7 at 68).

Arconic explained that its post-show cause submissions are evidence about the merits of summary judgment, and did not constitute an attempt to make a TS ID #5 (ECF No. 521 at 37-38).  The special master commented that Arconic's effort to focus on the merits of its claims,

17

without addressing its failure to identify them, was improper.  (ECF No. 521-7 at 22-25).  The special master explained, correctly, that the operative verb in the show cause order was "identify" and that Arconic's task was to show where, in all the information it submitted, Arconic identified a cognizable trade secret.  *Id.*

Arconic acknowledged at the oral argument before the special master that none of its post-show cause submissions were necessary if "the exercise" was to show the court the evidence of how its identification of trade secrets/confidential information met the reasonable particularity standard.  (ECF No. 521-7 at 36).  Counsel explained that those submissions were designed to prevent waiver of Arconic's rights on the merits of summary judgment.  (ECF No. 521-7 at 39).

In R&R #33, the special master conducted a thorough, 81-page analysis.  The special master reiterated that the show cause order focused on "identification," not the merits, and "cannot genuinely be read any other way."  (ECF No. 510 at 21).  The special master adhered to her previous recommendation that the November 2, 2018 chart contained in TS ID #4 should be stricken.  The special master stated:

> Likewise, no party acting in good faith could interpret Report & Recommendation No. 20's instruction to submit the "same chart" (deduplicated) as authorization to submit a new chart supplying additional information. The Special Master will not repeat its prior recommendation to strike the unauthorized chart submitted in Report & Recommendation No. 28; however, the recommendation stands on an even stronger platform now than it did when made.

(ECF No. 510 at 27 n.3); *see Id.* at 56 n.12 ("the Special Master does not drop the recommendation that it be stricken").  The special master nevertheless gave Arconic the benefit of the doubt and engaged in a granular analysis of the entire TS ID #4 (including the chart).  The special master concluded that Arconic failed to identify any trade secrets, but that certain of the

ranges and concentrations set forth in various parameters could be sufficient to identify confidential information.  *Id.* at 57-61.

In sum, the special master made the following recommendations:

(1) counts I, III, V and VI (the trade secret claims) be denied leave to be filed;

(2) in the alternative, counts I, III, V and VI be stricken due to Arconic's repeated refusal to follow the court orders to identify its trade secrets with particularity;

(3) counts II and IV (the confidential information claims) be granted leave to be filed in part and deemed sufficiently identified to proceed as limited in R&R #33; and

(4) Novelis' motion to strike Arconic's post-show cause submissions (ECF No. 330) be granted.

Both parties filed objections to R&R #33.  Arconic adheres to its argument that the court's show cause order directed the parties to address whether its claims were cognizable on the merits.  Arconic also argues that the disclosures in TS ID #2 met the reasonable particularity standard because they would have been understandable to a person of ordinary skill in the art ("POSITA") and that although "admittedly imperfect," it substantially complied in good faith with the court's orders (ECF No. 521 at 2).  Novelis objects to the recommendation that portions of the confidential information claims be allowed to proceed.  Novelis contends that summary judgment on counts I to VI in their entireties is warranted on several independent grounds: (1) as a Rule 37 sanction; (2) for failure to meet the conditions for amending the claims; and (3) due to the substantive lack of a cognizable trade secret or confidential information.

III. Legal Standards

A.  Summary Judgment

Summary judgment is the time to "put up or shut up." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). A court will grant summary judgment if there is no genuine dispute over material facts and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

A fact is material if a dispute over it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Unnecessary or irrelevant factual disputes will not preclude summary judgment. *Jasmin v. New Jersey Econ. Devlopment Auth.*, No. CV 16-1002 (FLW), 2020 WL 3411171, at *5 (D.N.J. June 22, 2020) (citing *Anderson*, 477 U.S. at 249-50). A dispute is "genuine" only if a reasonable jury could decide the dispute in favor of the party opposing summary judgment. *Id.* (citing *Anderson*, 477 U.S. at 251). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (citing *Anderson*, 477 U.S. at 251-52). The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It must point to evidence in the record demonstrating that "a rational trier of fact" could find in its favor. *Id.* at 587; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) requires the nonmoving party to go beyond its pleadings ... [and] designate specific facts showing that there is a genuine issue for trial."); *Anderson*, 477 U.S. at 257 (noting that a party resisting summary judgment "must present affirmative evidence in order to defeat a properly supported motion").

To defeat summary judgment, a party must make a showing sufficient to establish the existence of every element essential to its case. *Celotex*, 477 U.S. at 322. If that party cannot

make a sufficient showing with respect to any essential element, entry of summary judgment is appropriate.  "[A] complete failure of proof concerning an essential element [on which the party will bear the burden at trial] ... necessarily renders all other facts immaterial." *Id*. at 323.

