IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARCONIC INC.**, | ) | CIVIL ACTION NO.  17-1434 |
| | ) | |
| Plaintiff, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **NOVELIS INC.** *and* **NOVELIS CORP,** | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION**

### I.  Introduction

There are two motions pending: a motion filed by Arconic, Inc. ("Arconic") (ECF No. 666), which seeks two unrelated forms of relief: (a) entry of final judgment under Rule 54(b) on Arconic's trade secret and confidential information claims; and (b) termination of the appointment of the special master.   Novelis Inc. and Novelis Corp. (collectively, "Novelis") filed a response to that motion, in which Novelis: (a) agreed to entry of judgment and certification under Rule 54(b); and (b) opposed removal of the special master (ECF No. 680). Arconic filed a reply brief (ECF No. 684).  The other pending motion was filed by Novelis and seeks to sever and stay its fifth counterclaim (ECF No. 658).  Arconic filed a response opposing that relief (ECF No. 665) and Novelis filed a reply brief (ECF No. 676).  The motions are ripe for disposition and will be resolved by the court.

### II.  Procedural Background

On December 9, 2020, the court issued an opinion and order which granted partial

summary judgment on Arconic's trade secret claims at counts I, III, V and VI of the second amended complaint in favor of Novelis and against Arconic (ECF Nos. 622, 623). Summary judgment was not entered on the limited aspects of Arconic's confidential information claims at counts II and IV identified by the special master. Count VII of the second amended complaint, in which Arconic seeks declaratory judgment that the 2012 Technology Access and License Agreement (the "License") does not include the "ion exchange patent," remains in the case.

Also remaining in this case are numerous counterclaims asserted by Novelis against Arconic. The parties agree that the counterclaims fall into two categories: (1) counterclaims 1, 2 and 5-9, which overlap with Arconic's trade secret claims, i.e., the "Dependent Counterclaims"; and (2) counterclaims 3, 4 and 10-13, which are related to Novelis' antitrust theories, i.e., the "Independent Counterclaims." *See* Joint Statement Regarding Counterclaim Discovery (ECF Nos. 567-3, 665-3). Discovery on the Independent Counterclaims is now complete, except for one deposition. Discovery on the Dependent Counterclaims was stayed while the court considered Arconic's trade secret claims, because the parties believed that the issues were intertwined. In the December 9, 2020 opinion, the court ordered that the remaining discovery "commence forthwith and shall be completed as expeditiously as possible." (ECF No. 623 at 40). The parties report that numerous disputes about the scope of that discovery remain pending before the special master.[1]

On December 15, 2020, the court issued an opinion and order denying Novelis' motion to seek partial summary judgment (ECF Nos. 631, 632). The court explained that completion of all remaining discovery followed by expert discovery and one round of comprehensive summary judgment motions is the most efficient manner to proceed.

---

[1] The parties' present discovery disputes were referred to the special master. The court observes that the scope of discovery should be determined based upon the claims and counterclaims remaining in the case, not the Arconic claims on which judgment was entered.

III. <u>Analysis</u>

    <u>A. Arconic's Motion</u>

       1. Certification issue

          a.  Policy against piecemeal appeals

There is a longstanding federal policy against piecemeal appeals. *Curtiss–Wright Corp. v. General Elec. Co*., 446 U.S. 1, 8 (1980). "Certification of a judgment as final under Rule 54(b) is the exception, not the rule, to the usual course of proceedings in a district court." *Elliott v. Archdiocese of New York*, 682 F.3d 213, 220 (3d Cir. 2012). The power conferred upon the trial judge by Rule 54(b) "should be used only in the infrequent harsh case as an instrument for the improved administration of justice." *Panichella v. Pa. R.R. Co*., 252 F.2d 452, 455 (3d Cir. 1958).

