IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARCONIC INC.,** | ) | CIVIL ACTION NO. 17-1434 |
| | ) | |
| Plaintiff, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| v. | ) | |
| | ) | |
| **NOVELIS INC.** *and* **NOVELIS CORP,** | ) | |
| | ) | |
| Defendants. | ) | |

**SPECIAL MASTER REPORT & RECOMMENDATION # 37:
NOVELIS' CLAIM OF PRIVILEGE OVER CERTAIN CLAWED BACK DOCUMENTS**

Before the Special Master is a dispute regarding Novelis' attempt to clawback three emails that it produced but now claims privilege over pursuant to both the attorney-client privilege and the patent agent privilege. On July 6, 2021, the Special Master requested that Novelis provide the clawed back documents for *in camera* review, as well as contemporaneous emails (whether privileged or not) involving the same individuals that shed light on the purpose of the clawed back emails and assertion of privilege by Novelis. Novelis made the requested submission on July 13, 2021.

The clawed back emails are variations on one email, dated April 2, 2015, from Michael Bull to Theresa MacFarlane, Todd Summe and Dewei Zhu, all technical, non-attorney, employees (the "April 2 Email"). Mr. Bull copied Freddie Hughes, Novelis' IP Manager, to the email. Novelis contends that Dr. Hughes acted as Novelis' patent agent. The April 2 Email, subject line "A951, IP and Rinse," discusses certain specifications for the rinse step in the A951

process that Novelis purportedly developed through its own experimentation. Novelis claims that Dr. Hughes, in his capacity as a patent agent, was collecting information "at the request of and provided to the Novelis legal department for the purpose of obtaining patent related advice." (June 25, 2021 Joint Redfern at 10.) Novelis submitted affidavits from Mr. Bull and Dr. Hughes to substantiate its claim of privilege over these documents. (June 25, 2021 Joint Redfern, Exs. A, B.)

Arconic disputes the claim of any privilege (whether attorney-client or patent agent) because Dr. Hughes did not participate in the email discussion, which appears to be "*among* technical employees," and because "there is no indication that the email was seeking legal advice, or even 'reflects' legal advice, regarding patent prosecution." (June 25, 2021 Joint Redfern at 12.) Arconic further argues that there is no indication that Dr. Hughes "was acting under the authority and control of an attorney—no attorneys are copied on the email . . . ." (*Id.*)

The Special Master has reviewed the submitted materials *in camera*. The following is a timeline of the relevant communications surrounding the April 2 Email (stated generally so as to not reveal the substance of any privileged communication):

- 3/26/2015 and 3/30/2015: two separate emails show Dr. Hughes (Novelis patent agent) communicating with technical employees seeking to document certain Novelis IP related to A951. (*In camera* Exs. E, F.)

- 4/1/2015: Mr. Summe emails Dr. Hughes (Novelis patent agent), Chris Courts (Novelis' in-house counsel) and technical employees, Ms. MacFarlane and Mr. Bull, requesting a meeting to discuss potential A951 IP. The email summarizes IP developments Novelis purportedly made. Mr. Courts' email response (dated

April 2) indicates that he and Dr. Hughes had had discussions about the issues described in the April 1 email.  (*In camera* Ex. I.)

- 4/1/2015:  Mr. Bull emails Dan Bergdahl (technical employee), copying Dr. Hughes (Novelis patent agent) and Mr. Courts (Novelis in-house counsel) and certain technical employees, regarding documentation of A951 IP.  (*In camera* Ex. G.)

- 4/2/2015:  Mr. Bull sends the April 2 Email to the other technical employees, copying Dr. Hughes.  (*In camera* Exs. B, C, D.)

- 4/2/2021:  Dr. Hughes forwards the April 2 Email as an "fyi" to Mr. Courts (Novelis in-house counsel), copying Jennifer Maxwell and Cecelia Andrews (both Novelis in-house counsel).  (*In camera* Ex. H.)

Together these emails show that Dr. Hughes, at the direction of Mr. Courts, liaised with technical employees to gather information and documentation related to Novelis' purported IP pertaining to A951 for use in possible patent applications.  These emails further show that Novelis in-house counsel, primarily Mr. Courts, interacted with Dr. Hughes, as well as directly with the involved technical employees, to discuss and seek documentation of aspects of Novelis' purported A951 IP that could be included in a patent application.

Specifically as it relates to the context surrounding the April 2 Email, it is relevant that Dr. Hughes immediately forwarded the April 2 Email to Mr. Courts.  Further, on the very same day as Mr. Bull sent the April 2 Email, Mr. Courts replied (in a separate privileged email chain) indicating that he and Dr. Hughes had had multiple discussions regarding actions to be taken related to purported Novelis A951 IP.  Without revealing the substance of the email discussions, the subject matter of the various email chains overlaps with the April 2 Email.  Further, Dr.

Hughes and Mr. Bull state in affidavits that Dr. Hughes was responsible for gathering information to evaluate the patentability of Novelis' IP pertaining to A951, and that the April 2 Email was sent for purposes of pursuing a patent application.

This is sufficient context to indicate that the April 2 Email contained information "gathered at the direction of [counsel], for the purpose of assisting him in providing legal advice and formulating legal strategy," and thus all three variations of the email are protected under the attorney-client privilege. *Cottillion v. United Ref. Co.*, 279 F.R.D. 290, 305 (W.D. Pa. 2011). Technical information provided to counsel for purposes of a patent application can be privileged "as long as [the communication] was made for the purpose of securing legal advice or legal services, or conveying legal advice." *SmithKline Beecham Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005); *see also In re Federated Mutual Funds Excessive Fee Litig.*, 2010 WL 11469561, at *4 (W.D. Pa. 2010) ("Thus, although the report was not legal in nature, its value to counsel in formulating ongoing legal strategy and providing future advice regarding plaintiff's existing and potential claims readily is apparent.").

Finding that the April 2 Email is privileged is consistent with the Special Master's findings in Report & Recommendation No. 26 regarding certain documents clawed back by Arconic, over which Novelis' challenged the assertion of privilege. There, an analysis exchanged between non-attorney employees, which on its face contained no reference to counsel, was nonetheless found to be privileged because contemporaneous communications demonstrated that the information was compiled to facilitate legal advice provided by Arconic counsel. Dkt. 232 at 3-5. Likewise here, although the April 2 Email does not explicitly state that the information was being sent in order to request legal advice from Mr. Courts, the

contemporaneous emails provide the context to show that the information was being compiled for that purpose.

In finding that the three iterations of the April 2 Email are protected under the attorney-client privilege, the Special Master does not reach the question of whether the emails meet the standard for the patent agent privilege. The contemporaneous emails show that the technical information reflected in April 2 Email was gathered to facilitate legal advice pertaining to Novelis IP provided by Mr. Courts (among other Novelis attorneys). Whether Dr. Hughes' involvement independently satisfies the narrower patent agent privilege is a question that need not be reached.

/s Faith S. Hochberg
Faith S. Hochberg, U.S.D.J. (Ret.)
Special Master

July 19, 2021
Date: