IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARCONIC CORPORATION AND HOWMET AEROSPACE INC.**, | ) CIVIL ACTION NO. 17-1434 )<br>) JUDGE JOY FLOWERS CONTI |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) |
| v. | ) ) |
| **NOVELIS INC.** *and* **NOVELIS CORP,** | ) ) |
| Defendants and Counterclaim Plaintiffs. | ) |

## OPINION

Pending now before the court are objections (ECF Nos. 725, 726) filed by Arconic Corporation and Howmet Aerospace Inc. (collectively, "Arconic") to the special master's Report and Recommendation ("R&R") #38 (ECF No. 715) and R&R #39 (ECF No. 716, with sealed attachments at ECF Nos. 717, 718). Novelis Inc. and Novelis Corp. (collectively, "Novelis") filed responses to the objections (ECF Nos. 732, 733). The court heard oral argument on September 8, 2021. The objections are ripe for disposition.[1]

The disputes involve the scope of discovery. In R&R #38, the special master recommended that Arconic's request that Novelis supplement its interrogatory responses with a more definite statement of Novelis' claimed improvements be denied. In R&R #39, the special master recommended that:

1. The scope of discovery for Novelis' counterclaims that relate to the publication of the '440 patent application shall be limited to:

---

[1] This opinion does not address special master R&R #40 (involving discovery about the *Georgia Pacific* factors), or any objections thereto.

>    a. The seven items of confidential information the Court allowed to proceed in the Summary Judgment Order, as identified by Arconic in blue in the attached Exhibit A, and
>
>    b. The Improvements asserted by Novelis, as identified by Novelis in yellow in the attached Exhibit B;
>
> 2. Within seven days of this Report & Recommendation, Novelis shall identify any portions of the '440 patent application that exceed sub-parts (a) and (b) above:
>    a. That it intends to assert as grounds for its counterclaims related to the publication of the '440 patent application, and/or
>    b. That it intends to assert as a defense to Arconic's breach of contract claims related to the seven items of confidential information;
>
> 3. If Novelis identifies additional grounds pursuant to (2) above, Arconic shall be permitted to ask deposition questions on those additional portions of the patent application.

(ECF No. 716 at 10-11). Novelis represented that it does not intend to assert portions of the '440 patent application that exceed subparts 1(a) and (b). (ECF No. 732 at 4).

Standard of Review

There is a split of authority with respect to the appropriate standard of review. A court generally reviews a special master's R&R de novo, pursuant to Federal Rule of Civil Procedure 53. *Commissariat %22a l'Energie Atomique v. Samsung Elecs. Co.*, 245 F.R.D. 177, 179 (D. Del. 2007) ("The plain language of Rule 53 shows that the review of a Special Master's decision requires the court to make a de novo determination, not conduct a de novo hearing.").

Pursuant to Federal Rule of Civil Procedure 53(f)(5), however, courts review objections to a special master's ruling on a procedural matter only for abuse of discretion. *See* Fed. R. Civ. P. 53(f)(5) ("Unless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion."). Nothing in the special master appointment order in this case (ECF No. 50) changes the applicable standard of review.

The majority of courts regard a special master's determination about the scope of discovery as a procedural matter subject to "abuse of discretion" review. *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, No. 5:18-CV-1729, 2020 WL 7706257, at *2 (N.D. Ohio Dec. 29, 2020); *Accord In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2014 WL 5654318, at *1 (D. Minn. Jan. 28, 2014) (collecting decisions). In *In re Lincoln Nat'l COI Litig.*, No. 16-CV-06605-GJP, 2019 WL 3940912, at *2 (E.D. Pa. Aug. 21, 2019), the court noted a split of authority on this issue and concluded that "[g]iven the nature of the discovery disputes here," the objections to the special master's findings would be reviewed de novo. *See also Callwave Commc'ns LLC v. AT&T Mobility LLC*, No. CV 12-1701-RGA, 2016 WL 3450736, at *1 (D. Del. June 16, 2016) (explaining that a failure to comply with the schedule would be a procedural matter under Rule 53(f)(5), but resolution of attorney-client privilege issues and exclusion of evidence at trial would be non-procedural and subject to de novo review under Rule 53(f)(3),(4)).

