IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARCONIC CORPORATION AND HOWMET AEROSPACE INC.**, | ) CIVIL ACTION NO. 17-1434 ) |
| | ) JUDGE JOY FLOWERS CONTI |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) |
| v. | ) ) |
| **NOVELIS INC.** *and* **NOVELIS CORP,** | ) ) |
| Defendants and Counterclaim Plaintiffs. | ) |

**MEMORANDUM OPINION**

I. Introduction

Pending before the court is a motion to recuse (ECF No. 771) filed by Arconic Corporation and Howmet Aerospace Inc. (collectively, "Arconic"), with brief in support (ECF No. 772). Novelis Inc. and Novelis Corp. (collectively, "Novelis") filed a response in opposition (ECF No. 777) and the motion is ripe for disposition.

Arconic points out that the special master's staff is listed in the author property of the metadata as the "author" of several of the court's opinions in this case, including an opinion issued with respect to Arconic's motion to terminate the appointment of the special master. Arconic argues: "To the extent that the Special Master or her staff played a role in these opinions, recusal is required." (ECF No. 772 at 2). Arconic also seeks to vacate several of the court's decisions. Arconic's motion is based on the "appearance of impropriety"; Arconic confirms that its motion "is not based on actual lack of independence or bias on the part of the District Judge." (ECF No. 771 at 2).

To be abundantly clear, the court wrote the opinions referred to by Arconic; the special master and her staff did not write any opinions of this court. The steps used by the court to create templates as the starting points for its opinions, as explained more fully below, caused system metadata[1] about the author property to be inherited from other documents. The author metadata is not a reliable way to determine the actual writer of the court's opinions and does not constitute a reasonable basis to question the court's impartiality or independence.

II. Procedural History

The procedural history in this case is tortuous and has been set forth at length in previous opinions. The court will briefly summarize the applicable procedural history to provide context for the pending motion.

A. Role of the special master

The court informed the parties at an expedited, pre-answer, case management conference on December 14, 2017, that appointment of an experienced special master would be important in this complicated and contentious litigation (Transcript, ECF No. 56). Arconic did not object to appointment of a special master and suggested several candidates to serve in that capacity (ECF No. 45). The special master was appointed on December 17, 2017 (ECF No. 50). As relevant to Arconic's motion, ¶ 8 of the Order provided:

> 8. The Special Master may, at any time, communicate ex parte with the Court for any purpose relating to the duties described herein. In particular, if the Special Master identifies any matters that pose particular or unique problems, the Court shall be consulted.

*Id.* at 2. The parties did not object to the special master appointment order or the existence of ex

---

[1] "Metadata is information associated with a file that is not generally intended to be printed or displayed. https://ksd.uscourts.gov/wp-content/uploads/2015/10/Metadata-Instructions.pdf at 1 n.1, last visited Feb. 3, 2022.

parte communications.[2]

B. Arconic's failure to identify its trade secrets

The court (and special master) offered numerous opportunities for Arconic to identify properly its trade secrets. Arconic referred to alleged disclosures that involved already-public information and Novelis' own improvements. The court explained, among other things, that Arconic needed to articulate, with specificity, what it contends are its own trade secrets and confidential information before Arconic could undertake extensive discovery into its competitor's technology. Arconic submitted four trade secret identifications ("TS ID"), TS ID ## 1, 2, 3 and 4. None of the TS IDs articulated with specificity any trade secret discernible by this court. Arconic did not object to the striking of TS ID ## 1, 2 or 3.

C. The court's sua sponte Rule 56(f) order and entry of summary judgment

On January 24, 2019, the special master issued report and recommendation ("R&R") #28, captioned "Scheduling Briefing on Whether Arconic's Trade Secret Identification Should Be Stricken" (ECF No. 249). R&R #28 recommended that the November 2, 2018 chart included in TS ID #4 be stricken as unauthorized and that Novelis be given leave to file a motion to strike the remainder of TS ID #4. R&R #28 set forth a briefing schedule for that purpose.

The court did not agree with the special master's approach. Upon review of Arconic's objections to R&R #28, the court issued an opinion and order pursuant to Rule 56(f) that Arconic show cause why summary judgment should not be entered on the trade secret and confidential information claims (ECF No. 282).

