**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ARCONIC CORP., | : | |
| | : | Civil Action No. 2:17-cv-1434-JFC |
| and | : | |
| | : | JURY TRIAL DEMANDED |
| HOWMET AEROSPACE INC., | : | |
| | : | Senior District Judge |
| Plaintiffs and | : | Joy Flowers Conti |
| Counterclaim-Defendants | : | |
| | : | |
| vs. | : | |
| | : | |
| NOVELIS INC., | : | |
| | : | |
| and | : | |
| | : | |
| NOVELIS CORP., | : | |
| | : | |
| Defendants and | : | |
| Counterclaim-Plaintiffs | : | |

**MEMORANDUM IN SUPPORT OF ARCONIC'S MOTION TO EXCLUDE**
**THE OPINION OF JULIE DAVIS**

## **<u>TABLE OF CONTENTS</u>**

**Page(s)**

BACKGROUND ..................................................................................................... 2

ARGUMENT ........................................................................................................... 4

I.     DAVIS'S OVERCHARGE ANALYSIS IS UNRELIABLE. ................................. 5

II.    DAVIS' OVERCHARGE DAMAGES ARE BASED ON INCORRECT LEGAL STANDARDS ........................................................................................... 9

      A.    Davis's Overcharge Analysis Improperly Includes Damages For Patent Misuse. ................................................................................................. 9

      B.    Davis Improperly Includes Damages For Indirect Purchases By Novelis.11

III.    DAVIS' DAMAGES FOR THE REMAINING CLAIMS LACK ANY ANALYSIS AND ARE UNRELIABLE, CONFUSING, AND CONTRARY TO LAW ..................................................................................................... 11

      A.    Davis' Opinion On Contract Damages Is Unreliable Because It Conflates Sherman Act And Contract Claims And Does Not Analyze Actual Loss.11

      B.    Davis's Damages Analysis For Claims 6-9 Is Incomplete And Unreliable. ............................................................................................................. 14

      C.    Davis's Damages Estimate Under the Robinson-Patman Act Is Contrary to Law. ................................................................................................ 15

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.,*
881 F.2d 1396 (7th Cir. 1989) ...................................................................6

*Apotex, Inc. v. Cephalon, Inc.,*
321 F.R.D. 220 (E.D. Pa. 2017)............................................................5, 6, 7

*Apple Inc. v. Pepper,*
139 S. Ct. 1514 (2019)...........................................................................11

*Apple Inc. v. Samsung Elecs. Co.,*
2018 WL 1586276 (N.D. Cal. Apr. 2, 2018) ..............................................5

*Atacs Corp. v. Trans World Commc'ns,*
155 F.3d 659 (3d Cir. 1998)...............................................................12, 13

*B. Braun Med., Inc. v. Abbott Labs.,*
124 F.3d 1419 (Fed. Cir. 1997)................................................................9

*BASF Corp. v. Old World Trading Co. Inc.,*
1993 WL 643419 (N.D. Ill. May 21, 1992), *aff'd* 41 F.3d 1081 (7th Cir. 1994) ....................6

*Brulotte v. Thys Co.,*
379 U.S. 29 (1964)...............................................................................10

*Burton v. Teleflex Inc.,*
707 F.3d 417 (3d Cir. 2013)....................................................................14

*CMI, Inc. v. Intoximeters, Inc.,*
918 F. Supp. 1068 (W.D. Ky. 1995) ..........................................................9

*Cont'l Auto. GmbH v. iBiquity Digital Corp,*
2015 WL 859569 (N.D. Ill. Feb. 26, 2015) ................................................9

*Contempo Design, Inc. v. Chicago and N.E. Ill. Dist. Council of Carpenters,*
226 F.3d 535 (7th Cir. 2000) ..................................................................12

*Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, LLC,*
929 F. Supp. 2d 460 (W.D. Pa. 2013)........................................................12

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993)....................................................................1, 4, 6, 9

