**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ARCONIC CORP., | : | |
| | : | Civil Action No. 2:17-cv-1434-JFC |
| and | : | |
| | : | JURY TRIAL DEMANDED |
| HOWMET AEROSPACE INC., | : | |
| | : | Senior District Judge |
| Plaintiffs and | : | Joy Flowers Conti |
| Counterclaim-Defendants, | : | |
| | : | |
| vs. | : | |
| | : | |
| NOVELIS INC., | : | |
| | : | |
| and | : | |
| | : | |
| NOVELIS CORP., | : | |
| | : | |
| Defendants and | : | |
| Counterclaim-Plaintiffs. | : | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ............................................................................................................. 1

   I.     NOVELIS' SHERMAN ACT CLAIM FAILS............................................. 1

       A.     Novelis Failed To Meet Its Burden Of Proffering Evidence Of Anticompetitive Effect................................................................. 1

       B.     Novelis Lacks Antitrust Standing To Seek Damages. ...................... 5

   II.    NOVELIS' ROBINSON-PATMAN ACT CLAIM FAILS. ......................... 6

   III.   NOVELIS LACKS STANDING TO CLAIM PATENT MISUSE............................ 8

   IV.   THE DAMAGES-LIMITATION CLAUSE IS ENFORCEABLE ........................... 10

CONCLUSION...................................................................................................... 10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019) .................................................................................5

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
  49 F.4th 520 (5th Cir. 2022) ........................................................................3

*Chase Mfg., Inc. v. Johns Manville Corp.*,
  2022 WL 522345 (D. Colo. Feb. 22, 2022) .................................................2

*Dr. Miles Med. Co. v. John D. Park & Sons Co.*,
  220 U.S. 373 (1911) .....................................................................................4

*E. Foods Servs., Inc. v. Pontifical Catholic Unv. Servs. Ass'n, Inc.*,
  357 F.3d 1 (1st Cir. 2004) ............................................................................4

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*,
  637 F.2d 105 (3d Cir. 1980) .........................................................................6

*Enter. Indus., Inc. v. Texas Co.*,
  240 F.2d 457 (2d Cir. 1957) .........................................................................6

*F.T.C. v. Actavis, Inc.*,
  570 U.S. 136 (2013) .....................................................................................4

*F.T.C. v. Morton Salt Co.*,
  334 U.S. 37 (1948) .......................................................................................7

*F.T.C. v. Qualcomm*,
  969 F.3d 974 (9th Cir. 2020) .......................................................................4

*Feesers, Inc. v. Michael Foods, Inc.*,
  591 F.3d 191 (3d Cir. 2010) ......................................................................6, 7

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
  32 F.4th 242 (3d Cir. 2022) ......................................................................2, 4

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  424 F.3d 363 (3d Cir. 2005) ......................................................................5, 6

*Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*,
  715 F. App'x 54 (2d Cir. 2017) ..................................................................10

*Innomed Labs, LLC v. ALZA Corp.*,
  368 F.3d 148 (2d Cir. 2004) ................................................................................8

*Kansas v. UtiliCorp United, Inc.*,
  497 U.S. 199 (1990) ...........................................................................................6

*Kimble v. Marvel Entm't, LLC*,
  576 U.S. 446 (2015) ...........................................................................................9

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) ....................................................................................1, 2, 3

*LucasArts Entm't Co. v. Humongous Entm't Co.*,
  870 F. Supp. 285 (N.D. Cal. 1993) ....................................................................4

*Meisels v. Meisels*,
  2021 WL 6125591 (E.D.N.Y. Dec. 28, 2021) .....................................................9

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009) .................................................................................1, 2, 3, 4

*Patel v. Dhaduk*,
  839 F. App'x 715 (3d Cir. 2020) .......................................................................10

*Polymer Dynamics, Inc. v. Bayer Corp.*,
  2000 WL 1146622 (E.D. Pa. Aug. 14, 2000) ...................................................10

*Royal Mile Co. v. UPMC*,
  2013 WL 5436925 (W.D. Pa. Sept. 27, 2013) (Conti, J.) ...................................6