B.  Trade secrets claims

Counts I through IV of the second amended complaint assert breach of contract claims. To prevail on a breach of contract claim under Pennsylvania law, the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by that contract; and (3) resultant damages.  *Hill v. Best Med. Int'l, Inc.*, No. CA 07-1709, 2011 WL 5082208, at *25 (W.D. Pa. Oct. 25, 2011) (citing *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 884 (Pa. Super. Ct. 2000)).  In counts I through IV, Arconic alleges that Novelis breached contractual duties by disclosing Arconic's trade secrets and confidential information.

Counts V and VI assert misappropriation of trade secrets claims under federal and state law.  The elements of a misappropriation claim under the Defend Trade Secrets Act, 18 U.S.C. § 1832 et seq. ("DTSA"), are: (1) the information was a trade secret (i.e., not generally known in the industry), (2) it was misappropriated (i.e., stolen, rather than developed independently or obtained from a third party), and (3) it was used in the defendant's business.  *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 1:17-CV-8829, 2020 WL 2836778, at *10 (N.D. Ill. May 31, 2020).  Courts apply the same legal standards to claims under the Pennsylvania Uniform Trade Secrets Act ("PUTSA") because the DTSA and PUTSA "essentially protect the same type of information." *Freedom Med. Inc. v. Whitman*, 343 F. Supp.3d 509, 518 (E.D. Pa. 2018) (quoting *Teva Pharm. USA, Inc. v. Sandhu*, 291 F.Supp.3d 659, 675 (E.D. Pa. 2018)).  A threshold element in each of these claims is the need to identify each trade secret asserted with particularity.

As explained in *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224 (S.D.N.Y. 2014), aff'd sub nom. *Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015), "[t]he requirement of particularity exists for the simple reason that a defendant must know what constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret." *Id.* at 257. At the time of disclosure, there must be sufficient specificity for the party to whom the secret is revealed to understand the contours of the claimed trade secret information so it does not transgress its boundaries. *Id.* at 258 (citing *Sit–Up Ltd. v. IAC/InterActiveCorp.*, No. 05 Civ. 9292(DLC), 2008 WL 463884, at *11–12 (S.D.N.Y. Feb. 20, 2008)). Specificity is also required during the litigation, so that the defendant can defend against the claims, the court can oversee discovery, and a jury can render a verdict. *Id.* The court explained this continuing need for specificity:

> A corollary requirement of specificity for claimed trade secrets is inferable from this holding: If a particular piece of information, or a formula, is not entitled to trade secret protection because it is "so vague and indefinite" at the time it is divulged, then it cannot be granted protection as a trade secret by a court during litigation if it is "vague and indefinite." Specificity is required at the moment of divulging so that the party to whom the secret is revealed understands the contours of the secret information and does not inadvertently or purposefully transgress its boundaries. Similarly, specificity is required before the court so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and nonsecret information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation.

*Id.* at 258 (quoting *Sit-Up Ltd.*, 2008 WL 463884, at *11-12).

A plaintiff must identify its trade secrets "with a reasonable degree of precision and specificity" that is "particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade." *Id.* at 258-59 (quoting *Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F.Supp.2d 340, 346 (D. Del. 2012)). It is not sufficient for a party to simply argue that a person skilled in the art would have known what

the trade secrets were; rather, a party must identify how its claimed trade secrets are different from what was generally known in the art and the defendant's own knowledge. *See Id.* at 259-60 & n. 42 (plaintiff "made virtually no effort to identify its alleged trade secret with particularity at the time of disclosure, and did nothing to separate its alleged trade secret from [defendant's] own contributions" or its "considerable prior knowledge."). In other words, a party cannot prove that the other party breached its contractual duties if it cannot identify what trade secrets it disclosed to the other party. Those concerns are heightened when the parties' contracts specifically permit the other party to use general industry practices and improvements it independently developed. *Id.* at 259-60 & n.42.

    C.  Rule 37 sanctions

      Federal Rule of Civil Procedure 37(b)(2)(A) provides, in relevant part, that if a party fails to obey an order to provide or permit discovery, the court where the action is pending may issue further just orders, including "(v) dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A). Dismissal with prejudice is a drastic sanction that must be used as a last resort. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984). The "*Poulis* factors" guide a court's analysis about whether dismissal is an appropriate sanction. The factors are: (1) the extent of the party's personal responsibility; (2) the prejudice of the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.* at 868. It is not necessary that all factors be met before imposing a sanction. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003) ("Each factor need not be satisfied for the trial court to dismiss a claim").

IV. <u>Discussion</u>

This case is three years old.  The court's order to show cause why summary judgment should not be granted on Arconic's trade secret/confidential information claims is now ripe for decision.  The court gave Arconic notice and one last chance to show cause why summary judgment should not be entered for "failure to identify" its alleged trade secrets and confidential information with reasonable particularity (ECF No. 282).  Instead of seizing the opportunity to point out through evidence where it identified its trade secrets and confidential information, which is an essential element of each claim at issue, Arconic attempted to change the subject and discuss the overall merits of claims on which it failed to make a proper identification.  Arconic failed to respond directly to the court's show cause order.