Although the inquiry is flexible, certification "should not be entered routinely or as a courtesy or accommodation to counsel." *Id.* Even if both parties consent to Rule 54(b) certification, as in this case, the court has an independent duty to examine whether the certification standards are met. *Otsuka Pharm. Co. v. Zydus Pharms. USA, Inc.*, 314 F.R.D. 372, 377 (D.N.J. 2016), <u>aff'd</u>, 694 F. App'x 808 (Fed. Cir. 2017).

          b.  Rule 54(b)

Rule 54(b) represents an attempt "to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 202 (3d Cir. 2006). To certify a final decision under Rule 54(b), the court must make two separate findings: (1) there has been a final judgment on the merits, i.e., an ultimate disposition on a cognizable claim for relief; and (2) there is "no just reason for delay." *Id.* (quoting *Curtiss–Wright*, 446 U.S. at 7–8). The district

court's decision is reviewed for abuse of discretion.  *Id.*

            i.        Lack of a final judgment

In this case, there are several claims on which Arconic seeks certification under Rule 54(b) on which there is no final judgment.  Indeed, Arconic has not dismissed the remainder of its confidential information claims at counts II and IV; instead, it offered to do so "***if*** Rule 54(b) judgment is entered."  (ECF No. 666 at 2) (emphasis added).  Arconic states that it will "not withdraw its pending confidential information claims if Rule 54(b) certification is denied."  (ECF No. 666-1 at 5 n.1).  In effect, Arconic is attempting to bargain with the court; i.e., it will dismiss the remainder of counts II and IV after (and only if) the court grants its motion.  The court is not a party and it would be improper for the court to engage in negotiations with a party.

Novelis' response attached a Joint [Proposed] Order for entry of judgment pursuant to Rule 54(b) (ECF No. 677-1).  Novelis' responsive brief contains a footnote reference that "the parties have since agreed on the Proposed Order attached to this brief."  (ECF No. 676 at 1 n.1).  There, however, is no filing on the record in which Arconic itself unequivocally instructed the court to dismiss counts II and IV.  As Arconic confirmed in its reply brief, the withdrawal of the remainder of counts II and IV has not yet occurred.  The only claims that were finally resolved in the December 2020 order were counts I, III, V and VI, and the parties appear to recognize that Rule 54(b) certification would not be appropriate on those claims alone.  Count VII of Arconic's second amended complaint also remains in the case.  In sum, at this stage of the case, there is not an appropriate final judgment for the court to even consider Rule 54(b).

            ii.       No just reason for delay

As an initial matter, Arconic waited six months before seeking Rule 54(b) certification. *See King v. Newbold*, 845 F.3d 866, 868 (7th Cir. 2017) ("as a general rule it is an abuse of

discretion for a district judge to grant a motion for a Rule 54(b) order when the motion is filed

more than thirty days after the entry of the adjudication to which it relates.") (citation omitted).

In *King*, the court recognized that an untimely motion could be granted if the movant

demonstrated extreme hardship, but Arconic has not done so.  Arconic merely states that it

recently became clear that the parties' disputes about the scope of remaining discovery would

limit its ability to defend itself against Novelis' counterclaims and may lead to a retrial if the

court's decision is reversed.  (ECF No. 666-1 at 9). For a complete analysis, the court will

assume for the sake of argument that the motion was timely filed.

Based upon the current record, even if Arconic were to dismiss counts II and IV, the

court cannot conclude that Rule 54(b) certification is appropriate after weighing the factors

regarding "no just reason for delay."  District courts should consider several factors when

assessing whether there is a "no just reason for delay" under Rule 54(b):

> (1) the relationship between the adjudicated and unadjudicated claims;

> (2) the possibility that the need for review might or might not be mooted by future developments in the district court;

> (3) the possibility that the reviewing court might be obliged to consider the same issue a second time;

> (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; [and]

> (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id*. at 203.