In the exercise of caution, the court will apply a de novo review to the pending objections in this case.

Procedural History

The pending discovery disputes must be viewed in the context of the unique and tortuous procedural history of this litigation. (*See* ECF No. 623). Of particular relevance, the court and special master engaged in repeated efforts to have Arconic identify its claimed trade secrets and confidential information ("TS IDs"). After Arconic submitted four non-compliant TS IDs, the court granted partial summary judgment in favor of Novelis and against Arconic on Arconic' trade secrets claims at counts I, III, V and VI of the second amended complaint. The court did not enter summary judgment on counts II and IV of Arconic's second amended complaint with respect to 7 pieces of confidential information identified by the special master in R&R #33 (the

"7 items").

Contrary to Arconic's argument (ECF No. 726 at 3), at no time did the court hold that the reasonable particularity trade secret standards apply to breach of contract claims. To the contrary, the court recognized the confidential information claims were different, both substantively and procedurally, than trade secret claims. (ECF No. 623 at 38). The court observed that the "substantive law governing confidential information claims is less demanding. Information need not rise to the level of a trade secret in order to qualify for protection." (ECF No. 623 at 38). *See also* R&R #5 (special master recognized that under Pennsylvania law, confidential information claims may be pleaded in the alternative "if Arconic fails to prove that its claimed trade secrets meet the legal requisites for such a claim.") (ECF No. 92 at 14). The special master gave Arconic leave to amend its complaint to plead breaches of confidential information as separate claims. *Id.*

Arconic, not the court, intertwined the disclosure obligations for its trade secrets and confidential information. From the beginning of the identification process, Arconic took the position that the contractual breach of confidential information claims were pleaded in the alternative, in the event that its claimed trade secrets were found not to have all the indicia of trade secret status. (*See* R&R #3, ECF No. 89 at 4). The chart attached to R&R #3 provided Arconic with the opportunity to identify separately the trade secrets and confidential information (ECF No. 89-1). Arconic did not do so; instead, Arconic contended that the 43 items it listed in TS ID #2 were trade secrets but, in the alternative, the same 43 items constituted confidential information (ECF No. 98 at 21-22). Arconic maintained this position throughout the litigation. *See* Transcript, ECF No. 521-7 at 112 (Arconic's counsel explaining that the trade secrets and confidential information in TS ID #4 are "the same 288").

4

In R&R #3, the special master recommended that the same disclosure standards should apply to the trade secrets and confidential information because Arconic regarded them as closely related. Arconic did not object to this combined treatment; the court adopted R&R #3; and it therefore became the law of the case. In R&R #5, the special master recommended that Arconic's trade secret and confidential information claims be dismissed, subject to its ability to replead after it made a TS ID in conformance with the standards in R&R #3. Arconic was given an opportunity to separately plead its confidential information claims. (*See* R&R #5 at 17, ECF No. 92, adopted without objection as the opinion and order of court at ECF Nos. 113, 114). As the court observed in the December 9, 2020 opinion:

> To reiterate, the court **dismissed** the relevant counts of Arconic's original complaint for failure to plead plausible trade secrets or confidential information. Arconic did not object to the dismissal. By not objecting to R&R ## 3 and 5, Arconic admitted its duty to make pre-discovery disclosures of its claimed trade secrets with reasonable particularity and to show good cause for any revisions to its dsclosures. Arconic also conceded that its trade secret and confidential information claims were properly dismissed because it failed to do so. The court emphasized that the legal reasoning in R&R #5 "will govern future proceedings" and was the law of the case (ECF No. 112 at 2).

ECF No. 623 at 9. In sum, Arconic long ago waived its ability to challenge that its trade secrets and confidential information must be disclosed with reasonable particularity.

Ultimately, Arconic's repeated failures to make a proper TS ID resulted in summary judgment being granted on all its trade secret claims, and all its confidential information claims except the 7 items, as explained in the December 9, 2020 opinion and order. The court explained that Arconic's failure to provide a proper TS ID affected the scope of the case, as follows: "If a party, despite three years and four attempts, cannot even identify with reasonable particularity its own trade secrets, there is no possible way for those trade secrets to be adjudicated on the merits." ECF No. 623 at 40.