Instead of responding by showing that it had evidence to support the required elements of

---

[2] Arconic cannot challenge ex parte communications between the court and special master because those communications were expressly authorized in the appointment order, entered in December 2017, without objection. The court understands that it is not communications with the special master that are at issue; rather, Arconic challenges whether the special master participated in the writing of this court's opinions.

its trade secret and confidential information claims; i.e., that it had properly identified its trade secrets and confidential information, Arconic submitted a wealth of new information to the court about the merits of its underlying claims (Arconic's "post-show cause submissions"), which Novelis moved to strike. The court referred the motions to the special master, who held an oral argument (which the court attended) and on July 14, 2020, the special master issued an 81-page R&R #33 (ECF No. 510), with numerous attachments. Because the R&R and attachments were to be filed under seal, the court filed those documents under seal on behalf of the special master.

Both parties objected to R&R #33. The court held oral argument on those objections. Because the court determined that the SJ Opinion would not be filed under seal, the court directed its law clerk to email a copy of that opinion to counsel for both sides to provide an opportunity for them to suggest removal of sensitive corporate information. The law clerk's email was sent on December 3, 2020, and the system metadata of the attached opinion reflected the special master's staff as the "author" and a "created" date of August 31, 2020. (ECF No. 771 Ex. B). The system metadata also reflected that the document was last modified on the date it was emailed to the parties. *Id.*[3] On December 9, 2020, the court issued a separate order (ECF No. 622) and 41-page opinion (the "SJ Opinion") (ECF No. 623). In that opinion, among other things, the court concluded that Arconic had not properly identified any trade secrets and only identified seven items of confidential information.

D. Current status of the case

After the SJ Opinion was filed, this litigation primarily focused on Novelis' antitrust counterclaims. The special master issued numerous R&Rs about discovery disputes and the

---

[3] On December 3, 2020, Arconic received the email attachment which contained the author, created date, and last modified date properties of metadata and, therefore, Arconic was or should have been aware of this metadata for well over a year before it filed the instant motion.

4

court issued numerous opinions and orders to resolve objections to those R&Rs. The court will address below the opinions and orders which Arconic seeks to have vacated.

The court has been conducting monthly status conferences with counsel. On January 13, 2022, counsel confirmed that fact discovery finally closed. Counsel reported a dispute about the disclosure of experts as required by the court. Novelis had disclosed the names of its experts to Arconic and Arconic reported it had retained certain experts, but had not disclosed the names of those experts to Novelis. The court ordered Arconic to disclose the names of those experts to Novelis that day.

Before concluding the January 13, 2022 status conference, the court asked whether there were any other issues to discuss in the case. Neither side identified any issues. (*See* Transcript, ECF No. 775 at 15) ("And none for Arconic.") Arconic's motion to recuse, with 38 attachments, and a 28-page brief in support were filed the next day. Novelis reports that Arconic never met and conferred with it prior to filing the motion to recuse (ECF No. 773 at 1).

III. Discussion

    A. General standards

The court understands the gravamen of Arconic's motion is an assertion that the court abandoned its duty to conduct an independent, de novo review of the special master's R&Rs by having the special master's staff ghost-write the court's decisions. Subject to certain exceptions, parties are entitled to de novo review of the special master's findings of fact and conclusions of law and abuse of discretion review of the special master's rulings on procedural matters by the district judge. Fed. R. Civ. P. 53(f); *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 441 (3d Cir. 2005) (special masters can aid judges in the performance of specific duties, but cannot be

permitted to displace the court).  The only evidence pointed to by Arconic to support its recusal motion is the author and created date fields of the metadata of certain decisions.

"The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004); *see In re Prudential Ins. Co. of Am. Sales Practice Litig., Agent Actions*, 148 F.3d 283, 343 (3d Cir. 1998) ("The test is whether a reasonable person, knowing all of the circumstances of record, would harbor doubts about the judge's impartiality.").  An allegation of bias meriting recusal "must stem from a source outside of the official proceedings." *Liteky v. United States*, 510 U.S. 540, 554 (1994); *see Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir. 2004) ("beliefs or opinions which merit recusal must involve an extrajudicial factor") (citation omitted).