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
    773 F.2d 1506 (9th Cir. 1985) ................................................................4, 6

*Exela Pharma Scis., LLC v. Eton Pharm., Inc.*,
    2022 WL 806524 (D. Del. Feb. 8, 2022) ....................................................5

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    2015 WL 4272870 (N.D. Cal. July 14, 2015) ...................................1, 3, 4

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ....................................................................................14

*Greenwald Caterers Inc. v. Lancaster Host, LLC*,
    2022 WL 1204154 (E.D. Pa. April 22, 2022) ...........................................14

*Haman, Inc. v. Chubb Custom Ins. Co.*,
    2021 WL 4749795 (N.D. Ala. Oct. 12, 2021) ..........................................10

*Hebert v. Lisle Corp.*,
    99 F.3d 1109 (Fed. Cir. 1996) .....................................................................5

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    424 F.3d 363 (3d Cir. 2005) ......................................................................11

*Ill. Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ....................................................................................11

*Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co.*,
    120 F. Supp. 3d 449 (W.D. Pa. 2015) (Conti, J.) .....................................13

*Internet Pipeline, Inc. v. Aplifi, Inc.*,
    2011 WL 4528340 (E.D. Pa. Sept. 29, 2011) .............................................9

*J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*,
    451 U.S. 557 (1981) ....................................................................................15

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*,
    909 F.2d 1524 (3d Cir. 1990) .....................................................................15

*Lerma v. Univision Commc'ns, Inc.*,
    52 F. Supp. 2d 1011 (E.D. Wis. 1999) ........................................................6

*Leverette v. Louisville Ladder Co.*,
    183 F.3d 339 (5th Cir. 1999) .......................................................................5

*McCullough Tool Co. v. Well Surveys, Inc.*,
    395 F.2d 230 (10th Cir. 1968) .....................................................................9

*Murphy Tugboat Co. v. Crowley*,
    658 F.2d 1256 (9th Cir. 1981) ..................................................................5

*Noskowiak v. Bobst SA*,
    2005 WL 2146073 (E.D. Wis. Sept. 2, 2005) ..........................................12

*Nova Chems., Inc. v. Sekisui Plastics Co.*,
    579 F.3d 319 (3d Cir. 2009) ....................................................................10

*In re Novatel Wireless Sec. Litig.*,
    846 F. Supp. 2d 1104 (S.D. Cal. 2012) .....................................................5

*Olin Corp. v. Lamorak Ins. Co.*,
    2018 WL 1901634 (S.D.N.Y. Apr. 18, 2018)....................................5, 9, 14

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
    797 F.2d 370 (7th Cir. 1986) ....................................................................6

*Princo Corp. v. Int'l Trade Comm'n*,
    616 F.3d 1318 (Fed. Cir. 2010).................................................................9

*Tadayon v. DATTCO, Inc.*,
    178 F. Supp. 3d 12 (D. Conn. 2016) ..........................................................9

*In re TMI Litig.*,
    193 F.3d 613 (3d. Cir. 1999).....................................................................5

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
    670 F. Supp. 2d 737 (N.D. Ill. 2009) .........................................................1

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
    949 F.3d 825 (3d Cir. 2020)...................................................................4, 5

*United Food & Commercial Workers Local 1776 & Participating Emp'rs Health
    & Welfare Fund v. Teikoku Pharma USA*,
    296 F. Supp. 3d 1142 (N.D. Cal. 2017) ..................................................5, 6

**Rules**

Fed. R. Evid. 702 ..........................................................................................4, 5

Novelis alleges that Arconic violated the Sherman Act by imposing a price restraint on Chemetall (a chemical supply company) that required Chemetall to overcharge for Arconic's A951 chemical and know-how. The law provides a clear framework for damages arising from "overcharge" claims—experts are required to compare the price of a product *with* the challenged restraint against the price that would have been charged *without* the restraint. In conducting this analysis, experts are required to assume that parties set prices to maximize their profits, and experts are thus required to perform rigorous analyses of market forces to determine the highest price the market would bear for the product in question.