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*,
  530 F.3d 204 (3d Cir. 2008) .........................................................................2, 7

*United States v. General Electric Co.*,
  272 U.S. 476 (1926) ...........................................................................................4

*United States v. Timken Roller Bearing Co.*,
  83 F. Supp. 284 (N.D. Ohio 1949) .....................................................................4

*US Airways, Inc. v. Sabre Holdings Corp.*,
  938 F.3d 43 (2d Cir. 2019) .................................................................................2

*Velocity Int'l, Inc. v. Celerity Healthcare Solutions, Inc.*,
  2012 WL 12895053 (W.D. Pa. Nov. 27, 2012) .................................................10

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko LLP*,
  540 U.S. 398 (2004) ...........................................................................................4

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
    546 U.S. 164 (2006)................................................................................................7

**State Cases**

*CWCapital Invs. LLC v. CWCapital Cobalt VR Ltd.*,
    182 A.D. 3d 448 (2020) ..........................................................................................9

*Hirsch v. Weisman*,
    189 A.D. 2d 643 (1993) ..........................................................................................9

*John B. Conomos, Inc. v. Sun Co., Inc. (R&M)*,
    831 A.2d 696 (Pa. Super. 2003)............................................................................10

*Leavitt-Berner Tanning Corp., v. Am. Home Assurance Co.*,
    129 A.D. 2d 199 (1987) ..........................................................................................9

*Logan-Baldwin v. L.S.M. Gen. Contractors, Inc.*,
    94 A.D. 3d 1466 (N.Y. App. Div. 2012) ..............................................................10

*New York Pepsi-Cola Distribs. Ass'n, Inc. v. Pepsico, Inc.*,
    240 A.D. 2d 315 (1997) ..........................................................................................9

**Federal Statutes**

Robinson-Patman Act .......................................................................................................1

Sherman Act..............................................................................................................1, 2, 3, 4

**Treatises**

Areeda & Hovenkamp, Antitrust Law 651 .....................................................................3

Novelis' theories are not cognizable as a matter of law.  It asks this Court to be the first in the country to endorse new causes of action that previously have been foreclosed by the case law.  It asks to be the first case post-*Leegin*, and contrary to other courts, to rule that a vertical price restraint is inherently anticompetitive and a claim can survive summary judgment with nothing more than the fact of the price restraint itself.  It asks that the Supreme Court's *Linkline* decision, and its application to Section 1 cases by the Third Circuit, be ignored in favor of a new antitrust claim limiting what parties can charge for their products.  It asks the Court to create a new rule that indirect purchasers can sue for damages without joining the party they purchased from, in direct violation of Third Circuit precedent.  It asks this Court to extend the near-defunct Robinson-Patman Act to circumstances it does not cover and to a damages theory that courts have rejected.  And it asks this Court to be the first to allow a stranger to invalidate a contract on the basis of patent misuse.  While Novelis would prefer to pay a lower price, the antitrust laws do not make courts central planners tasked with determining the reasonableness of prices, royalties, and profit margins.  The invitations to change well-settled law should be rejected.

## ARGUMENT

## I.     NOVELIS' SHERMAN ACT CLAIM FAILS.

### A. Novelis Failed To Meet Its Burden Of Proffering Evidence Of Anticompetitive Effect.

In <u>vertical</u> price restraint cases, a price effect alone does not count as an anticompetitive effect.  Dkt. 1000 at 6-9.  In other words – showing merely that the parties in a <u>vertical</u> arrangement agreed to keep prices at some minimum level (or higher than they would be otherwise) is insufficient as a matter of law to state a violation of Section 1.  Otherwise, *Leegin* and the rigorous economic theory on which it is based would be functionally eviscerated.  *Leegin Creative Leather Prods., Inc.*, 551 U.S. 877, 889-92 (2007).  *Leegin* recognized that vertical price restraints are not in and of themselves anticompetitive (as can be seen here where a vertical price restraint made Arconic willing

to share its IP with Novelis).[1]  This is consistent with the fact that Arconic is permitted to charge whatever it wants for A951, or to not sell it at all, under the holding of *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 442, 456 (2009).  Novelis previously argued that *linkLine* did not apply to Section 1 cases (contracts in restraint of trade).  That argument has since been foreclosed by the Third Circuit.  *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242 (3d Cir. 2022).  The *Linkline* rule that a company can charge whatever it wants for its products and services absent an antitrust duty to deal (indisputably absent here) reinforces the rule from *Leegin*.