Arconic's litigation conduct is inexplicable.  Arconic seemingly shared substantial information about its A951 process with Novelis.  The court explained that before allowing Arconic to undertake extensive discovery into its competitor's technology, it was incumbent upon Arconic to first articulate, with reasonable particularity, what it contends are its own trade secrets and confidential information, as opposed to general industry practices or Novelis' authorized improvements to the process.  Arconic agreed to the applicable legal standards, and the court dismissed without prejudice its trade secrets and confidential information claims.  Arconic represented that a proper disclosure would be made.  Despite numerous attempts and increasingly explicit instructions from the court, however, Arconic has been unwilling or unable to do so.  Arconic's failures to comply with the court's orders became more glaring as the case progressed.

A. Trade Secrets claims

In R&R #33, the special master recommends retroactive denial of leave to amend the trade secrets claims[12], or alternatively, that the trade secrets claims be stricken as a sanction for failure to comply with the court's orders.

       1. Summary judgment is appropriate

          a. The show cause order was clear

In the show cause order, Arconic was given "notice and the opportunity to show cause why summary judgment should not be entered in favor of defendants Novelis Inc. and Novelis Corp. (collectively, "Novelis") on counts I, II, III, IV, V and VI of the amended complaint (ECF No. 177) for failure of Arconic **to identify** its alleged trade secrets and confidential information with reasonable particularity, as required by numerous orders of court." (ECF No. 282) (emphasis added).

The problem, as the court and special master pointed out on numerous occasions, was that Arconic did not make an "identification" with reasonable particularity. The show cause order did <u>not</u> invite submissions about the <u>overall</u> merits of Arconic's claims on any other of the elements of the claims. All parties knew that merits resolution as a whole was premature because discovery had been stayed. The burden was on Arconic to come forward with evidence of one essential element of its claims, i.e., the identification of its trade secrets. *See Big Vision*, 1 F. Supp.3d at 259-60. The initial hurdle, which Arconic failed to clear, was simply identification of its alleged trade secrets with reasonable particularity.

---

[12] The court concludes that granting summary judgment in favor of Novelis, rather than retroactive denial of leave to amend the complaint, is the appropriate procedural mechanism. Novelis filed an answer to the second amended complaint and count VII will remain in the case. The court permitted Arconic to point to evidence outside the pleadings (i.e., its TS IDs and interrogatory responses) to show where it made an identification in compliance with the court's orders. Arconic was given notice and a full opportunity to respond to the Rule 56(f) order.

Arconic argues that the court "directed the parties to brief summary judgment on whether the trade secrets alleged by Arconic were cognizable." (ECF No. 521 at 1).  Arconic contends that the court "expressed concern about the merits" and points to the court's decision to not strike its TS ID#4, as recommended by the special master.  During the oral argument in September 2019, the special master clearly rejected this argument and explained that Arconic misinterpreted the court's show cause order.  Arconic continues to advance its mistaken reading.

The show cause order identified the problem clearly as Arconic's "**failure to identify**" its trade secrets with reasonable particularity  (ECF No. 282).  The accompanying opinion provided additional explanation: "This case has been plagued, virtually from the beginning, by Arconic's unwillingness, or inability, to **describe** precisely what secret or confidential information Novelis allegedly disclosed."  *Id.* at 1.  Arconic recognized that the court's concern involved the TS IDs because it argued that the problem was primarily a "formatting misunderstanding."  *Id.*  The court rejected this excuse and put Arconic on notice that its "failure to **identify** its trade secrets and confidential information is a substantive flaw that may be fatal to the merits of its claims." *Id.*  The opinion extensively reviewed the procedural history of Arconic's previous efforts to identify its trade secrets and confidential information and summarized:

> It appears to the court that Arconic's claims based on alleged trade secrets or confidential information must fail as a matter of law.  The claims were previously dismissed, without objection by Arconic, subject to renewal if Arconic **made an identification** with reasonable particularity.  (ECF Nos. 113, 114).  It appears that Arconic did not do so.

*Id.* at 6 (emphasis added).  The opinion explained that both parties were entitled to submit a brief and all supporting evidence "to show cause why summary judgment should not be granted in favor of defendants on counts I-VI of the amended complaint **based on Arconic's failure to identify** cognizable trade secrets.  *Id.* at 7 (emphasis added).  Arconic

could not have reasonably interpreted the show cause order as addressing the overall merits of the underlying claims, as opposed to the identification with reasonable particularity of the trade secrets and confidential information. [13]

The term "cognizable" means "capable of being judicially heard and determined" or "capable of being known."  https://www.merriam-webster.com/dictionary/cognizable, last visited November 20, 2020.  The reference to "evidence" in the accompanying opinion, in context, was clear.  Arconic was not limited to the pleadings; it was given the opportunity to point to evidence anywhere in its voluminous filings, including its TS IDs and interrogatory responses, to show that it had identified with reasonable particularity its trade secrets and confidential information. The information was in Arconic's own possession and no discovery from Novelis was needed for Arconic to identify what Arconic was claiming were its own trade secrets and confidential information.  If Arconic cannot even identify its trade secrets, Arconic certainly cannot establish where it disclosed those trade secrets to Novelis with reasonable particularity to make its trade secrets claims cognizable.