The first factor, whether the certified claims can be separated from the remaining claims,

weighs heavily against certification.  Even assuming, arguendo, Arconic's trade secret and

confidential information claims were dismissed, Novelis' Dependent Counterclaims remain

unadjudicated.  The parties agreed, and represented, that the Dependent Counterclaims are

intertwined with the claims on which they seek Rule 54(b) certification, such that discovery was stayed on the Dependent Counterclaims while the court considered the appropriate sanction for Arconic's failure to identify properly its trade secrets and confidential information.  *See* Joint Statement Regarding Counterclaim Discovery (ECF Nos. 567-3, 665-3).  Novelis proposes that the Dependent Counterclaims be stayed pending the Rule 54(b) certification, and reasons that the parties may have to engage in duplicative discovery if the court's decision is reversed on the interlocutory appeal.  The court is not convinced.  If this court's decision is reversed, discovery will still be needed on the counterclaims and, if affirmed on the interlocutory appeal, the case would need to be remanded for additional discovery and other proceedings on Novelis' counterclaims.

The second factor, whether future developments may moot the need for appellate review, weighs against certification.  If Arconic prevails on the antitrust claims (or if the parties reach a settlement), the case may be over.  If Arconic takes an appeal on the trade secret issues, whichever party loses on the antitrust issues may also appeal.  In that scenario, judicial efficiency will be promoted by a consolidated appeal -- rather than piecemeal appeals that would result from Rule 54(b) certification.

The third factor, whether the appellate court might be obliged to consider the same issue a second time, weighs against certification.  The parties agree that Novelis' counterclaims – which remain in the case – are intertwined with the claims on which the parties are seeking Rule 54(b) certification.  Similar issues may be presented when those counterclaims are finally adjudicated.  The policy against piecemeal appeals teaches that judicial economy is enhanced by considering all appellate issues in a case in one consolidated appeal.

The fourth factor, setoffs, was not addressed by the parties.

The fifth factor, miscellaneous considerations, weighs against certification.  An interlocutory appeal might not expedite the end of this litigation.  This case is near to becoming trial ready.  The court ordered all remaining discovery to be promptly concluded.  The court denied Novelis' request for piecemeal summary judgment briefing and contemplates a finite period to resolve dispositive motions, followed by trial.  Novelis' proposal to stay its Dependent Counterclaims would further delay final resolution of this case, which is already four years old, and could cause additional legal expense.  Arconic's proposal to stay <u>all</u> proceedings during the interlocutory appeal would result in even more delay because the interlocutory appeal will not resolve all the claims and counterclaims.[2]  Economic and solvency considerations are not a factor, because both parties are large corporations and have made millions of dollars from the A951 technology at issue in this case.  (*See* ECF No. 665 at 2).

iii.      Conclusion about Rule 54(b) certification

The court acknowledges that if Arconic were to prevail on an appeal of the trade secret issues, additional discovery and perhaps retrial may have to be done on remand.[3]  But that consideration arises in all cases in which a party seeks to preserve a legal challenge to a district court ruling; it cannot be sufficient to overcome the well-established policy against piecemeal appeals.  In *Flynn & Emrich Co. v. Greenwood*, 242 F.2d 737 (4th Cir. 1957), the court of appeals explained:  "It would doubtless be convenient to the parties for us to pass upon this affirmative defense in advance of the trial of the case, but it would establish a precedent which might be very harmful in the administration of justice."  *Id*. at 741.

The court disagrees with Arconic's attempt to portray the relevant issue for certification

---

[2] Arconic contends that the entire case, including the antitrust claims, should be stayed pending resolution of the certification.

[3] On the other hand, if this court's decision was affirmed, the case would have remained needlessly stuck in its current posture, but for the additional delay and expense caused by the interlocutory appeal.

as one of first impression regarding the contours of its duty to describe its trade secrets with reasonable particularity (ECF No. 661-1 at 15-16).  Arconic waived any arguments about the applicable legal standard by its repeated failures to object to the special master's reports and recommendations about those duties, which the court adopted.  Arconic was well-aware of its duty to object.  *See* Arconic's reply brief (ECF No. 684 at 5) ("Indeed, the Order appointing the Special Master states that '[t]he failure to file a timely objection shall constitute a waiver of any objection.' Dkt. 50 at 4.").  Indeed, Arconic's trade secret and confidential information claims were dismissed, without objection by Arconic, for failure to properly identify them.  *See* ECF No. 623 at 9 (summarizing procedural history).  In the court's view, one issue that would be presented in an interlocutory appeal does not involve the merits of the claims at issue; rather, the issue is the appropriate sanction for a party who repeatedly fails to comply with the court's orders.  (ECF No. 623 at 34-37) (discussing Rule 37(b)).