Discovery on both Arconic's claims and Novelis' counterclaims had been stayed pending a proper TS ID. R&R #20 (ECF No. 209). The court reopened discovery in the December 9, 2020 opinion and order. The court explained: "The confidential information claims will proceed on the narrow basis identified in R&R #33. Discovery shall commence forthwith and shall be completed as expeditiously as possible." ECF No. 623 at 40.

Legal Analysis

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The court is required to impose limits on discovery in some circumstances:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). The parties' disputes will be addressed seriatim.

A. Novelis' identification of its claimed confidential information

Arconic, misleadingly, frames the issue as whether the same identification standard applies to Arconic's and Novelis' breach of contract claims. In essence, Arconic argues that

6

because the court required Arconic to identify its claimed trade secrets and confidential information with reasonable particularity, Novelis must also do so.

This false equivalence ignores several important distinctions, including: (1) the tortuous procedural history of Arconic's failures to make proper TS IDs; (2) Arconic's position that its trade secrets and confidential information were the same; (3) Novelis did not assert trade secret claims; and (4) the gravamen of Novelis' contract theory is not that Arconic published its trade secrets/confidential information, but that Arconic wrongfully terminated the 2012 Technology Access & License Agreement (the "contract").  The actual issue, as the court sees it, is the appropriate scope of discovery at this stage of the case.

As reflected in its summary of the procedural history, the court recognized the legal distinctions between trade secret and confidential information claims throughout this litigation. Indeed, the court directed Arconic to replead those counts of the complaint to make them separate.  If the court had treated the trade secrets and confidential information claims as identical, it would have granted summary judgment in favor of Novelis on counts II and IV in their entireties.

The reasonable particularity TS ID disclosure obligation was imposed on Arconic – without objection – because Arconic defined its trade secrets and confidential information as being the same.  In other words, contrary to Arconic's suggestion, the court never applied the same legal rules to trade secret and breach of confidential information claims; instead, it merely imposed the same disclosure obligations on Arconic to enable discovery to proceed.  Because Novelis never asserted trade secret claims, the reasonable particularity standard does not apply to Novelis' disclosures.

Engaging in full-blown discovery on the full scope of Novelis' claimed proprietary technology is not appropriate at this stage of the case.  The disputes have been substantially

narrowed. The court recognized in its December 9, 2020 opinion that "[Arconic] cannot prove that [Novelis] breached its contractual duties if it cannot identify what trade secrets it disclosed to [Novelis]. Those concerns are heightened when the parties' contracts specifically permit the other party to use general industry practices and improvements it independently developed." (ECF No. 623 at 23). The court determined that Arconic did not adequately identify any of its trade secrets, and that Arconic properly identified only 7 items of confidential information. In short, Arconic cannot win on its claims based on trade secrets or confidential information Arconic did not tell Novelis about. *See* December 9, 2020 Opinion (ECF No. 623 at 30-31) (discussing *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224 (S.D.N.Y. 2014) and *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 1:17-CV-8829, 2020 WL 2836778 (N.D. Ill. May 31, 2020)).

It necessarily follows that Arconic cannot defend against Novelis' counterclaims by contending it rightfully terminated the contract by pointing to alleged trade secrets or confidential information it did not properly identify to Novelis. As the special master observed, Novelis' counterclaims, in this context, are the mirror image of Arconic's claims. Judgment was entered against Arconic on the trade secrets claims and any confidential information claims other than the 7 items. The judgment is law of the case with respect to the issues Arconic seeks to use to defend against the wrongful termination counterclaims, other than the 7 items articulated by the special master. In other words, Arconic would only be justified in terminating the contract if Novelis disclosed those 7 items. Only information about Novelis' independent knowledge concerning the 7 items (i.e., whether the 7 items are really Arconic's confidential information) remains relevant.