As explained in *Hardy v. Shaikh*, No. 1:18-CV-01707, 2021 WL 5937664 (M.D. Pa. Dec. 16, 2021):

> 'Extrajudicial bias' refers to a bias that is not derived from the evidence or conduct of the parties that the judge observes in the course of proceedings." *Johnson v. Trueblood*, 629 F.2d 287, 291 (3d Cir. 1980); *see also United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case."); *United States v. Gilboy*, 162 F. Supp. 384, 393–94 (M.D. Pa. 1958) (alleged bias must be personal and extrajudicial, not arising solely on the basis of court proceedings).

*Id.* at *2.

In the absence of proof that a person would reasonably question the judge's impartiality, a judge "has an affirmative duty not to recuse [her]self." *Dean v. Philadelphia Gas Works*, No. CV 19-04266, 2020 WL 7695751, at *6 (E.D. Pa. Dec. 28, 2020) (quoting *Massachusetts Sch. of L.*

*at Andover, Inc. v. Am. Bar Ass'n*, 872 F. Supp. 1346, 1349 (E.D. Pa. 1994)). As explained in *Hardy v. Shaikh*:

> In assessing recusal requests, courts must remain mindful that, in the hands of some unscrupulous advocates, a recusal motion may simply be a calculated tactical tool designed to avoid or overturn the result which the law dictates in a case. Thus, "the court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings." *Conklin v. Warrington Twp.*, 476 F. Supp. 2d 458, 462-64 (M.D. Pa. 2007).

*Hardy*, 2021 WL 5937664, at *2.

A party must seek recusal under § 455 in a timely manner. *See Kensington*, 368 F.3d at 312 ("'The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming.'") (quoting *Smith v. Danyo*, 585 F.2d 83, 86 (3d Cir. 1978).[4]

A judge need not explain how she performed her duties. As explained in *United States v. Roebuck*, 271 F. Supp. 2d 712 (D.V.I. 2003):

> The overwhelming authority concludes that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated [her] in the performance of [her] official duties. *United States v. Morgan*, 313 U.S. 409, 422, 61 S. . 999, 85 L. Ed. 1429 (1941); *Fayerweather v. Ritch*, 195 U.S. 276, 306–07, 25 S. Ct. 58, 49 L. Ed. 193 (1904); *Grant v. Shalala*, 989 F.2d 1332, 1344–45 (3d Cir. 1993); *see also Robinson v. Commissioner of Internal Revenue*, 70 F.3d 34, 38 (5th Cir. 1995); *United States v. Edwards*, 39 F. Supp.2d 692 (M.D. La. 1999). "[J]udges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed." *United States v. Cross*, 516 F. Supp. 700, 707 (M.D. Ga. 1981), aff'd, 742 F.2d 1279 (11th Cir. 1984). Further, only in the most extraordinary of cases, such as a strong showing of bad faith or improper behavior by a judge or quasi-judicial officer or where circumstances were such to overcome the presumption of regularity as to the acts of the decision maker, may a judge be questioned as to matters within the scope of [her] adjudicative duties.

---

[4] The court does not decide whether Arconic's arguments based on the author and created date fields of the metadata are untimely, but notes that the metadata fields showing the special master's staff as author and the created date were accessible on the document emailed to counsel in December 2020.

7

*Id.* at 718.

  B. Author field of the metadata

  To alleviate any concerns raised by Arconic, the court will briefly explain why Arconic's argument based on the "author" field of the metadata is wrong. *See Lopez by Ilarrava v. CSX Transportation, Inc.*, No. 3:14-CV-257, 2021 WL 3682905, at *3 (W.D. Pa. Aug. 19, 2021) ("[W]hen proceedings are brought under 28 U.S.C. § 455(a), a judge need not accept as true the motion's factual allegations, but may contradict them with facts drawn from [the Court's] own personal knowledge.") (citing *Pondexter v. Allegheny Cty. Hous. Auth.,* No. CIV.A. 11-857, 2012 WL 1621370, at *2 (W.D. Pa. May 9, 2012) (quoting *Massachusetts Sch. of L.*, 872 F. Supp. at 1349). Arconic's speculation that the special master played an improper role in the court's decisions is entirely unfounded.

  The author field of the metadata is not evidence of the actual preparer of a document and does not support a reasonable inference that the court abandoned its role or provide a basis for recusal. The author field is part of the system metadata. A computer's file management system uses "system metadata" to track file locations and information about a file's name, size, creation, modification and usage. Craig Ball, "Beyond Data About Data: The Litigator's Guide to METADATA," http://www.craigball.com/metadataguide2011.pdf at 6, last visited Feb. 3, 2022.