Novelis' damages expert, Julie Davis, purports to perform an "overcharge" analysis, but does not adhere to the required framework—she did not consider the price the market would bear for A951 without the restraint, did not analyze market forces, and did not otherwise account for Arconic's and Chemetall's desire to maximize profits. Instead, Davis concludes that they would have ███████████████████████████████████████████████████████████ ██████████████████████████████████████. Davis does not attempt to square that conclusion with the basic principle that parties rationally pursue their economic interests, nor does she conduct the required market- and pricing- analyses, rendering her opinions unreliable and contrary to law, and subject to exclusion under *Daubert*. *See U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 745 (N.D. Ill. 2009) ("Having applied the incorrect legal standard in formulating damages under the CFAA, [Julie] Davis will not be permitted to testify on that topic."); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4272870, at *7 (N.D. Cal. July 14, 2015) (excluding Julie Davis's analysis as based on licenses that she was legally not allowed to consider).

There are two other aspects of Davis's overcharge analysis that are also contrary to law and that also warrant exclusion. First, Davis's overcharge estimate improperly includes damages for

1

patent misuse—an affirmative defense that cannot support an award of damages, and for which

Novelis has only sought declaratory relief.  In estimating damages, ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████.  Because patent misuse cannot be used to recover damages, Davis's

damages estimates are contrary to law and should be excluded. Second, ███████████████

███████████████████████████████████, and thus runs afoul of the "direct

purchaser" rule. That rule states that plaintiffs can only recover damages in connection with

purchases made directly from an antitrust violator. Davis violates this rule because her overcharge

estimate includes ██████████████████████████████████████████████████

████████████████. Under the law, only MSC may recover antitrust damages in connection with

those purchases. Davis should be precluded from offering any estimates based on indirect purchases.

Finally, for the six other claims addressed in her report (Novelis claims 3, 6, 7, 8, 9, and 12),

Davis does not provide any analysis whatsoever. ████████████████████████████████

████████████████████ and calls it a day. This is improper—different claims with different

elements and different damage requirements require different analyses—an *ipse dixit* assertion is not

enough. Because Davis's opinions on these other claims are based on incorrect legal standards and

provide an insufficient analysis, they will not be helpful to the jury and must be excluded.

## BACKGROUND

Novelis served the expert report of Julie Davis on February 11, 2022 and a rebuttal report on

March 18, 2022. Ex. A (Expert Report of Julie Davis ("Davis Report"); Ex. C (Rebuttal Expert

Report of Julie Davis ("Davis Rebuttal"). Despite the multitude of claims purportedly at issue,

Davis only performed a single analysis—an estimation of damages "under Section 1 of the Sherman

Act." Davis Report at 23, 29. In doing so, she compared the price Novelis actually paid for A951

against the price Novelis purportedly *would have paid* in a world without the purported price restraint.[1] Davis Report at 23, 30. Davis referred to this alternate world (the world without the price restraint) as the "but-for" world, and referred to the alternate price as the "but-for" price. *Id.* at 30.

Davis did not determine the but-for price by analyzing the highest price the market would bear in the but-for world or the profit-maximizing price. Instead, she performed her overcharge analysis by ███████████████████████████████████████████████████████

████████████████████████████████—and comparing the real and but-for prices with respect to each. *Id.* at 30. Davis concluded that █████████████████████████████████████

███. *Id.* at 32. On the other hand, Davis concluded that █████████████████████████

███████████████████████████████████████████████████████████████

██████████████, Davis Rebuttal at 19, as compared to ████████████████████████

████████. *Id.* at 168██████████████████). When it came to ████████████, Davis

████████████████████. For her primary measure of damages (which Davis referred to as her "base case"), Davis concluded that ███████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████. *See* Davis Rebuttal at 39, 51, 172. Davis also considered ████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[1] Davis's estimates derive exclusively from the single analysis described above. Ex. B (4/14/22 Deposition Transcript of Julie Davis ("Davis Tr.")) at 298:16-18 █████████████████████
████████████████████████████████████████████████████████████).