Novelis does not engage with this argument or case law, *see* Dkt. 1000 at 7-8, instead citing cases that are <u>not about vertical price restraints</u>.  *See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 226 (3d Cir. 2008) (geographic restrictions in support of a horizontal conspiracy); *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 51 (2d Cir. 2019) (non-price restraints, cited discussion concerns rules for two-sided markets); *Chase Mfg., Inc. v. Johns Manville Corp.*, 2022 WL 522345, *4 (D. Colo. Feb. 22, 2022) (Section 2 monopolization and Section 1 tying).  In reality, Novelis is asking for this Court to become the first in the country to hold that merely by showing the existence of a vertical price restraint, a plaintiff meets its burden to show an anticompetitive effect.[2]

Novelis attempts to avoid the clear mandates of *Leegin* and *linkLine* by arguing that some other market changes the analysis – namely, the downstream market for A951-treated aluminum. But whether framed as raising the price of A951 pretreatment or raising the price of A951-treated aluminum, the theory is the same –that prices are higher because of this vertical restraint.  If higher

---

[1]   If "high" price alone were a concern, *Leegin's* decision to eliminate the per se rule would be strange indeed; *Leegin* instead was concerned with when a minimum price facilitates horizontal collusion or exclusion—none of which is at issue here.

[2] Novelis claims that this Court has already rejected Arconic's argument.  Nov. Br. at 2.  But this was at the *motion to dismiss* stage, determining that Novelis had plead enough to take discovery. Dkt. 252 at 7.  Now that discovery is over, Novelis has come up with no cognizable anticompetitive effect.  And *Leegin* was not previously addressed, nor had the Third Circuit issued the *Host* decision. Dkt. 252 at 5-8.

prices from a vertical restraint are not cognizable as anticompetitive effects, that downstream prices are higher cannot be cognizable either.[3]  Under binding case law, price effects alone are not enough to meet Novelis' burden of showing anticompetitive effect – and Novelis has pointed to no other facts to meet its burden.

Novelis suggests that there is something significant about the fact that Novelis is Arconic's "rival[] in the downstream aluminum market."  Nov. Br. at 3.  Novelis invokes the "raising rivals costs" theory, which is a theory of Section 2 exclusionary conduct.  *See* Nov. Br. at 5; *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 529 & n.4 (5th Cir. 2022) (discussing theory); Areeda & Hovenkamp, Antitrust Law 651 (raising rivals costs theory is a "sometimes useful but also incomplete definition of exclusionary practices").  But there is no Section 2 claim here, much less a claim that Novelis was foreclosed from making any sales, nor did its expert present such a theory of harm.  Dkt. 1001, SOMF ¶ 39.  At bottom, this is a repackaging of the "price squeeze" theory that the Supreme Court explained is "not cognizable under the Sherman Act."  *linkLine*, 555 U.S. at 442, 456 (describing "price squeeze" theory where a firm raises the cost of an input and also competes in the market for sales of the finished good).  Novelis' reference to intra-brand competition is equally unavailing: Arconic did not argue that intra-brand competition is legally irrelevant, just that inter-brand competition is the primary focus of Section 1, Dkt. 1000 at 8-9, but in any event, here, Novelis has conceded there is no intra-brand competition, SOMF ¶ 25.[4]

The rule of *Leegin* is consistent with other important antitrust principles that Novelis' theory

---

[3] Indeed, ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████ Reply SOMF ¶ 70.