The reference to "fatal to the merits" was a warning of the severe consequences, i.e., that summary judgment could be entered against Arconic.  The parties could not have addressed the merits of other elements of the claims because – as they well knew --  discovery had been stayed until an identification with reasonable particularity was made.  If no trade secrets are identified with reasonable particularity, there is no need for further merits inquiry.  Because Arconic bears

---

[13] In its briefing, Arconic asserts that identification with reasonable particularity is a gatekeeping discovery rule, not a substantive element of a trade secret claim (ECF No. 521 at 13).  That failure to identify, however, is also fatal to the merits of a trade secret claim.  In other words, if no trade secret is disclosed with reasonable particularity, then not only will no discovery be possible, it is also fatal to the merits of the claim.  *NEXT Payment*, 2020 WL 2836778, at *11 ("The failure to define the trade secrets with specificity, and the failure to separate the secrets from the non-secrets, meant that the claim could not survive. A party cannot bring a misappropriation claim without adequately describing what was stolen.").

the burden on that matter, its failure to establish this essential element means that its trade secrets claims must fail as a matter of law.

In the September 2019 oral argument, the special master explained (correctly) the intent of the show cause order (Transcript, ECF No. 521-7).  In R&R #33, the special master reiterated that the show cause order focused on identification and genuinely could not be read any other way.  If Arconic was truly confused, Arconic and its experienced counsel could have sought clarification.  It did not do so, even after the special master rejected Arconic's position.  No clarification was necessary.

### b.  Arconic failed to sufficiently identify its trade secrets

The court turns now to the substance of the show cause order.  Despite the special master's guidance, Arconic's objections to R&R #33 do not make a serious attempt to point to evidence showing how its previous TS IDs complied with the court's orders or identified any trade secrets with reasonable particularity.   Instead, Arconic persists with its contention that the show cause order invited briefing on the overall merits.  TS ID ## 1, 2 and 3 were stricken, without objection by Arconic, and are not applicable.[14]  Arconic represents that its post-show cause filings do not constitute a TS ID #5.  Only TS ID #4, therefore, is still in the case.  Arconic does not make a serious effort to defend it.  The court concludes that Arconic did not properly identify its trade secrets.

TS ID #4 does not comply with the court's orders and violates the explicit directions in R&R #20 in several important ways.  Arconic did not object to R&R #20; it was adopted as the opinion and order of the court; and it is the law of the case.  Arconic did not submit the "same

---

[14] In R&R #28, the special master permitted consideration of the August 3, 2018 chart from TS ID #3.  For the reasons set forth in R&R #20, that chart is woefully inadequate.

chart" (without duplicates), as ordered.  Instead, it submitted a new chart that contained

voluminous new information in the columns about what was public, what was private, and what

made each secret unique.  Arconic did not seek leave to include this information in the chart or

attempt to show good cause why it had not previously disclosed this new information in TS ID

##1, 2 or 3.

The interrogatory responses in TS ID #4 were also noncompliant.  Instead of identifying

each and every claimed trade secret, with clear explanations about why each was unique,

Arconic provided one generic interrogatory response that described its trade secrets/confidential

information in terms of 16 "parameters," which were essentially the 6-step process further

delineated.  During oral argument before the special master, Arconic conceded that the 16

parameters did not constitute trade secrets or confidential information.  (Transcript, Nov. 13,

2018 at 8) ("We are not claiming the parameters as any trade secret, so that's very simple.")

(ECF No. 554, Ex. H).

Despite the special master's urging that Arconic focus on a limited number of important

and provable secrets, Arconic continued to claim every permutation of the combination of 16

parameters as a trade secret.  *See* ECF No. 521 at 15 (Arconic is not asserting the individual

components separately as trade secrets; it is asserting that the entire process described constitutes

its trade secret).  Instead of explaining how portions of a combination of steps created each

separate, specific trade secret, Arconic simply referred back to and incorporated its generic

response.  (ECF No. 521-6, Ex. 2 at 39-40).  This incorporation was in direct contravention of

the court's order that "[n]o blanket answers, such as 'same as above' or 'see above' will be

deemed to be satisfactory."  R&R #20 at 10.[15]  Arconic's counsel conceded that TS ID #4 did not

---

[15] Arconic's counsel's contention during the November 16, 2020 oral argument that the court endorsed
the use of "see above" is rejected.

abide by the strictures set forth in R&R #20 and that he would not have done it that way. (Transcript, ECF No. 521-7 at 68).  These are not mere formatting errors.  There still is no clear explanation or evidence about what unique, secret, economically-valuable trade secrets of Arconic were disclosed to Novelis, even considering the TS ID #4 chart and the responses to interrogatories.