In sum, despite the parties' agreement, this case as presently postured does not meet the difficult standard to justify a departure from the general policy against piecemeal appeals.  The motion to enter judgment under Rule 54(b) and stay some or all of the remaining proceedings pending an interlocutory appeal will be DENIED.

2.   Termination of the appointment of the special master issue

Arconic asks the court to vacate the appointment of the special master.[4]  Arconic argues that this case is at an "inflection point," after the ruling on the trade secret and confidential information claims.[5]  Arconic contends that because several new district judges were confirmed

---

[4] Arconic refers to "withdrawal of the reference," which in essence is seeking to terminate the appointment of the special master.

[5] As the court noted above, the "inflection point" is not complete because portions of Arconic's confidential information claims and Novelis' "Dependent Counterclaims" remain in the case.

to the United States District Court for the Western District of Pennsylvania, this case may be effectively and timely addressed by the court, such that the continued appointment of the special master is not warranted.

The court recognizes its discretion to modify or terminate the appointment of a special master. *See* Fed. R. Civ. P. 53(b)(4) ("The order [appointing a master] may be amended at any time after notice to the parties and an opportunity to be heard."). The court declines to terminate the appointment at this stage of the case, for the reasons set forth below.

Contrary to Arconic's suggestion, the primary consideration in deciding to appoint a special master in this case was not the number of active judges on the court. The court decided to appoint a special master in December 2017, at the inception of this case, correctly perceiving the large scale of this litigation and the litigiousness of the combatants. The court also anticipated that complex issues of trade secret and intellectual property law may arise. *See* Order Appointing Discovery Special Master (ECF No. 50). This is an exceptional case, by any measure. Arconic did not object to appointment of a special master and suggested several candidates to serve in that capacity (ECF No. 45). In its pending motion, Arconic does not challenge the initial appointment of the special master or the work performed to date; rather, it contends that a special master is no longer needed. The court does not agree.

The special master, a former federal court judge, has extensive experience in trade secret and antitrust litigation. The special master has been, and continues to be, of great benefit to the court in this litigious case with 680 docket entries (as of June 3, 2021). In addition, and not reflected on the docket, the parties litigated a vast number of discovery disputes before the special master. For example, in April 2019, they submitted a 101-page Redfern chart listing 70 issues in dispute, supported by over 1000 pages of materials. (*See* ECF No. 426). After extensive proceedings with the special master and the filing of R&R #29, only three issues

required resolution by the court (*See* ECF No. 499).  Given the issues raised in this litigation, the number and complexity of the disputes and the resources of the parties, the expenses associated with the special master are reasonable.

The special master possesses invaluable, detailed knowledge about this litigation, acquired over three and a half years of service, particularly about the numerous discovery disputes that were resolved without court intervention.  Arconic's suggestion that a magistrate judge could be appointed to oversee the remaining discovery is not persuasive.  The magistrate judges in this district have full, independent case loads and are assigned to civil cases based upon an automated random selection process.  Local Rule 72.G.  Only approximately one-third of a district judge's cases are assigned to a magistrate judge.  This case was not assigned to a magistrate judge.  This court cannot unilaterally change the local rules or deviate from these procedures and, in any event, there is no reason to do so because discovery is nearing its end.

Numerous discovery disputes remain pending before the special master.  On April 5, 2021, the parties represented that they agreed on a case schedule, with all fact discovery to be completed by July 1, 2021; expert reports and responsive expert reports to be done by September 16, 2021; and expert discovery to be completed by October 21, 2021 (ECF No. 663-1).  The court concludes that the just, speedy and inexpensive determination of this proceeding can best be achieved by adhering to this schedule, including the resolution of all remaining discovery disputes by the special master (subject to de novo review by the court).