The primary focus of both the claims and counterclaims is on <u>Arconic's</u> technology; i.e., whether Novelis disclosed Arconic's information; and whether Arconic had a valid basis to

terminate the contract. Novelis' technology only becomes relevant to rebut Arconic's claims of ownership. Arconic's attempt to conduct full-blown discovery into all of Novelis' claimed improvements (as opposed to limiting such discovery to the 7 items which might justify Arconic's termination of the contract) is not proportional to the needs of the case, and the burden, expense and time required to conduct Arconic's proposed discovery far outweighs its likely benefit.[2] Arconic did not articulate how the more detailed disclosure of Novelis' technology it seeks is relevant and proportional to the claims and defenses that remain in the case. Fed. R. Civ. P. 26(b); *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp.3d 810, 823 (W.D. Pa. 2016), on reconsideration sub nom. Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc., No. CV 10-1609, 2017 WL 432947 (W.D. Pa. Feb. 1, 2017) ("scope of discovery is limited to matter that is relevant to claims or defenses and is proportional to the needs of a case.").

Arconic specifically objects to Novelis' Improvement Charts, and in particular, the references to "various process parameters." Arconic argues that the shortcomings in the Improvement Charts were not entirely cured by the special master in requiring Novelis to: (1) highlight the portions of the '440 patent covered by its claimed improvements; and (2) in R&R #39, to further identify any other prior knowledge on which it intends to rely.

Arconic identifies 3 categories of Novelis improvements: (1) unrelated to either the '440 patent or Arconic's 7 items; (2) in the '440 patent but unrelated to the 7 items; and (3) arguably overlapping with the 7 items. Arconic concedes that the highlighted patent satisfies Novelis' ordinary discovery obligation with respect to categories (2) and (3). ECF No. 726 at 14. Arconic maintains that Novelis' response is insufficient with respect to category (1). For the

---

[2] Even though there is a robust protective order in place, the court is reluctant to order unnecessary disclosures of sensitive corporate information between these fierce industry competitors.

reasons set forth above, the court concludes that discovery about category (1), i.e., Novelis improvements that are unrelated to either the '440 patent or Arconic's 7 items, is not relevant or proportional to the needs of this case. Indeed, Arconic admits that it "does not understand the importance of the information." (ECF No. 726 at 15). Arconic's objections to R&R #38 will be DENIED.

B. Scope of Rule 30(b)(6) deposition questions

Arconic wants to ask Novelis' corporate witnesses about where the information in the '440 patent application came from. Novelis raised objections to topics 9, 12, 13, 20, 23-25 of the Rule 30(b)(6) deposition notice and now seeks a protective order. Arconic states that it wants to make a record, but did not articulate how the evidence it seeks relates to the claims remaining in this case. As set forth in R&R #39, the special master recommended that Arconic be permitted to ask deposition questions about the 7 items of confidential information and the other Improvements identified by Novelis in yellow highlighting on the patent (ECF No. 718).

Arconic contends that the additional information it seeks is "central" to Novelis' counterclaims. For the reasons set forth above, the court disagrees with Arconic. Novelis' technology only becomes relevant to rebut Arconic's contention that it had a valid reason to terminate the contract. Arconic could not terminate the contract based on alleged trade secrets or confidential information that it never properly identified to Novelis. It is only discovery about Novelis' technology relating to the remaining 7 items of Arconic's confidential information that is proportional to the needs of this case. The court's December 9, 2020 opinion and order reopening discovery stated that the "confidential information claims will proceed on the narrow basis identified in R&R #33." ECF No. 623 at 40. That decision applies equally to the scope of

Novelis' counterclaims and directs the proper scope of discovery.[3] The more expansive discovery now sought by Arconic is not relevant to the claims remaining in the case and is not proportional to the needs of this litigation.

Conclusion

In accordance with the foregoing, Arconic's Objections to R&R #38 and R&R #39 (ECF Nos. 725, 726) will be DENIED. R&R #38 and R&R #39 will be adopted as the opinions of the court, as supplemented herein.

An appropriate order follows.

Dated:  September 30, 2021                         /s/ Joy Flowers Conti

                                                   Joy Flowers Conti
                                                   Senior United States District Judge

---

[3] Novelis offered to provide testimony about specific improvements Novelis made to the A951 process. As explained above, the court would be inclined to limit discovery solely to the 7 items. Novelis, however, did not object to R&R #39, so discovery will proceed under the broader scope articulated by the special master.