  The court used Microsoft Word to generate the electronic versions of the opinions and orders at issue, although much of the actual writing and editing was done with pen and paper. When a document is created in Microsoft Word, the user name entered on the File > Options > General tab is automatically added as the author in the metadata. https://cybertext.wordpress.com/2019/04/06/word-delete-add-or-change-author-name/, last visited Feb. 3, 2022. The "author" field of the metadata is not authenticated and can be

modified.  *Id.*  The author field of the metadata for a document created from a template will continue to reflect the name of the person who originally created the document being used as the template unless that name is deliberately removed.  To remove the inherited author name in the metadata, the user must: open the document; access the File > Info; use the computer mouse to "right-click" on the author field of the metadata; and select "Remove Person."  *Id.*  The court did not take these steps to alter or remove the author field of the metadata of the documents at issue.

The court's practice in this and many other cases was to use a document that is already docketed as a template for the court's next opinion or order.  This practice promotes efficiency, by avoiding the need to retype boilerplate information such as the caption, keeping the formatting consistent, and providing unobjectionable basic information about the context of the case, such as the factual and procedural history or standard of review.  *See Robinson v. McNeese*, No. 5:20-CV-00160, 2021 WL 864953, at *1 n.1 (M.D. Ga. Mar. 8, 2021) (explaining that metadata showing law clerk as "author" of the district court's opinion occurred when the court created a template that chambers routinely used to ensure case styles are consistent).  To create a template, the court uses the "save as" command to create a new document.  The "saved as" command enables the court to create a template for a new opinion or order without overwriting the document being used as the starting point.  The court, as noted, did not take the steps necessary to change the name in the author field of the metadata and the template document inherited the "author" named in the author field of the metadata of the document from which the template was created.  The metadata pointed to by Arconic about the "author" in the court's opinions and orders at issue is superficial and has no relationship to the contents of the final product.[5]

---

[5] The Declaration of Joshua Helfinsiegel and Attachment 3 (ECF No. 777-2) listed the names of many other "authors" reflected in the metadata of documents filed by the court in this case.  Those "author" names appeared in

There are numerous R&Rs and proposed orders filed in this case that were originally created by the special master or her staff. To date, the special master has issued 40 R&Rs. Many of the R&Rs, particularly early in the case, were not objected to by either party. The court, after independent, de novo review, issued orders adopting R&Rs to which no party objected. The first document challenged in Arconic's motion to recuse (ECF No. 171) is one of those kinds of orders. The special master filed an order in connection with R&R #18; neither party filed an objection to the R&R or the order; and the court, after independent, de novo review, determined to adopt the R&R. The court used the "saved as" command and filed the same order entered by the special master, changing only the date and the signature line. *Compare* ECF No. 171 *with* ECF No. 161-1. The court did so because the court concluded the matters addressed in the special master's order were appropriately matters which the court should order. In that process, as noted, the court "saved as" the order of the special master as a court document; modified the date and signature; and filed it on the CM/ECF system. In that situation the "author" field in the metadata of the court's order reflected the name of the special master's staff because that metadata field was automatically inherited in the template used to generate the court's order.

At some point, the court used a document originally created by the special master's staff as a template for court opinions in this case.[6] The author field of the metadata for any such opinions would have continued to reflect the special master's staff as the "author" of the opinion, even though the substance of the opinion was written independently by the court. The court, in turn, would have used that opinion as a template for later opinions. As noted, the "saved as"

---

the metadata for the same reasons the name of the special master's staff appeared in the author field of the metadata of the documents at issue in the pending motion.
[6] Until the motion to recuse was filed, the court did not examine the metadata of any of the documents in this case.

10

command does not automatically alter or change the author field of the metadata. For any opinion written by the court that used a template tracing back to a document originally generated by the special master, the special master's staff would continue to be shown as the author in the metadata of the "saved as" document, even though the substance of the opinion or order (and the substance of all intervening opinions or orders of the court later used as templates) was drafted by this court.