██████████████████████. Nevertheless, Davis concludes that Arconic should pay the full amount.

The purpose of Davis's overcharge analysis was to estimate Novelis' damages for its Sherman Act claim (claim 11). Davis did not meaningfully address damages for any of Novelis' other six claims. Instead, she simply *declared*—in a footnote, and in one sentence—that ████ ████████████████████████████ breach of the implied covenant of good faith and fair dealing (Sixth Claim), interference with contractual relations (Seventh Claim) and prospective contractual relations (Eighth Claim), and unfair competition (Ninth Claim). Davis Report at 22 n.97. Elsewhere, she ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. *Id.* at 52. At her deposition, █████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████.

## ARGUMENT

To be admissible, expert testimony must be relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "Rule 702's reliability threshold requires expert testimony to be based on the methods and procedures of science, not on subjective belief and unsupported speculation." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833-34 (3d Cir. 2020) (quotation marks omitted). Thus, expert opinions must "have a reliable basis in the knowledge and experience of [the expert's] discipline" and must adhere to the basic tenets of their field. *Daubert*, 509 U.S. at 592. When it comes to damage assessments, courts require experts to assume that parties will act rationally and will seek to maximize their profits. *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1511 (9th Cir. 1985) (experts must "presume the existence of rational economic behavior" and must assume market actors will "attempt[] to maximize

their own profits"); *Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256, 1262 (9th Cir. 1981). Thus, courts exclude as unreliable opinions "assuming away rational economic behavior by competitors." *Apotex, Inc. v. Cephalon, Inc.*, 321 F.R.D. 220, 237 (E.D. Pa. 2017); *see also United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1179 & n.42 (N.D. Cal. 2017).

Courts also exclude expert opinion that lacks sufficient "fit" with the factual issues in the case. *In re TMI Litig.*, 193 F.3d 613, 663 (3d. Cir. 1999); *Sunbury*, 949 F.3d at 835-36. Opinions that are based on an incorrect legal standard necessarily lack a sufficient "fit," since they answer questions the factfinder will not be allowed to consider. *Exela Pharma Scis., LLC v. Eton Pharm., Inc.*, 2022 WL 806524, at *3 (D. Del. Feb. 8, 2022) (opinion that relies on an incorrect legal theory "is not likely to be relevant to the Court's fact-finding"). Courts "routinely preclude those portions of an expert's report that are premised on a misunderstanding of the law." *Exela*, 2022 WL 806524, at *3; *Olin Corp. v. Lamorak Ins. Co.*, 2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996); *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 341 (5th Cir. 1999).[2] The party seeking to offer expert testimony "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee's note, 2000 Amendments; *see TMI Litig.*, 193 F.3d at 663.

## I.    DAVIS'S OVERCHARGE ANALYSIS IS UNRELIABLE.

Novelis' antitrust claim asserts that Arconic violated the Sherman Act by entering into a contract with Chemetall that prevented Chemetall from selling A951 to Novelis for ██████ ███████████████████████. Novelis contends that, in the absence ██████████, the price for

---

[2] Whether legal errors are characterized as irrelevant or unreliable, opinions applying the wrong standards should be excluded. *See Apple Inc. v. Samsung Elecs. Co.*, 2018 WL 1586276, at *4 (N.D. Cal. Apr. 2, 2018); *In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012).

A951 would have been lower. Thus, Davis's damages are based on an "overcharge analysis," which is a measure of Sherman Act damages equal to "the difference between the illegal price that was actually charged and the price that would have been charged 'but for' the [antitrust] violation." P. Areeda & H. Hovenkamp, Antitrust Law ("Areeda") ¶ 392 (5th ed. 2021). As applied here, Davis sought ██████████████████████████████████████████████████████ ██████████████████████████████. Davis Report at 30; Areeda ¶ 394.