[4] That the alleged restraint does not harm inter-brand competition is reinforced by the fact that, after Arconic filed its motion, █████████████████████████████████████
████████████████████████████████ Reply SOMF at 1.

violates.  Dkt. 1000 at 10-14.  First, the antitrust laws do not prevent a company from choosing with whom it wishes to deal and on what terms.  Dkt. 1000 at 10-12.  Novelis claims this has no relevance to an agreement case, despite the fact that the Third Circuit held it did just last year.  In *Host,* the plaintiff alleged that an agreement between an airport landlord and a beverage company violated Section 1 because it required the landlord to include provisions requiring plaintiff to only sell the beverage company's products.  *Host*, 32 F.4th at 253 & n.12.  The Third Circuit applied the rule of *Linkline* to Section 1 because "businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."  *Id*. at 250 (quoting *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009)).  Novelis' position that if a party enters a contract, it is not free to choose the prices on which it deals is inconsistent with governing case law.  *F.T.C. v. Qualcomm*, 969 F.3d 974, 998 (9th Cir. 2020); *E. Foods Servs., Inc. v. Pontifical Catholic Unv. Servs. Ass'n, Inc.*, 357 F.3d 1, 6 (1st Cir. 2004).[5]

Second, intellectual property owners can license rights to use a process with an agreement as to the price the finished product would be sold for.  Dkt. 1000 at 12-14.  Novelis cites no case to the contrary.[6]  Instead, Novelis suggests that *United States v. General Electric Co.*, 272 U.S. 476 (1926) ("*GE*"), is old and not good law, but it ignores that the Supreme Court recently recognized *GE*'s continued validity, *F.T.C. v. Actavis, Inc.*, 570 U.S. 136, 150 (2013); *see also LucasArts Entm't Co. v. Humongous Entm't Co.*, 870 F. Supp. 285, 289 (N.D. Cal. 1993).  While Novelis points out, Nov. Br. at 8 n.7, no case has had to rely on the statement that a "secret process may be the subject of . . . license to use with restrictions as to territory and prices," *Dr. Miles Med. Co. v. John D. Park &*

---

[5] Novelis again gestures at the idea that Ford's request that Arconic make A951 available has antitrust significance.  Nov. Br. at 5 n.4.  It has none.  Period.  *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko LLP*, 540 U.S. 398, 406 (2004).

[6] *United States v. Timken Roller Bearing Co.*, 83 F. Supp. 284 (N.D. Ohio 1949), which Novelis implies endorsed its theory, was a horizontal case and did no such thing.  *Id.* at 307.

*Sons Co.*, 220 U.S. 373, 402 (1911), that is for good reason – the cause of action is foreclosed by the law, so plaintiffs do not have a good faith basis to assert it.  No case has endorsed Novelis' theory.

**B.  Novelis Lacks Antitrust Standing To Seek Damages.**

As Arconic explained, the general rule is that a plaintiff may only recover damages from the alleged antitrust violator from which it directly purchased – i.e., the direct purchaser rule.  *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 369 (3d Cir. 2005).  In the Third Circuit, a plaintiff can recover damages from an upstream (vertical) alleged conspirator only if it also sues the alleged conspirator from which it directly purchased.  *Id.* at 376.  Novelis cites no case that would allow it to sue an alleged co-conspirator a vertical step removed from whom it does not purchase.

Novelis claims that it is a direct purchaser of A951.  It is, but from Chemetall.  Not from Arconic.  Legally, the plaintiff must purchase directly "from" the defendant.  *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520 (2019) ("we have consistently stated that the immediate buyers from the alleged antitrust violators may maintain a suit against the antitrust violators" and "that *indirect* purchasers who are two or more steps removed from the violator in a distribution chain may not sue" (quotations omitted)).  Thus, in *Pepper*, purchasers of apps were clearly purchasers from somebody (the "first purchaser" in Novelis' parlance), the question was whether they purchased directly from Apple or from the app developers.  *Id.* at 1520-21.  Because they purchased from Apple, they could sue Apple.  *Id.*  Here, Novelis directly purchases from Chemetall, and therefore can sue only Chemetall (unless it qualifies for the co-conspirator exception, which it does not).