  In this case, Arconic contends that Novelis breached contractual duties and misappropriated its trade secrets by making various disclosures in a Novelis patent application. It is now clear that Arconic is not claiming any of the 6 steps or 16 parameters of the process as a trade secret.  Instead, Arconic is attempting to claim every permutation and combination of those parameters as its trade secrets.  Arconic, however, has been unable to identify, or submit evidence of, where it put Novelis on notice of any of the 288 combination trade secrets it is now claiming.  For combinations, Arconic was required to describe specifically not only what the particular combination of components was, but also how those components were combined in a secret process, how the combination operated to meet the legal requisites of a trade secret, and how each claimed trade secret combination differed from every other claimed trade secret. Arconic never explained where it disclosed any of the claimed 288 combinations to Novelis.  As Novelis pointed out, various pieces of information were disclosed at different times, in different contexts, to different people.  (Tr. at 86, ECF No. 521-7).  Arconic never explained where it disclosed to Novelis a full combination or put Novelis on notice that Arconic claimed any particular combination as its trade secret.  Arconic never explained the difference between its trade secrets and the general skill in the art or Novelis' pre-existing knowledge.  Arconic never explained how any of the 288 claimed trade secrets was distinct and qualified for protection.  In sum, Arconic did not put Novelis or the court on notice of what its trade secrets were.  *See Big*

*Vision*, 1 F. Supp.3d at 258 ("Specificity is required at the moment of divulging so that the party

to whom the secret is revealed understands the contours of the secret information and does not

inadvertently or purposefully transgress its boundaries.").

The most analogous decision located in the court's independent research is *NEXT*

*Payment.*  In that case, the plaintiff was given several opportunities to identify its trade secrets,

but instead of narrowing the trade secrets, it expanded them to include various combinations.

2020 WL 2836778, at *7, 12.  The court held that the plaintiff failed to satisfy the essential

element of the prima facie case that its information qualified as a trade secret, rather than

something generally known in the industry.  *Id.*  The court stated:  "Claiming that everything was

a trade secret – without identifying anything with specificity – meant that nothing was

protected."  *Id.* at 11 (citing *IDX Sys. Corp. v. Epic Sys. Corp*., 285 F.3d 581, 583 (7th Cir.

2002)).  The court granted summary judgment in favor of the defendant and explained:

> The failure to define the trade secrets with specificity, and the failure to separate
> the secrets from the non-secrets, meant that the claim could not survive. A party
> cannot bring a misappropriation claim without adequately describing what was
> stolen. And it was not the Court's job to parse out the trade secrets from the public-
> facing functions.

*Id.*  The court reiterated that a plaintiff must do more than just identify a kind of technology and

invite the court to hunt through the details to find items meeting the definition of a trade secret.

*Id.* at 15.  The court concluded:  "There is no question of fact for a jury if the plaintiff has not

offered enough specificity to support a verdict by a reasonable jury."  *Id.*

The same analysis discussed in *NEXT Payment* applies here.  Summary judgment in favor

of Novelis is appropriate because, despite numerous opportunities, Arconic never identified its

trade secrets with specificity or separated its claimed trade secrets from the admittedly public

information or Novelis' own knowledge.  Novelis cannot misappropriate trade secrets if it

developed the information itself.  Instead, Arconic expanded the number of its claims to cover

every permutation of steps/parameters related to the aluminum pretreatment field.  By

"[c]laiming that everything was a trade secret – without identifying anything with specificity – [

] nothing was protected [by Arconic]."  *Id.* at 11.  Arconic did not establish that it had any trade

secrets.  Arconic did not identify its claimed trade secrets with reasonable particularity and failed

to establish that it disclosed any trade secret to Novelis.  In sum, as in *NEXT Payment*, because

Arconic did not engage in a serious effort to pin down its trade secrets despite numerous

warnings, its trade secrets claims must fail as a matter of law.  *Id.* at *16. After multiple efforts to

"nail the jello to the wall," *see id*. at *13, the court is left with the distinct impression that

Arconic's real trade secret is the composition of the A951 chemical itself – which Arconic never

disclosed to Novelis.  No reasonable jury could find in favor of Arconic on its trade secrets

claims and summary judgment must be granted in favor of Novelis with respect to counts I, III,

V and VI of the second amended complaint.

c.   Other contentions

The court will respond briefly to Arconic's other contentions.  Instead of defending TS

ID #4, Arconic attempts to resuscitate TS ID #2.  In the Declaration of Dr. Matthew Wagenhofer

(ECF No. 304-9, sealed), Arconic tries to show that a POSITA would have known from TS ID

#2 what the trade secrets/confidential information were, and the same "trade secrets" (in contrast

to the explanatory information) are claimed in TS ID ## 3 and 4.  (ECF No. 521 at 34-37).  There

are at least three problems with this argument.  First, TS ID #2 was stricken, without objection

by Arconic.  Arconic did not attempt to reassert or revise the 43 trade secrets claimed in TS ID