B.  Novelis' motion to sever counterclaim

Novelis asks the court to sever and stay counterclaim 5, in which it contends that Arconic breached the 2012 License by filing a derivation proceeding with the United States Patent and Trademark Office ("USPTO").   Counterclaim 5 is identified as one of the Dependent

10

Counterclaims. To the extent that Novelis' motion is under consideration by the special master, the court will withdraw that motion and resolve it in this opinion in order for the discovery to close as soon as possible.

Under Federal Rule of Civil Procedure 21, the court may "sever any claim against a party." Pursuant to Federal Rule of Civil Procedure 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." "Severance pursuant to Rule 21 essentially creates a separate case, the disposition of which is final and appealable," while "Rule 42(b) does not create a new case, but bifurcates issues or claims within a single case for separate trials." *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2015 WL 6134052, at *1 (W.D. Pa. Oct. 16, 2015) (citing *Graudins v. Retro Fitness, LLC*, 921 F.Supp.2d 456, 468 (E.D. Pa. 2013)).

The decisions to sever and stay a claim are within the court's discretion. *Id.* at *2. In exercising that discretion, courts consider the following factors: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Id.* (citations omitted). Courts avoid severing claims because a single trial will generally minimize the delay, expense and inconvenience to the parties and the court. *Id.*

Arconic filed the derivation proceeding in November 2017, the day before it initiated this case. That proceeding is not resolved, and there is no statutory deadline for the USPTO to act within a set time frame. Novelis, therefore, is seeking an open-ended delay. Novelis' contention

that counterclaim 5 "turns on a predicate ruling" by the USPTO (ECF No. 676 at 4) begs the question whether counterclaim 5 is ripe.

Counterclaim 5 arises out of the same transaction or occurrence as numerous other counterclaims, namely the 2012 License.  Common questions of law and fact exist about the parties' duties under that License and the development of the technology that led to Novelis' patent application and Arconic's derivation proceeding.  Common witnesses may exist.  Novelis' attempt to distinguish counterclaim 5 from its other counterclaims, in that they turn on whether Novelis breached the License, is unconvincing.  Severance is not likely to promote settlement and will not advance judicial economy.  Instead, severance will simply prolong a piece of this litigation for resolution at some indeterminate later date.  The court cannot perceive any prejudice to Novelis if severance is not granted; Novelis knew about the derivation proceeding years ago, when it chose to assert counterclaim 5.

One of Novelis' primary objectives in seeking severance was to avoid disputes about the scope of remaining discovery.  In its reply brief, Novelis acknowledges that severance will not achieve that laudable objective because Arconic still intends to pursue the same broad discovery on six other counterclaims (ECF No. 676 at 8).  Delaying resolution of the discovery disputes will not facilitate the just, speedy or inexpensive determination of this case.  Instead, severance would likely result in undertaking duplicative discovery, motions practice and trial at some later date.  In sum, severance and stay of counterclaim 5 are not warranted.

IV. <u>Conclusion</u>

To reiterate, this case must be brought to an end and is currently postured to achieve that result.  The court is not persuaded by the efforts of either side to certify, sever, stay or otherwise defer resolution of separate claims or counterclaims.  All remaining fact discovery must be

expeditiously completed.  Counsel are reminded of their obligation to meet and confer to attempt reasonably to resolve their disputes.  *See* Fed. R. Civ. P. 37(a)(1) (discovery motion must include certification that movant has in good faith conferred with the opposing party in an effort to obtain discovery without court action).  The special master will continue to oversee discovery, including disputes with respect to scope, with de novo review by the court -- if necessary.  The parties will complete expert discovery on all remaining claims and counterclaims, followed by dispositive motions and, if necessary, trial.

In accordance with the foregoing discussion, Arconic's motion to certify and withdraw the reference to the special master (ECF No. 666) will be DENIED and Novelis' motion to sever and stay counterclaim 5 (ECF No. 658) will be DENIED.

An appropriate order follows.

Dated:  June 8, 2021                              /s/ Joy Flowers Conti

                                                  Joy Flowers Conti
                                                  Senior United States District Judge