The "author" field of the metadata is not a smoking gun or a reasonable or reliable way to determine who is responsible for the content of a document. *See Raiser v. San Diego Cty.*, No. 19-CV-00751, 2021 WL 4751199, at *8 (S.D. Cal. Oct. 12, 2021) ("Plaintiff's discovery of 'author' names in Word document metadata is not the smoking gun that he believes it to be"). The author field of the metadata is particularly unreliable for documents created by the "save as" command for use as a template. In *Raiser*, which involved different facts but a similar motion for recusal premised on author metadata, the court rejected the plaintiff's "paranoiac allegations" that the metadata demonstrated that the court failed to read, review, or decide the plaintiff's motions. *Id.*

In preparing this opinion, the court reviewed the "Guidelines for Editing Metadata" released by the Administrative Office of the United States Courts, https://ksd.uscourts.gov/wp-content/uploads/2015/10/Metadata-Instructions.pdf, last visited Feb. 3, 2022. In those guidelines, the situation that occurred here was addressed:

> Court users have expressed concerns regarding authorship metadata. When authors create a document using previous versions created by other authors, the original author's name is inherited, leading readers to think it was written by someone else. To avoid this issue, the user should verify and edit the author's name if incorrect through the Properties option (usually found under the File menu of word processing software, see File Description Metadata section on page 3). Otherwise, it is suggested to start with a fresh document, and copy and paste text from the existing documents.

*Id.* at 2. Going forward, this court will follow the Administrative Office's suggestions to avoid the concerns raised by Arconic about the author field of the metadata.

    C.  The "created" date

Using the "save as" command in Word to create a template will automatically change the "created" date field of the document's metadata. The "created" date field of the metadata does not necessarily reflect when a file was actually created; rather, it indicates when a file came to exist on a particular storage medium, such as a hard drive. Troy Larson, An Attorney's Brief Guide to Dating (Computer File Dating That Is), https://digitalmountain.com/wp-content/uploads/2020/09/Article1.pdf, last visited February 9, 2022. If a file has been copied, for example to be used as a template, the "created" field of the metadata reflects the date of the "save as" copying, rather than the date the file originally came into existence. *Id.*

Arconic points to the created date of August 31, 2020, in the metadata of the court's SJ Opinion attached to the email to counsel on December 3, 2020, to surmise that the special master or her staff was working on that opinion. Arconic is wrong. The created date reflected in the metadata is shortly after the parties' objections to R&R #33 were filed. The court – not the special master or her staff -- started working on a draft opinion before the briefing was fully completed to aid the timeliness of its decision. The created date changed automatically when the court "saved as" a document on August 31, 2020, to create a template for the SJ Opinion.

    D.  The face of the opinions and orders at issue

Arconic's motion for recusal based on hidden fields of system metadata is not reasonable in light of the visible content of the court's written decisions. It is readily apparent that the court performed an independent review of the special master's R&Rs and that the decisions at issue are the work of the court.

12

As explained above, in preparing the SJ Opinion the court used the "saved as" command to create a template from a prior document, resulting in the author field of the metadata reflecting the special master's staff as the "author." The face of the SJ Opinion, however, clearly reflects that it is the opinion of the court. *See, e.g.*, Opinion at 3 (court adopts special master's recitation of procedural history); Opinion at 3 n.3 (court appreciates efforts of special master); Opinion at 25 & n.12 (disagreeing with special master about retroactive denial of leave to amend); Opinion at 31 (discussing court's independent research); Opinion at 39-40 (declining to restate the special master's identification of the surviving confidential information claims).

The majority of the decisions which Arconic seeks to have vacated in the pending motion relate to discovery disputes about Novelis' antitrust counterclaims. The court's opinion and order filed at ECF No. 469 did not address the topics in an R&R at all; instead, the court remanded R&R #29 to the special master for further consideration in light of new evidence and granted Arconic's motion to make Novelis' answer in an antitrust case brought by the United States Department of Justice to challenge Novelis' merger with Aleris Corporation (the "DOJ Litigation") part of the record. In its opinion, the court noted that it would decide the objections to R&R #30 by separate opinion. *Id.* at 2. In the opinion and order filed at ECF No. 474, the court resolved the objections to R&R #30 (involving a third-party deposition). In the opinion and order filed at ECF No. 479, the court quoted the portion of R&R #31 to which Arconic objected and concluded there was no real dispute. In the opinion and order filed at ECF No. 499, the court resolved the objections to R&R #32, which involved the issues that had been remanded to the special master for reconsideration in the opinion filed at ECF No 469. The court clarified one aspect of the special master's recommendations (ECF No. 499 at 4). In the opinion and

separate order[7] filed at ECF Nos. 638 and 639, the court resolved objections to R&R #34 about expert reports in the DOJ Litigation. In the opinion and separate order filed at ECF Nos. 650 and 651, the court resolved objections to R&R #36 about a supplemental Rule 30(b)(6) deposition.