Experts are required to assume that, in the but-for world, parties will set prices to maximize their profits. *Dolphin Tours*, 773 F.2d at 1511. In an unrestricted market, companies like Arconic and Chemetall, who are the only suppliers of a product, can charge as much as they want and have no duty to reduce prices. *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 376 (7th Cir. 1986). Thus, to satisfy *Daubert's* reliability requirements, experts must analyze the market to determine "the highest price the market will bear" (i.e., the price at which any additional increase would result in less revenue). *See BASF Corp. v. Old World Trading Co. Inc.*, 1993 WL 643419, at *15 (N.D. Ill. May 21, 1992) ("Competitors charge the highest price the market will bear."), *aff'd* 41 F.3d 1081 (7th Cir. 1994); *Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011, 1020 (E.D. Wis. 1999). Identifying the optimal price for a product is challenging, and requires experts to consider "the shape of the market's demand curve" and how demand varies by price. *A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1402 (7th Cir. 1989). Experts who estimate prices *without* considering what the market will bear, or who assume that parties do not act to maximize their profits (i.e., act irrationally), cannot withstand *Daubert* scrutiny. *See Apotex*, 321 F.R.D. at 237; *United Food*, 296 F. Supp. 3d at 1179 & n.42.

Davis did not comply with these requirements. ██████████████████████████ ████████████████████████████████████████████████████████████████

██████████████████████████████████████████ ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████. Yet, in setting her

but-for price, Davis did not even *attempt* to determine the highest price the market would bear for

A951, in clear violation of the governing law set out above and basic economic principles. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████.

        To be clear, in setting her but-for price, Davis did not consider or estimate the price Novelis

would be willing to pay for A951; nor did she consider the real-world evidence showing that ████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████. The

result is that Davis ignores economic realities and assumes Arconic and Chemetall—the parties with

sole control over the but-for price of A951—would forfeit maximizing their own profits by charging

less than what the market would bear. This renders her analysis unreliable and contrary to law. *See*

*Apotex*, 321 F.R.D. at 237 (excluding opinion that "assum[es] away rational economic behavior").

        Davis's attempts to justify her but-for price are unavailing. For example, Davis suggests that

████████████████████████████████████████████████████

██████████████████████████████████████████████



.

Davis's decision to "assume away" rational action on the part of Arconic and Chemetall

yields a topsy-turvy, counterfactual world that results in a host of nonsensical consequences:



- Chemetall would not seek to maximize profits but would instead surrender dollars to Novelis.[3] but ignores the fact that

- Arconic would not seek to maximize profits and would

- . This fact contradicts Novelis' overcharge theory,



[3]

[4]

[5]

[6]

[7]     93:19-94:1

- ████████████████████████████████████

That Davis' overcharge opinion results in such irrational conclusions shows that her opinions are unreliable, ignore economic realities, and fail to assume rational behavior. The Court should exclude Davis's opinions for failing to conduct the kind of analysis required in an overcharge case.

## II.   DAVIS' OVERCHARGE DAMAGES ARE BASED ON INCORRECT LEGAL STANDARDS.

### A.   Davis's Overcharge Analysis Improperly Includes Damages For Patent Misuse.

Under *Daubert*, expert opinions that are contrary to law or based on incorrect legal standards are unreliable and unhelpful and must be excluded. *Olin*, 2018 WL 1901634, at *21. Davis's overcharge analysis misapplies the law because it includes damages for patent misuse—a claim that does not allow damages and for which Novelis only seeks declaratory relief.

Patent misuse is not an independent cause of action—it is an affirmative defense that can be asserted in response to a party's attempt to enforce a patent or license agreement. *See CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1090 (W.D. Ky. 1995) ("Patent misuse cannot be the basis of a cause of action. Rather, it is an affirmative defense to a patent holder's claim of infringement."); *McCullough Tool Co. v. Well Surveys, Inc.,* 395 F.2d 230, 238–39 (10th Cir. 1968) (similar). Thus, courts refuse to enforce licenses that would require a licensee to pay royalties after the expiration of a patent. *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328-29 (Fed. Cir. 2010).