Novelis claims its case is different from Third Circuit case law because it was the "first purchaser" outside of the conspiracy – but the plaintiff in all the cited cases was the "first purchaser" outside of the alleged conspiracy.  Dkt. 1000 at 15 (citing cases).  Likewise, nothing about the Third Circuit cases implies the direct purchaser rule is limited to the resale of a tangible good rather than one involving intangible rights used to make a tangible good.  *See* Nov. Br. at 9 (stressing resale of

product).  Indeed, this Court has applied the rule to vertical arrangements involving intangible rights. *Royal Mile Co. v. UPMC*, 2013 WL 5436925, at \*39 (W.D. Pa. Sept. 27, 2013) (Conti, J.) (applying co-conspirator exception case law to alleged conspiracy between insurance company and healthcare provider).  Finally, Novelis claims its case is distinct because the policy rationales for the direct purchaser rule are not present here.  Nov. Br. at 9.  But the *Illinois Brick* rule is a bright line rule, and does not permit a court to weigh policy implications when applying it; "even assuming that any economic assumptions underlying the *Illinois Brick* rule might be disproved in a specific case," the Supreme Court directs it is "an unwarranted and counterproductive exercise to litigate a series of exceptions."  *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 217 (1990).  *Howard Hess*, contrary to Novelis' suggestion, confirms this reading: it held that even where the policy concerns of *Illinois Brick* were absent, plaintiffs could not recover for sales through intermediaries that it had failed to sue.  *Howard Hess*, 424 F.3d at 377 & n.8.  In any event, here Novelis' theory does present a risk of duplicative recovery because Chemetall could sue (one of the rationales for the direct purchaser rule).

## II.  NOVELIS' ROBINSON-PATMAN ACT CLAIM FAILS.

"The Supreme Court [has] signaled that it was uninterested in permitting innovative applications of the RPA and would resist 'interpretation[s] geared more to the protection of existing competitors than to the stimulation of competition.'"  *Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 200 (3d Cir. 2010) (attribution omitted).

**Novelis Cannot Recover Damages**.  The black-letter law is that Novelis cannot recover RPA damages because it failed to show lost sales or profits.  Dkt. 1000 at 18.  Novelis again spins out its novel theory of RPA damages, wholly unsupported by case law.  *See* Dkt. 1029 at 5-7.  In fact, the cases Novelis cites reject using overcharge as a measure of RPA damages.  *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 118 n.6 (3d Cir. 1980); *Enter. Indus., Inc. v. Texas Co.*, 240 F.2d 457, 459 (2d Cir. 1957); *see also* Dkt. 972 at 12-15.

**Arconic and Novelis Are Not "Competing Purchasers."** The "competing purchasers" rule "prevents the application of the RPA to markets where the 'allegedly favored purchasers [bear] little resemblance to [the] large independent department stores or chain operations' that the RPA was intended to target." *Feesers, Inc.*, 591 F.3d at 198 (quoting *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 181 (2006)). Here, Arconic – the allegedly favored purchaser – bears no resemblance to "chain operations" ████████████████████████████████

████████ They are not like retailers that both buy salt, which they then put on their shelves and compete to sell to customers. *Cf. F.T.C. v. Morton Salt Co.*, 334 U.S. 37, 41-42 (1948). Rather, they enter into customer-specific bidding to sell customized aluminum (alloy, temper, etc.) to OEMs for specific vehicle parts. Then, they buy A951 from Chemetall to apply to that aluminum. SOMF ¶¶ 28-34, 44-46. That is the fact pattern in *Feesers*, *Volvo Trucks*, and *Toledo Mack*. Novelis claims these cases are irrelevant if a price difference affects head-to-head competition, Nov. Br. at 11, but *Feesers* involved exactly that situation – and the Third Circuit rejected that argument. *Feesers*, 591 F.3d at 204 ("[A]ssuming Feesers and Sodexo engaged in head-to-head competition, . . . the competing purchaser requirement would still not be satisfied"). Novelis also argues that here the parties bid for business after knowing the price of A951, Nov. Br. at 11 and n.8, but again *Feesers* addressed exactly that situation. *Feesers*, 591 F.3d at 199 ("[T]he dealers always knew what discounts they could offer a customer before submitting their bids to the customer."). And Novelis claims these cases do not deal with parties bidding on the same contracts, Nov. Br. at 10, but again that is incorrect. *See Toledo Mack Sales & Serv., Inc.*, 530 F.3d at 228.