#2; instead, it changed positions drastically to assert 288 combination trade secrets in TS ID ## 3

and 4.  There is no basis to go back to TS ID #2 – Arconic continues to assert that it has 288

combination trade secrets.  Second, a "reasonable particularity" standard was adopted, which required Arconic to identify each claimed trade secret or confidential information "with sufficient particularity so that the **reader[s]** [i.e., the court and defendants] understand[] how each such claim differs from public domain information—including public [] patent filings." (ECF No. 101 at 2-3 n.1) (emphasis added).  This level of disclosure – to which Arconic did not object – is necessary to enable the court and special master to oversee discovery and for Novelis to be able to know how to respond to discovery requests.  *Big Vision*, 1 F. Supp.3d at 258.  Third, reverting to TS ID #2 would not address prejudice.  More than 2 years have passed, in which the court expended great efforts to address TS ID ## 3 and 4 and Novelis incurred substantial legal fees.  Rewinding the clock to TS ID #2 would be prejudicial and would violate Federal Rule of Civil Procedure 1 (requiring the "just, speedy, and inexpensive determination of every action").

Despite four opportunities, the TS IDs never identified the trade secret claims based on discrete pieces of technical information.  Instead, Arconic continued to claim all permutations and combinations of steps/parameters involving that information.  *See* ECF No. 521 at 15 (Arconic is not asserting the individual components separately as trade secrets; it is asserting that the entire process described constitutes its trade secret).

Arconic's primary contention at the November 16, 2020 oral argument was that the "trade secrets" did not change since TS ID #2; only the information about public availability and uniqueness was added (ECF No. 554 at 2).  This contention is without merit, for two reasons.  First, if the trade secret is defined to be simply the "six-step process," as Arconic now suggests (*Id.* at 10) or the 16 parameters, then its trade secret claims must fail because Arconic admitted that the 6-step process and 16 parameters are not secret.  Second, the information about public availability and the uniqueness of each claimed combination is not ancillary to the trade secret

identification.  From the beginning of this case, Arconic was required to describe and disclose each combination trade secret with sufficient particularity to allow this case to move forward.[16] The information about what made each claim confidential and unique was inherent in, and essential to, each trade secret disclosure.  *See* R&R #3.  Arconic was well aware of these requirements and cannot excuse its failure to comply with these aspects of the court's orders.  In sum, Arconic failed to identify its trade secrets with the required specificity and therefore, as a matter of law, summary judgment must be granted in favor of Novelis on the trade secret claims set forth in counts I, III, V and VI of the second amended complaint.

2.  <u>In the alternative, dismissal of the trade secrets claims as a sanction is warranted</u>

A sanction of dismissing the trade secrets claims at counts I, III, V and VI is certainly appropriate in light of Arconic's failures to comply with this court's orders and is an independent, alternative rationale for the court's decision.

Arconic's failure to comply with numerous court orders requiring it to identify its trade secrets to allow discovery to proceed certainly falls within the scope of Federal Rule of Civil Procedure 37(b)(2)(A).  In R&R #33, the special master explained why the sanction of dismissal of the trade secret claims was warranted.[17]  The special master's R&R #33 and the court's show cause order did not specifically reference Rule 37 or the *Poulis* factors.  Arconic fully briefed the

---

[16] *See, e.g.,* R&R #3 ("To be sure, it is possible for a trade secret to be a unique combination of publicly-available elements. *See, e.g., Imperial Chem. Indus. v. Nat'l Distillers & Chem. Corp.,* 342 F.2d 737 (2d Cir. 1965) ("A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.). But without identifying which particular claim elements represent trade secrets or how publicly-available claim elements are uniquely combined so as to comprise a trade secret, Arconic's list of its first twenty-two alleged trade secrets does not inform the Court what it is that represents its allegedly misappropriated trade secrets.") (ECF No. 89 at 3).

[17] The confidential information claims, which the special master recommended survive, will be separately addressed.

issue of dismissal of its trade secret claims as a sanction in its objections to R&R #33.  Both

parties thoroughly briefed the application of the *Poulis* factors in this case.  *See In re Asbestos*

*Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 247 (3d Cir. 2013) ("concerns that are present when a

district court dismisses a case sua sponte without giving the plaintiff an opportunity to present

arguments against dismissal are lessened when dismissal is a result of a fully briefed motion.").

Arconic was clearly on notice since February 2019 that the court viewed its TS IDs as deficient.

The court now turns to the *Poulis* factors, 747 F.2d at 868, which guide a court's analysis about

whether dismissal is an appropriate sanction.

### a.  Extent of the party's personal responsibility

In R&R #33, the special master explained that the litigation strategy was driven by the

client, Arconic.  The court agrees.  In-house counsel participated in all the proceedings before the

court and the special master.  TS ID #3 was submitted after a lengthy interview with Arconic

personnel.  (ECF No. 543 at 88-91).  The initial attorneys were not replaced until after TSID #4.

Thus, Arconic bears primary responsibility for the repeated violations of the court orders.  The

first factor supports the sanction of dismissal of the trade secrets claims.

### b.  Prejudice to the adversary

Novelis is prejudiced by being forced to incur substantial litigation costs and by the delay

of the overall case.  The briefing and argument about Arconic's admittedly noncompliant TS IDs

was extensive and, given the number of attorneys involved on both sides, necessitated a costly

litigation strategy.  In addition, Novelis was required to engage in discovery based on the court's

affording Arconic multiple opportunities to identify its trade secrets.  Time is also a factor.