In the opinion and separate order filed at ECF Nos. 749 and 750, the court ruled on objections to R&R #40 about a reasonable royalty damages theory, which the court interpreted as a request for clarification (ECF No. 750 at 4). In that opinion, the court noted that the court held oral argument on those objections (ECF No. 750 at 1). The court concluded that the special master's recommendation was limited to fact discovery, such that Arconic was not precluded from filing an expert report (ECF No. 750 at 4). In the opinion and separate order filed at ECF Nos. 751 and 752, the court issued one decision to resolve objections to two separate R&Rs (R&R ## 38 and 39) about the scope of discovery. The court heard oral argument on those objections. In that opinion, the court stated: "The actual issue, as the court sees it . . . ." (ECF No. 752 at 7). In that opinion, the court also noted it would have been inclined to grant broader relief than the special master, if Novelis had objected. (ECF No. 752 at 11 n.3).

On June 8, 2021, the court issued an opinion and separate order (ECF Nos. 685, 686) to resolve several pending motions: Arconic's motion for entry of final judgment under Rule 54(b) on its trade secret and confidential information claims; Arconic's motion for termination of the appointment of the special master; and Novelis' motion to sever its fifth counterclaim. Like in other opinions filed by the court, the author field of the metadata reflects the special master's staff as the "author" of the document because the author field was inherited when the court utilized the "save as" command to create the template. The face of the June 8, 2021 opinion

---

[7] Around that time, the court adopted the practice, in all its cases, to file a separate order at its own docket number. The court, when generating a separate order, typically used a "separate order" template that was different from the template used to prepare the court's opinions in this case.

14

reflects that it is the decision of the court. There was no R&R prepared by the special master about those motions. The special master had no input into the court's opinion or order. The opinion expressly stated that the motions "will be resolved by the court." (ECF No. 686 at 1). In the opinion, the court explained why it denied the Rule 54(b) certification on which both sides agreed. The court recognized its discretion to terminate the appointment of the special master. (ECF No. 686 at 9). The court reiterated that the special master's decisions on the remaining discovery disputes would be "subject to de novo review by the court." (ECF No. 686 at 10). The court withdrew Novelis' motion to sever from consideration by the special master and noted that it would be resolved by the court. (ECF No. 686 at 11).

In several of the opinions at issue, the court expressly discussed the de novo standard of review being applied by the court. In sum, it is readily apparent on the face of the documents at issue that the opinions and orders are those of the court, acting independently of the special master.

Conclusion

Certainly, this court did not expect Arconic to scrutinize metadata in an effort to support a recusal motion. While this court used the same template process in other cases over many years, this case was the first time any issue was raised relating to any metadata associated with the opinions and orders of this court. If Arconic had raised this issue with the court during the conference on January 13, 2022, the court could have discussed its processes and dispelled Arconic's concerns without motion practice and extensive briefing. Other than situations where an R&R was unopposed and adopted by this court, the drafting of the opinions at issue was done by the court independently of the special master or her staff. To ease any concern by Arconic,

the court reiterates that the special master and her staff did not prepare any opinions or orders of this court, other than unopposed R&Rs or orders or parts of R&Rs which were adopted by this court as the court's opinion.

As explained above, the author field of the metadata in the documents at issue stemmed from the use of the "saved as" function to create templates based on documents prepared earlier in the case. Even a cursory review of the decisions at issue reveals distinct differences between the court's decisions and the related R&Rs by the special master. A reasonable person, with knowledge of all the facts, could not reasonably question the judge's impartiality or independence in this case. For the reasons set forth above, Arconic's motion for recusal (ECF No. 771) will be DENIED.

An appropriate order follows.


Dated: February 10, 2022

/s/ Joy Flowers Conti

Joy Flowers Conti
Senior United States District Judge