The law is clear that patent misuse cannot support an award of damages. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997) ("[T]he defense of patent misuse may not be converted to an affirmative claim for damages . . . ."); *Cont'l Auto. GmbH v. iBiquity Digital Corp*, 2015 WL 859569, at *7 (N.D. Ill. Feb. 26, 2015) (similar); *Tadayon v. DATTCO, Inc.*, 178 F. Supp. 3d 12, 18 (D. Conn. 2016) (similar); *Internet Pipeline, Inc. v. Aplifi, Inc.*, 2011 WL 4528340, at *3

(E.D. Pa. Sept. 29, 2011) (similar). Novelis recognizes as much, as its claim for patent misuse

(claim 13) seeks only declaratory relief. *See* Dkt. 721 at 66-67.

Nevertheless, Novelis' counsel instructed Davis to ███████████████████████

██████████████. Specifically, ████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████[8]

Davis Report at 45-46 (stating ██████████████████████████████████████

█████████████████████████. Moreover, Davis <u>did not offer any *economic* analysis</u> that would

██████████████████████. To the contrary, at deposition, she confirmed that ███████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████.

*See* ████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[8] The fact that Davis did not explicitly reference Novelis' "patent misuse" claim does not change this conclusion. Her claim is that ██████████████████████ █████████████████████████████████ Regardless of the label Novelis chooses to apply, Davis's step-down assumption is contrary to law and unsupported by economics. *See Haman, Inc. v. Chubb Custom Ins. Co.*, 2021 WL 4749795, at *7 (N.D. Ala. Oct. 12, 2021) ("Regardless of the label Haman applies to its damages claims, Haman may not seek any damages . . . ."); *Nova Chems., Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 327-28 (3d Cir. 2009); Ex. D (Rebuttal ██████████████████████████████████.

██████████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████. Thus, there is no question that ██████████████████████████ is an improper attempt to

recover damages for patent misuse, and the Court should exclude this part of Davis' expert opinion.

**B.**     **Davis Improperly Includes Damages For Indirect Purchases By Novelis.**

Davis's overcharge analysis is also contrary to law because it ██████████████████████

██████████████████████████████████████████████████████████████

██████████. Black letter law states that an indirect purchaser—one who does not purchase directly

from the seller—cannot claim any overcharge antitrust damages: "Our decision in *Illinois*

*Brick* established a bright-line rule that authorizes suits by *direct* purchasers but bars suits

by *indirect* purchasers." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520 (2019); *see also Ill. Brick Co. v.*

*Illinois*, 431 U.S. 720, 734 (1977); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d

363, 369 (3d Cir. 2005) ("[O]nly direct purchasers from antitrust violators may recover damages in

antitrust suits."). And it is undisputed that ██████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████. Thus,

Novelis was not a direct purchaser as to those sales and cannot claim damages for them. *Hess*, 424

F.3d at 369. Because Davis nevertheless ████████████████████████████████████

██████████████, Davis Report at 147, that portion of her opinion must be excluded.

**III.**     **DAVIS' DAMAGES FOR THE REMAINING CLAIMS LACK ANY ANALYSIS**
            **AND ARE UNRELIABLE, CONFUSING, AND CONTRARY TO LAW.**

**A.**     **Davis' Opinion On Contract Damages Is Unreliable Because It Conflates**
          **Sherman Act And Contract Claims And Does Not Analyze Actual Loss.**

While Davis purports to estimate damages for Novelis' breach of contract claim, she does not

provide any analysis in support of her estimate. Instead, ███████████████████████
████████████████████████████████████████████. *See* Davis Report at 52;