**Novelis and Arconic Do Not Purchase Goods of Like Grade and Quality**. In response to Arconic's argument, Novelis relies on its expert's attempts to disaggregate the chemical from the overall package, but it has no legal support for doing so. It would make the RPA quite a strange

statute if it required that the owner of intellectual property associated with a product could not buy that product itself for less money than the price others pay.  Also, Novelis gives no convincing argument for how any part of A951 can be separated as a "commodity" from the intangible.[7]



SOMF ¶ 40.

### III.    NOVELIS LACKS STANDING TO CLAIM PATENT MISUSE.

*Brulotte* patent misuse is an affirmative defense to a claim of patent infringement or breach of contract.  Dkt. 1000 at 18-20; Dkt. 1029 at 1-3.  Novelis' theory is that a third party is permitted to invalidate a contract to which it is not a party on the basis of patent misuse.  Novelis is unable to identify a single case allowing a third party to bring such a claim.  Instead, it cites irrelevant cases allowing licensees to challenge the validity of patents they licensed, Nov. Br. at 17.  Novelis claims that strangers to a contract can challenge validity in order to "vindicat[e] … critical federal patent law principles," *id.*  Under Novelis' theory, every Big Mac eater can sue McDonald's if they think McDonald's misused patents in contracts with its franchisees.  That is not the law.

---

[7] Novelis' reliance on *Inmomed Labs, LLC v. ALZA Corp.*, 368 F.3d 148, 159 n.3 (2d Cir. 2004), is misplaced because there the court simply held that exclusive distribution rights and the price of a tangible good can be disaggregated, which is different than the situation here.

[8]

Nor do Novelis' contract law arguments advance its cause.  First, Novelis' reliance on a

purported "direct harm" exception does not help it.  Nov. Br. at 18.  Novelis has not identified a valid

cause of action – it has cited no case that would allow a third party to bring a free-standing *Brulotte*

claim – and the cases it cites do not allow third parties to seek to invalidate a contract without a cause

of action.  *See Meisels v. Meisels*, 2021 WL 6125591, at *2 (E.D.N.Y. Dec. 28, 2021) (plaintiff "did

not bring an action to invalidate the [contract]; instead, the defendants invoked the contract *as a*

*defense* to [plaintiff's] conversion claim . . . . It should go without saying that [plaintiff] is entitled,

under those circumstances, to dispute the validity of the contract.").  Besides, what Novelis

challenges is the royalty Arconic charges Chemetall, which does not "directly harm" Novelis.

Second, Novelis' belated claim to be a third-party beneficiary fails because it cannot

demonstrate that Chemetall and Arconic intended Novelis to have rights under the contract.  *Leavitt-*

*Berner Tanning Corp., v. Am. Home Assurance Co.*, 129 A.D. 2d 199, 202 (1987); *New York Pepsi-*

*Cola Distribs. Ass'n, Inc. v. Pepsico, Inc.*, 240 A.D. 2d 315, 315 (1997) (it is "settled that a

sublicensee is not a third-party beneficiary of a contract between a licensor and direct licensee").[9]

Nor is Novelis suing to enforce a promise made for its benefit, and that is all that third-party

beneficiaries may do.  *CWCapital Invs. LLC v. CWCapital Cobalt VR Ltd.*, 182 A.D. 3d 448, 452-53

(2020).  Novelis cited no case, and Arconic is aware of none, where a third-party beneficiary was

permitted to sue to invalidate contract provisions.