Although Arconic originally sought expedited discovery, after the filing of Novelis' antitrust

counterclaims, Arconic is now on the defensive.   In the antitrust counterclaims, Novelis argues

that it is paying inflated, unlawful royalties to Arconic.[18]  The discovery delays resulting from
Arconic's failures to identify its trade secrets/confidential information are preventing resolution
of the entire case.  The second factor favors the sanction of dismissal of the trade secrets claims.

### c.   History of dilatoriness

Arconic demonstrated a history of dilatoriness.[19]  It had four bites at the apple.  For its
fourth try, the special master gave very clear instructions.  Arconic failed to comply.  This factor
favors the sanction of dismissal of the trade secrets claims.

### d.   Willfulness or bad faith

The court concludes that Arconic's conduct was willful.  There is simply no other
reasonable explanation for its continued efforts to "hide the ball."  This factor favors the sanction
of dismissal of the trade secrets claims.

### e.   Effectiveness of sanctions other than dismissal

Based upon the fruitlessness of its extensive efforts to date to obtain a proper TS ID, the
court does not think that any alternative sanctions other than dismissal would be effective or cure
the prejudice suffered by Novelis.  This factor favors the sanction of dismissal of the trade secret
claims.

### f.   Meritoriousness of the claim

With respect to the final factor, Arconic's trade secrets claims lack merit and would not
survive summary judgment, for the reasons articulated above.  A party cannot succeed on a trade
secrets claim if the party cannot identify with reasonable particularity what its trade secrets are.
*NEXT Payment*, 2020 WL 2836778, at *11. The flaws in Arconic's TS IDs go to the heart of the

---

[18] Novelis' motion to file partial summary judgment on this issue remains pending before the court.
[19] Arconic's dilatory conduct was not limited to the TS IDs.  Arconic also delayed production of the
Chemetall Agreement for 5 months (ECF No. 252 at 3).

lack of substantive merit.  *See In re Asbestos*, 718 F.3d at 248.  Indeed, Arconic previously consented to the dismissal of its claims and the second amended complaint incorporates by reference the TS ID.  This factor favors the sanction of dismissal of the trade secrets claims.

In sum, applying the *Poulis* factors, dismissal with prejudice of the trade secret claims as a sanction under Rule 37(b) for Arconic's failure to abide by the court's orders is warranted and appropriate.  *See Demodulation, Inc. v. United States*, 122 Fed. Cl. 652, 659 (2015) (dismissal of all trade secret claims "entirely warranted" where plaintiff "was given multiple chances to correct and amend its responses, and its conduct was not merely the product of a misunderstanding of the Court's orders.").  The sanction of dismissal of Arconic's trade secrets claims at counts I, III, V and VI of the second amended complaint pursuant to Rule 37 is warranted.

### 3.   Conclusion about the trade secrets claims

There is no genuine dispute of material fact about the failure of Arconic to properly identify cognizable trade secrets and Novelis is entitled to judgment on the trade secrets claims as a matter of law.  Novelis is therefore entitled to summary judgment on counts I, III, V and VI of the second amended complaint.  In the alternative, the trade secrets claims are dismissed with prejudice as a sanction pursuant to Rule 37.

### B.  Confidential information claims

Arconic maintains that its confidential information claims are cognizable.[20]  Novelis contends that the confidential information claims should be stricken for failure to comply with

---

[20] Although Arconic objected to the special master's "*sua sponte* re-writing" of its confidential information claims (ECF No. 521 at 23), counsel confirmed at the November 16, 2020 oral argument that Arconic does not oppose the special master's recommendation that some aspects of the confidential information claims may proceed.

the court's orders, for the same reasons as the trade secrets claims.  The special master recommended that narrow portions of the confidential information claims survive.

Arconic contends that the 288 trade secrets and 288 confidential information claims are identical and are asserted in the alternative.  None of the TS ID's identified any distinctions between Arconic's trade secrets and its confidential information.  *See* Transcript, ECF No. 521-7 at 112 (Arconic's counsel explaining that the trade secrets and confidential information in TS ID #4 are "the same 288"); TS ID #2 (explaining that all 43 items were trade secrets, but in the alternative, the same 43 items constituted confidential information) (ECF No. 98 at 21-22).  This court's orders require that the same legal standards (i.e., reasonable particularity, good cause and explanatory information) be applied to identification of both the trade secret and confidential information claims.  *See* R&R #3 at 4 (because the trade secrets and confidential information claims are so closely inter-related, "the same identification process should apply to both.").