Davis Tr.at ███████████████████████████████████████████████████████████████

███████████. This is legally incorrect: while a violation of the Sherman Act may entitle the plaintiff

to the entire amount of an "overcharge" without any showing of actual loss, breach of contract

plaintiffs are only entitled to the amount of actual loss, i.e., the amount of "overcharge" that is not

offset by savings, passed on, or otherwise mitigated. Davis' damages estimate is thus inconsistent

with contract law and untethered to any economic analysis of specific claims. Further, because Davis

conflates contract and antitrust damages, her opinion is likely to confuse the jury. *See Noskowiak v.*

*Bobst SA*, 2005 WL 2146073, at *5 (E.D. Wis. Sept. 2, 2005) ("Testimony based on an incorrect

legal standard may confuse the jury, and may be proscribed by the Court . . . .").

 Davis's estimate of contract damages is also flawed because it does not account for the

amounts Novelis earned from the alleged breach. Expectation damages for a contract claim are

measured by taking "the losses caused and gains prevented by defendant's breach, *to the extent that*

*are in excess of any savings made possible by nonperformance.*" *Atacs Corp. v. Trans World*

*Commc'ns*, 155 F.3d 659, 669 (3d Cir. 1998) (applying Pennsylvania law) (emphasis added)

(quotations omitted); *see also* 24 *Williston on Contracts* § 64:3 (4th ed.); *Crown Coal & Coke Co. v.*

*Powhatan Mid-Vol Coal Sales, LLC*, 929 F. Supp. 2d 460, 471 (W.D. Pa. 2013). In other words,

"damages = losses caused + gains prevented – savings made." *Contempo Design, Inc. v. Chicago*

*and N.E. Ill. Dist. Council of Carpenters*, 226 F.3d 535, 553 & n.14 (7th Cir. 2000). Davis did not

adhere to that formula, as ███████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. It is undisputed that, ████████

12



. Davis was *aware that* ████████████████████, yet she deliberately chose ███████████████████████████████ ██████████████████████████████████████████████ ███████████████. That statement is incorrect for contract claims, which *require* a reduction in damages ███████████████████. *See Atacs*, 155 F.3d at 669.

Davis also errs in asserting damages for sales that are unrelated to the contract in question. It is a truism that in a breach of contract claim, plaintiffs may only recover damages arising from a breach of the contract's terms. *Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co.*, 120 F. Supp. 3d 449, 456 (W.D. Pa. 2015) (Conti, J.). Here, the alleged breach is of the Arconic-Novelis 2012 license which, by its plain terms, only applied to purchases of A951 made *in connection with Ford's P552 program*. The agreement's pricing terms applied to the "Total Volume" of sales, which was defined as "the total amount ... of coils utilizing the [A951] Pretreatment Process ... and sold *for the Ford Motor Company P552 Program*." *See* Ex. G (Arconic-Novelis License) at 2, 4 (emphasis added). Thus, any contractual obligation Arconic might have had to set its royalty at $.015 per-pound of aluminum can at most apply to sales made in connection with the P552 program.

Yet, Davis's estimates include damages arising from Novelis' purchases of A951 f█████████ █████████████████████████████████. *See* Davis Report at 32 ███████████████ ██████████████████████████████████████████. The fact that there was no contract for non-P552 programs means Arconic could not have breached a contract with respect to those programs and further means that Novelis cannot claim damages for those programs. Davis's decision to ignore the contract's specific terms renders her estimate of contract damages contrary to

law, unreliable, and unhelpful to the jury. *Olin Corp.*, 2018 WL 1901634, at \*21.

### B.    Davis's Damages Analysis For Claims 6-9 Is Incomplete And Unreliable.

Davis's opinions regarding Novelis' sixth through ninth claims (relating to good faith and fair

dealing, intentional interference, and unfair competition) are also contrary to law and unreliable

because, like the contract claims, Davis simply *declares* that ████████████████████

█████ Davis Report at 22 n.97. As an initial matter, Davis does not even *offer* any opinions or

analysis on the amounts owed with respect to each claim. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Again, Davis' assumption that her Sherman Act overcharge analysis can simply be

transferred to these claims—with no further analysis or explanation to bridge the gap—is legally

incorrect; all these claims (even were they viable – something to be determined on summary

judgment) require either showing actual loss or proving different sources of damages, and Davis does

not consider or address these required elements. Claims for breach of the implied covenant of good

faith and fair dealing (sixth claim), for example, are subsumed in the underlying breach of contract

and require a showing of actual loss. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013);

*Greenwald Caterers Inc. v. Lancaster Host, LLC*, 2022 WL 1204154, at \*17-18 (E.D. Pa. April 22,

2022). The other claims are even farther afield; interference with contractual relations requires

showing actual loss from damage to *other* contractual relationships (e.g., Ford), while unfair

competition must involve some conduct *other* than a breach of contract. Davis does not address these

required elements and makes no analysis specific to these claims, leaving her estimates contrary to

law, unsupported, and unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (exclusion of

"opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

**C.  Davis's Damages Estimate Under the Robinson-Patman Act Is Contrary to Law.**

Davis's estimate of damages for Novelis' Robinson-Patman Act (RPA) claim (Novelis' twelfth claim) should also be excluded as contrary to law. Davis estimates in Alternative 3 that

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████ *Id.* In other words, her damages estimate rests on

the proposition that ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████.

That analysis is legally incorrect. An RPA price-discrimination plaintiff is not entitled to recover the difference in price standing alone; instead, a plaintiff must show that its price-disadvantage led to lost or reduced sales, and can only recover damages based on those lost sales. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1540 (3d Cir. 1990) (citing cases and stating that RPA damages "may not be based on the amount of discrimination, but [rather] on estimates of plaintiffs' sales absent the discrimination"); *see also J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 561-62 (1981). Davis admits that ████████████████████████████ ████████████████████████████████. Instead, Davis relies s████████████ ████████████████████████ which is legally insufficient to show damages for an RPA claim. Areeda ¶ 2371c2-3 (5th ed. 2021) ("[T]he disfavored purchaser's payment of a higher price ... is certainly not a sufficient basis from which to compute damages."); *Truett,* 451 U.S. at 561-62. Davis's RPA estimate should be excluded as unreliable and contrary to law.

## CONCLUSION

Arconic respectfully requests that the Court exclude the opinions of Julie Davis.

Dated: May 20, 2022

Respectfully submitted,

/s/ Courtland L. Reichman

Sarah O. Jorgensen (*Pro Hac Vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Tel: (404) 609-1040
sjorgensen@reichmanjorgensen.com

Christine E. Lehman (*Pro Hac Vice*)
Connor S. Houghton (*Pro Hac Vice*)
David A. King Jr. (*Pro Hac Vice*)
Adam Adler (*Pro Hac Vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW
Suite 800
Washington, DC 20006
Tel: (202) 894-7310
clehman@reichmanjorgensen.com
choughton@reichmanjorgensen.com
dking@reichmanjorgensen.com
aadler@reichmanjorgensen.com

Aaron M. Panner (*Pro Hac Vice*)
Collin R. White (*Pro Hac Vice*)
KELLOGG HANSEN TODD FIGEL &
FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 326-7900
apanner@kellogghansen.com
cwhite@kellogghansen.com

Courtland L. Reichman (*Pro Hac Vice*)
Caroline M. Walters (*Pro Hac Vice*)
Karlanna M. Lewis (*Pro Hac Vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Tel: (650) 623-1401
creichman@reichmanjorgensen.com
cwalters@reichmanjorgensen.com
klewis@reichmanjorgensen.com

Antoinette C. Oliver (PA I.D. #206148)
MEYER, UNKOVIC & SCOTT LLP
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222-2315
Tel: (412) 456-2800
aco@muslaw.com

*Attorneys for Plaintiffs Arconic Corp. and Howmet
Aerospace Inc.*

16

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 24, 2022, the foregoing was electronically served and filed by use of the court's ECF system.

*/s/ Courtland L. Reichman*