Finally, while the Court need not reach the substance of patent misuse beyond recognizing

Novelis has no cause of action for patent misuse, Novelis misstates the holding of *Kimble v. Marvel*

*Entm't, LLC*, 576 U.S. 446 (2015).  That case did not hold that "post-expiration royalties must step

---

[9]Novelis' claim is also barred because it cannot be a third-party beneficiary without knowing
the terms of the agreement.  Dkt. 256 at 5; *Hirsch v. Weisman*, 189 A.D. 2d 643, 644 (1993).

down," Nov. Br. at 15, it only gave an example in which there was a royalty step down.[10]

## IV.    THE DAMAGES-LIMITATION CLAUSE IS ENFORCEABLE

Novelis' arguments do not avoid the damages-limitation clause.  Willful or bad faith breach is not sufficient; "[a]bsent fraud or unconscionability, courts should not set aside terms on which sophisticated parties agreed." *John B. Conomos, Inc. v. Sun Co., Inc. (R&M)*, 831 A.2d 696, 708 (Pa. Super. 2003).[11]  Novelis' authority *Polymer* is consistent with Pennsylvania law.  *See Polymer Dynamics, Inc. v. Bayer Corp.*, 2000 WL 1146622, at *9 (E.D. Pa. Aug. 14, 2000) (fraud allegations).  While Novelis' other cited case, *Velocity Int'l, Inc. v. Celerity Healthcare Solutions, Inc.*, 2012 WL 12895053, at *1 (W.D. Pa. Nov. 27, 2012), states that bad faith is sufficient, to the extent that this allows something less than "willful or wanton conduct" rising to the level of fraud, this holding is in tension with the holding in *Conomos*.  *See Patel v. Dhaduk*, 839 F. App'x 715, 718 (3d Cir. 2020) ("With no Pennsylvania Supreme Court precedent on point, we turn to intermediate appellate state courts for guidance.")

Here, Novelis appears to concede that the limitation-of-damages clause applies to Counterclaim II, as it is silent on Arconic's conduct regarding the termination.  As to Counterclaim III, even taking Novelis' claimed facts as true, they do not rise to the level of fraud required to invalidate a contract provision agreed to by sophisticated parties.

## CONCLUSION

Arconic respectfully requests that its Motion for Partial Summary Judgment be granted.

---

[10] Contrary to Novelis' description of *Logan-Baldwin v. L.S.M. Gen. Contractors, Inc.*, 94 A.D. 3d 1466, 1468 (N.Y. App. Div. 2012), that case said nothing about "challeng[ing] a contract," Nov. Br. at 18, and instead dealt with *enforcing* a contract.  *Logan-Baldwin*, 94 A.D. at 1468.

[11] *See Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, 715 F. App'x 54, 56 (2d Cir. 2017) (noting the Third Circuit and Pennsylvania courts have suggested "fraud coupled with bad-faith breach of contract" may "invalidate an otherwise enforceable limitation of liability clause.").

Dated: January 17, 2023

Respectfully submitted,

*/s/ Courtland L. Reichman*

Sarah O. Jorgensen (*Pro Hac Vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Tel: (404) 609-1040
sjorgensen@reichmanjorgensen.com

Christine E. Lehman (*Pro Hac Vice*)
Connor S. Houghton (*Pro Hac Vice*)
David A. King Jr. (*Pro Hac Vice*)
Adam Adler (*Pro Hac Vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW
Suite 800
Washington, DC 20006
Tel: (202) 894-7310
clehman@reichmanjorgensen.com
choughton@reichmanjorgensen.com
dking@reichmanjorgensen.com
aadler@reichmanjorgensen.com

Aaron M. Panner (*Pro Hac Vice*)
Collin R. White (*Pro Hac Vice*)
KELLOGG HANSEN TODD FIGEL &
FREDERICK PLLC
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 326-7900
apanner@kellogghansen.com
cwhite@kellogghansen.com

Courtland L. Reichman (*Pro Hac Vice*)
Caroline M. Walters (*Pro Hac Vice*)
Karlanna M. Lewis (*Pro Hac Vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Tel: (650) 623-1401
creichman@reichmanjorgensen.com
cwalters@reichmanjorgensen.com
klewis@reichmanjorgensen.com

Antoinette C. Oliver (PA I.D. #206148)
MEYER, UNKOVIC & SCOTT LLP
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222-2315
Tel: (412) 456-2800
aco@muslaw.com

*Attorneys for Plaintiffs Arconic Corp. and Howmet
Aerospace Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 17, 2022 the foregoing PLAINTIFFS' REPLY IN

SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT was electronically served and

filed by use of the court's ECF system.

*/s/ Courtland L. Reichman*
Courtland L. Reichman