The confidential information claims, both substantively and procedurally, however, stand on a slightly different footing.  The substantive law governing confidential information claims is less demanding.  Information need not rise to the level of a trade secret in order to qualify for protection.  "A misappropriation of confidential information claim, also known as 'procuring information by improper means,' is defined as follows: the procurement, by improper means, for the purpose of advancing a rival business interest, of information about another's business." *Revzip, LLC v. McDonnell*, No. 3:19-CV-191, 2020 WL 1929523, at *11 (W.D. Pa. Apr. 21, 2020) (citing *Pestco, Inc. v. Ass'd. Prods., Inc.*, 880 A.2d 700, 708–09 (Pa. Super. Ct. 2005)); *see* Restatement (First) of Torts § 759 ("One who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information.").  Although the

PUTSA preempts tort law for misappropriation of trade secrets, courts continue to recognize a separate tort of conversion regarding confidential or proprietary information.  *Hill v. Best Med. Int'l, Inc.*, No. CA 07-1709, 2011 WL 5082208, at *15 (W.D. Pa. Oct. 25, 2011).

Procedurally, Arconic was specifically authorized to plead separately its confidential information claims.  In R&R #5, the special master recognized that under Pennsylvania law, confidential information claims may be pleaded in the alternative "if Arconic fails to prove that its claimed trade secrets meet the legal requisites for such a claim." (ECF No. 92 at 14).  Arconic was given the opportunity to set forth separate claims in the second amended complaint to assert that its confidential proprietary information was misused in connection with a breach of contract. *Id.*  In addition, because the special master recommended that portions of the confidential information claims survive, Arconic did not have the same opportunity or incentive to dispute the appropriateness of Rule 37 sanctions for the confidential information claims.  In sum, even though summary judgment is granted in favor of Novelis with respect to the trade secrets claims, or in the alternative they are dismissed with prejudice, the court must separately consider whether the confidential information claims survive.

The TS ID #4 chart contained certain information in **bold** (largely involving concentration levels, temperature and time ranges, etc.).  At the oral argument before the special master, Arconic contended that the information in bold should be regarded as its confidential information.  (Tr. at 63, ECF No. 521-7) (the "secret sauce" is the bolded information).  The special master concluded that although Arconic disclaimed the parameters as trade secrets, some of those parameters might constitute confidential information (R&R #33, ECF No. 510 at 55). The special master undertook a detailed analysis of the bolded information, noting that Arconic failed to provide such an analysis.  *Id.*  The specific items identified by the special master as

potentially supporting a confidential information claim (ECF No. 510 at 57-61) will not be restated in this opinion. The parties did not raise targeted objections about the analysis conducted or items identified by the special master.

The court concludes that the narrow aspects of Arconic's confidential information claims, as identified by the special master, may proceed. The allegation that Novelis may have disclosed some of Arconic's confidential information, in breach of its contractual duties, cannot be resolved as a matter of law. The confidential information claims will proceed on the narrow basis identified in R&R #33. Discovery shall commence forthwith and shall be completed as expeditiously as possible. Novelis' objections to R&R #33 will be DENIED.

C.  Novelis' motion to strike

Arconic's post-show cause submissions (ECF Nos. 300-306) are much ado about nothing. Arconic submitted thousands of pages in a premature effort to answer a strawman question the court never asked – namely, whether Arconic could defeat a hypothetical summary judgment motion on the overall merits. If a party, despite three years and four attempts, cannot even identify with reasonable particularity its own trade secrets, there is no possible way for those trade secrets to be adjudicated on the merits. The nonsensical nature of Arconic's approach in its post-show cause submissions is amplified by the fact that discovery on the overall merits of the claims was not completed.

Arconic acknowledged at the oral argument before the special master that its post-show cause submissions were unnecessary if "the exercise" was to show the court the evidence of how its identification of trade secrets/confidential information met the reasonable particularity standard. (Transcript, ECF No. 521-7 at 36). Counsel explained that those submissions were

designed to prevent waiver of Arconic's rights on the overall merits of summary judgment. (Transcript, ECF No. 521-7 at 39).

As the court and special master explained, the "exercise" required by the show cause order is focused on the identification of Arconic's trade secrets with reasonable particularity and not the overall merits of Arconic's claims. Arconic's post-show cause submissions (ECF Nos. 300-306), therefore, are not relevant and will not be considered by the court in resolving the show cause order. Novelis' motion to strike those filings (ECF No. 330) will be GRANTED. This aspect of R&R #33 is adopted as the opinion and order of the court, as supplemented herein.

V. Conclusion

In accordance with the foregoing, R&R #33 is adopted as the opinion and order of the court, as supplemented and modified herein, which includes the grant of summary judgment in favor of Novelis with respect to Arconic's trade secrets claims. Arconic's objections to R&R #33 (ECF No. 521) will be DENIED and Novelis' objections to R&R #33 (ECF No. 520) will be DENIED.  Pursuant to the show cause order (ECF No. 282), partial summary judgment will be entered on counts I, III, V and VI of the second amended complaint in favor of Novelis and against Arconic. Summary judgment will not be entered on the aspects of counts II and IV identified by the special master. Count VII of the second amended complaint will remain in the case. Novelis' motion to strike Arconic's post-show cause submissions (ECF No. 330) will be GRANTED.

An appropriate order follows.

Dated: December 9, 2020

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge
