IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARCONIC CORPORATION AND HOWMET AEROSPACE INC.**, | ) CIVIL ACTION NO. 17-1434 ) |
| Plaintiffs and Counterclaim Defendants, | ) JUDGE JOY FLOWERS CONTI ) ) ) ) |
| v. | ) ) |
| **NOVELIS INC.** *and* **NOVELIS CORP**, | ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) |

**MEMORANDUM OPINION**

I.   Introduction

Pending before the court are *Daubert* motions (ECF Nos. 857, 859) filed by Arconic Corporation and Howmet Aerospace, Inc. (collectively, "Arconic") to preclude the testimony of Julie Davis ("Davis"), the damages expert engaged by Novelis Inc. and Novelis Corporation (collectively, "Novelis"). The court held two days of oral argument on June 28 and June 29, 2022. The special master was present and able to participate. (Transcripts, ECF Nos. 935, 940, under seal).

The *Daubert* motions were referred to the special master for report and recommendation ("R&R"). The special master filed R&R #43 (ECF No. 965), which recommended that the motions be denied in part, but recognized that certain issues were intertwined with legal disputes that must be resolved by the court. Timely objections to the R&R were filed by Arconic (ECF No. 972). Responses to the objections were filed by Novelis (ECF No. 1005). The motions and objections are ripe for disposition.

This opinion will also address two related legal matters with respect to Novelis' claimed damages: (1) whether Novelis can recover treble damages for the alleged violation of the Robinson Patman Act ("RPA"), 15 U.S.C. § 13; and (2) the need for summary judgment to resolve certain issues concerning the alleged breach by Arconic of the 2012 Technology Access & License Agreement dated August 15, 2012, between Arconic and Novelis (the "2012 License") (ECF No. 1-3). Although many of the related filings are sealed, the court concludes that this opinion will not be sealed.

II. Factual and Procedural Background

Arconic and Novelis are competitors in the aluminum industry. Ford Motor Company ("Ford") decided to make its popular F-150 pickup truck with aluminum, starting with the 2015 model year. Arconic's A951 pretreatment process (the "A951 process") was selected for exclusive use in the Ford F-150 project. Ford was unwilling to be dependent upon a sole supplier. As a condition of selection, therefore, Ford forced Arconic to license its A951 process technology to Novelis. Arconic initiated this lawsuit, alleging that Novelis disclosed Arconic's trade secrets and confidential information. Novelis filed numerous counterclaims.

Davis was engaged to offer expert opinions relating, among other matters, to certain of Novelis' counterclaims with respect to the amount of damages suffered by Novelis resulting from: (1) an alleged antitrust violation of the Sherman Act § 1; (2) an alleged violation of the RPA; and (3) Arconic's alleged breach of the 2012 License. Davis Report (ECF No. 848-2 at 6).[1] With respect to damages under the Sherman Act § 1, Davis estimated the overcharge by calculating the difference between the amount Novelis actually paid and the price Novelis would

---

[1] Davis also offered opinions on several counterclaims that were subsequently withdrawn by Novelis and opined on whether Arconic incurred damages for the alleged disclosure of the "7 CI."

have paid but for Arconic's control of the price for which Chemetall could sell the A951 chemical composition. As instructed by counsel, Davis did not reduce damages for any portion of the overcharge that may have been passed on to Ford by way of an "adder." Davis Report at 27. Davis performed several alternative calculations for antitrust damages based on different assumptions. Davis Report at 55.

Davis did not perform a separate calculation of damages for Novelis' RPA and breach of contract counterclaims. Instead, she opined that her calculation of the overcharge on the antitrust theory (and, in particular, her final alternative model) served as a conservative estimate of the RPA and the breach of contract damages. Davis Report at 56.

The court will first resolve the *Daubert* motion and objections to R&R #43 with respect to the Sherman Act § 1 damages. The court will next address the RPA damages disputes raised in the summary judgment motions. Finally, the court will provide notice and opportunity to be heard, pursuant to Federal Rule of Civil Procedure 56(f), why partial summary judgment should not be granted in favor of Arconic on: (a) Novelis' counterclaim II with respect to only nominal damages being appropriate for wrongful termination of the 2012 License; and (b) Novelis' counterclaim III with respect to liability for alleged breach of the 2012 License.

### III.     R&R #43 (Davis)

#### A. *Daubert* standard

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of

the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594-95 (1993), the Supreme Court explained that the burden is on the party offering expert opinion to show: (1) qualifications of the witness; (2) methodology/reliability; and (3) fit. *See Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The court acts as a gatekeeper and is required to exclude opinion testimony that does not meet these three requirements. *Schneider*, 320 F.3d at 404 (citing *Daubert*, 509 U.S. at 592).

The "qualification" prong requires that the witness possess specialized expertise. *Schneider*, 320 F.3d at 404. For an expert report to be deemed reliable, it must be grounded in acceptable principles and methodology, provide a detailed, substantive rationale with respect to the basis and reasons for the proffered opinions and explain factually why and how the witness reached those opinions. *Torain v. City of Philadelphia*, No. CV 14-1643, 2023 WL 174952, at *5 (E.D. Pa. Jan. 12, 2023) (citations omitted). For expert testimony to meet the "fit" requirement, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. As explained in *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 513 (3d Cir. 2005), there must be a "relevant connection between that methodology and the facts of the case." The proffered expert testimony "must in fact assist the jury, by providing it with relevant information, necessary to a reasoned decision of the case." *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp.2d 417, 420 (W.D. Pa. 2006).

### B.  Sherman Act § 1

Davis' primary damages analysis addressed counterclaim XI, in which Novelis asserts against Arconic an antitrust violation under the Sherman Act § 1. Davis' damages opinions are

based on the assumption that Novelis will be able to prove Arconic's liability. *See Lewis v. Gov't Emps. Ins. Co.*, No. 18-5111, 2022 WL 819611, at *4 (D.N.J. Mar. 18, 2022) (noting that because all damages expert opinions are based on the assumption that liability has been proven, a challenge to methodology that assumed unlawful conduct "is not a valid basis to exclude an expert's opinion."). "An expert is ... permitted to base [her] opinion on a particular version of disputed facts" with the weight to be afforded to the opinion to be determined by the finder of facts. *Walker v. Gordon*, 46 F. App'x 691, 695-96 (3d Cir. 2002).

Davis is entitled to assume that Arconic committed an antitrust violation. Arconic's arguments -- that its conduct was pro-competitive and it had a right to charge whatever Novelis was willing to pay -- attack liability and, therefore, are not valid reasons for a *Daubert* challenge against a damages expert. If Arconic prevails on its summary judgment challenges to the Sherman Act § 1 claim, the court will reevaluate whether Davis' opinions "fit." If the opinions "fit," Arconic will have ample opportunity to cross-examine Davis about her methodology and her underlying assumptions. In particular, Arconic will be able to challenge Davis' opinions about the economically-rational behavior of Arconic, Chemetall, Novelis and Ford.

Davis offered, among several alternative calculations, opinions that the Sherman Act § 1 damages would include damages for patent-misuse (i.e., Arconic should have stepped down its royalty to avoid a *Brulotte* violation). *See* Davis Report at 49-53. The Sherman Act § 1 damages opinions are distinct from Novelis' separate request in counterclaim XIII for declaratory relief for the alleged *Brulotte* violation.[2] The special master concluded that Davis' damages opinions

---

[2] In a separate opinion with respect to the pending summary judgment motions, the court will address whether declaratory relief is appropriate on Novelis' *Brulotte* Declaratory Judgment claim (counterclaim XIII). As part of the summary judgment motions, the special master will recommend whether *Brulotte*-type damages are a cognizable element of the damages Novelis can recover under the Sherman Act § 1 (counterclaim XI).

5

about the royalty step-down are "not contrary to law for purposes of the *Daubert* analysis." (R&R #43, ECF No. 965 at 9). The court agrees with the special master that the legal disputes about antitrust damages are more appropriate for resolution in the pending summary judgment motions.[3]

### C. Conclusion with respect to Sherman Act § 1 damages

The court agrees with the Sherman Act § 1 analysis in R&R #43 (ECF No. 965 at 4-10), which will be adopted as supplemented herein. Arconic's *Daubert* challenges to Davis' Sherman Act § 1 antitrust damages opinions will be denied without prejudice to be addressed, if necessary, after resolution of the pending summary judgment motions.

### IV. Summary judgment -- legal dispute about RPA damages

The court needs to resolve a legal issue that was raised in the parties' cross-motions for summary judgment about damages under the RPA (ECF Nos. 988, 1003). The issue, however, is intertwined with the *Daubert* motions and impacts the scope of Davis' testimony.

Novelis seeks both injunctive relief and treble damages for Arconic's alleged violations of § 2(f) of the RPA (counterclaim XII) (ECF No. 721 at 68). Novelis filed a motion for summary judgment asserting that it can recover treble damages under the RPA (ECF No. 988). Arconic filed a cross-motion for partial summary judgment (ECF No. 1003) asserting that Novelis cannot recover treble damages under § 4 of the Clayton Act for the RPA violation.

Arconic contends that Novelis cannot recover treble damages under § 4 of the Clayton Act because Novelis failed to meet its burden to prove "actual injury" in the form of lost sales or lost profits. Novelis argues that it met its prima facie case by showing a reasonable possibility that a

---

[3] The summary judgment disputes about the Sherman Act § 1 (counterclaim XI) were referred to the special master for R&R.

price difference may harm competition (i.e., the *Morton Salt* presumption) and Arconic failed to rebut the presumption by proving that the price difference was not the reason Novelis lost sales or profits. In other words, the parties disagree on who has the burden, and whether actual loss or merely a reasonable expectation of loss is required.

Under Third Circuit Court of Appeals precedent, the standard of proof differs depending on whether the plaintiff seeks injunctive relief or treble damages. The recovery of treble damages requires more than proof of the prima facie case. A plaintiff need only show a reasonable possibility of harm (i.e., "competitive injury") to obtain injunctive relief, but must show "actual injury" to obtain treble damages. As explained in *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524 (3d Cir. 1990):

> In order to establish a **prima facie** violation of section 2(a) of the Act, a plaintiff must demonstrate a **reasonable possibility** that a price difference may harm competition. *Falls City Industries*, 460 U.S. at 435, 103 S.Ct. at 1288 (1983), citing *Corn Products Refining Co. v. FTC*, 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320 (1945). "In keeping with the Act's prophylactic purpose, [designed to prevent the occurrence of price discrimination rather than to provide a remedy for its effects], section 2(a) does not require that the discrimination must in fact have harmed competition." *Falls City Industries*, 460 at 435, 103 S.Ct. at 1288, quoting *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442 (1981). Instead, **a reasonable possibility of harm**, often referred to as **competitive injury**, must be shown. Demonstrating competitive injury as part of a prima facie case **suffices to support injunctive relief** and implicates further examination of a plaintiff's entitlement to treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15. **To recover treble damages a plaintiff must prove more** than a violation of section 2(a); it must show the extent of **actual injury attributable to the harm to competition**. *Texaco v. Hasbrouck*, 496 U.S. 543, —— ——, 110 S.Ct. 2535, 2543–44, 110 L.Ed.2d 492 (June 14, 1990), citing *J. Truett Payne*, 451 U.S. at 562, 101 S.Ct. at 1927.

*Id.* at 1531 (emphasis added).

In *Spartan Concrete Products, LLC v. Argos USVI, Corp.*, 929 F.3d 107, 113 (3d Cir. 2019), the Third Circuit Court of Appeals reaffirmed this distinction:

> After establishing a prima facie case for a § 2(a) violation, a plaintiff must satisfy

7

§ 4 of the Clayton Act—the treble damages provision—to recover damages. *Stelwagon Mfg. Co. v. Tarmac Roofing Sys. Inc.*, 63 F.3d 1267, 1273 (3d Cir. 1995). To recover, the plaintiff must have proof of antitrust injury—"some showing of actual injury attributable to something the antitrust laws were designed to prevent."

*Spartan Concrete*, 929 F.3d at 113.

Novelis, as the plaintiff, has the burden to provide direct evidence of actual injury in order to recover treble damages. As explained in *Spartan Concrete*:

> [T]here must be some direct evidence of injury to support an award of damages." *Id.* at 1274 (citation omitted) (quoting *J.F. Feeser v. Serv-A-Portion, Inc*, 909 F.2d 1524, 1540 (3d Cir. 1990)). We have explained that the "relaxed measure of proof is afforded to the amount, not the causation of loss—the nexus between the defendant's illegal activity and the injuries suffered must be reasonably proven."

*Id.* The court reiterated: "plaintiff could not recover antitrust damages because it 'failed to present any direct evidence of lost sales or profits caused by the discriminatory pricing.'" *Id.* at 114 (quoting *Stelwagon*). The court concluded in *Spartan Concrete* that the plaintiff failed to provide sufficient evidence to recover antitrust damages. In *Stelwagon*, the court of appeals reversed a jury award of treble damages and held that the claim for damages for violation of the RPA must fail for lack of direct evidence of lost sales or profits.

Novelis is not entitled to automatic damages in the amount of the overcharge. The court clearly rejected that argument in *Spartan Concrete*:

> Spartan's alternate argument that it should receive $181,429 in overpayment as a direct loss is likewise invalid. A plaintiff seeking damages under § 4 of the Clayton Act for a § 2(a) violation of the Robinson-Patman Act is not entitled to 'automatic damages' in the amount of the price discrimination."

*Id.* at 115 n.2. Novelis argues that it is seeking damages for the overcharge to itself, rather than an undercharge to its competitors. It is undisputed, however, that there is no evidence in the record of lost sales or lost profits caused by the alleged RPA violation. *See* Arconic Combined Concise Statement of Material Facts ("Arconic CCSMF") ¶ 39 (ECF No. 1052).

On instruction of counsel, Davis did not do a separate RPA damages analysis based on lost

8

sales or lost profits. The Third Circuit Court of Appeals has rejected similar expert testimony. *See Spartan Concrete*, 929 F.3d at 114 ("In *Stelwagon*, we deemed inadequate expert testimony that "failed to sufficiently link any decline in [Plaintiff's sales] to price discrimination" and noted that the plaintiff did not identify a single lost customer.") (citing *Stelwagon*, 63 F.3d at 1275-76). In *Vernon Walden, Inc. v. LIPOID GmbH*, No. CIV. 01-4826DRD, 2005 WL 3088333 (D.N.J. Nov. 17, 2005), the court rejected expert testimony that was based on a price differential, but not actual lost sales, and explained:

> As in *Stelwagon,* the expert in the instant case established substantial price differentials which justified a finding of competitive injury. As in *Stelwagon,* the expert in the instant case made certain assumptions on the basis of which he computed the lost profits of the disfavored customer. But, as in *Stelwagon,* the expert failed to base his conclusions on actual lost sales resulting from the discriminatory pricing. This, as in *Stelwagon,* is insufficient to establish Section 4 damages.

*Id.* at *10. Davis' RPA damages opinions suffer from the same flaw and must be excluded. Davis will not be permitted to testify about damages for violation of the RPA.[4]

The "*Morton Salt* inference" (i.e., the court may infer competitive injury from a price difference over time) applies to injunctive relief; but not to a treble damages claim. To recover treble damages, Novelis must show direct evidence of actual lost sales or lost profits caused by the price differential. It failed to do so. Arconic's motion for summary judgment (ECF No. 1003) will be granted in part, and Novelis' motion for summary judgment (ECF No. 988) will be denied in part, in that Novelis cannot recover damages for the alleged RPA violation in counterclaim XII. This decision does not affect an analysis about whether Novelis is able to obtain injunctive relief on the RPA counterclaim, which will be the subject of an R&R by the special master in connection with the summary judgment motions.

---

[4] In R&R #43, the special master recognized that the legal disputes about RPA damages should be resolved by the court in the context of summary judgment.

V.   Alleged breach of the 2012 License

Novelis asserts three counterclaims with respect to the 2012 License. In counterclaim I, Novelis seeks declaratory relief for Arconic's alleged wrongful termination of the 2012 License.[5] In counterclaim II, Novelis seeks damages for Arconic's alleged wrongful termination of the 2012 License. In counterclaim III, Novelis seeks damages for Arconic's alleged breach of the pricing provision in the 2012 License, § 3.5.1.

The 2012 License is governed by Pennsylvania law and triable issues concerning the 2012 License will be resolved by the court because the parties waived their rights to a jury trial. §§ 9.1, 9.3. It appears to the court that partial summary judgment should be granted in favor of Arconic on counterclaim II with respect to only nominal damages being available; and on counterclaim III, with respect to liability.

A. Counterclaim II

In counterclaim II, Novelis seeks damages for Arconic's alleged wrongful termination of the 2012 License. Novelis agreed to withdraw its request for declaratory judgment (counterclaim I) about the wrongful termination of the 2012 License, in light of Arconic's assurances that it would continue to permit its A951 chemical formulation to be supplied to Novelis (ECF No. 1081). Davis did not offer an expert opinion about any damages incurred by Novelis in connection with counterclaim II. Because Chemetall has continued to supply the A951 chemical composition to Novelis at the same price through the present, it appears that Novelis did not incur any damages as a result of the wrongful termination of the 2012 License alleged in counterclaim II, leaving only nominal damages available. (*See* ECF No. 969 at 12)

---

[5] Counterclaim I will be addressed in a separate opinion. Novelis agrees that declaratory relief is no longer necessary (ECF No. 1081).

(discussing nominal damages).

Pursuant to Federal Rule 56(f), the court hereby gives Novelis notice and an opportunity to be heard why partial summary judgment should not be granted in favor of Arconic with respect to damages recoverable under counterclaim II being limited to nominal damages.

### B.  Counterclaim III

In Counterclaim III, Novelis seeks damages for breach of § 3.5.1 of the 2012 License.  In relevant part, § 3.5.1 provides that upon commercialization of the A951 technology, "market forces will dictate the price" at which Chemetall sold the A951 chemicals and Arconic promised to "make commercially reasonable efforts to ensure that Novelis is not disadvantaged relative to **any other competitor**" in any agreement between Arconic and Chemetall commercializing A951.  2012 License § 3.5.1 (emphasis added).

The parties present classic textual ambiguity arguments about whether Arconic breached the pricing provision.  Novelis reads the phrase "any other competitor" to mean "any competitor."  Arconic reads it to mean "any competitor other than Arconic."  This issue was not directly raised in the parties' summary judgment briefing, but would be dispositive of counterclaim III.  If there is no breach by Arconic, the court need not resolve the parties' disputes about the measure of damages and any opinions by Davis about breach of contract damages would not "fit."

As the court explained on the record at the oral argument on February 7, 2023, Arconic's interpretation of § 3.5.1 appears correct.  Tr. at 5-6.  Arconic is not an "other competitor."  Arconic invented the A951 chemical and is entitled to earn royalties for its invention.  Novelis asks the court to ignore the word "other," rendering it surplusage.  *Colautti v. Franklin*, 439 U.S.

11

379, 392 (1979) (faced with two readings, one of which gives each word meaning and another that makes a phrase surplus, courts should follow the "elementary canon of construction" against surplusage).

Novelis alleges only an overcharge which favored Arconic (ECF No. 721 ¶ 324) ("Novelis has been disadvantaged relative to Arconic in that Novelis had to pay higher prices and incur larger costs for using commercialized '[Arconic] Technology and Know-How' than Arconic."). There is no evidence that any competitor (other than Arconic) received a more favorable price than Novelis. Arconic CCSMF ¶¶ 15, 16, 20.

Pursuant to Federal Rule 56(f), the court hereby gives Novelis notice and an opportunity to be heard why summary judgment should not be granted in favor of Arconic on counterclaim III.

V. Conclusion

In summary, for the reasons set forth above, R&R #43 will be adopted in part as supplemented in this opinion with respect to the Sherman Act § 1 damages; and not accepted in part, with respect to RPA and breach of contract damages. As the special master correctly recognized, the legal principles governing damages under the RPA and for breach of contract are more appropriate for resolution by the court as part of the summary judgment disputes.

Arconic's *Daubert* motions to exclude Davis' testimony (ECF Nos. 857, 859) will be granted in part and denied in part.[6] Arconic's motion for summary judgment (ECF No. 1003) will be granted in part, and Novelis' motion for summary judgment (ECF No. 988) will be

---

[6] The court may reevaluate whether Davis' testimony about the Sherman Act § 1 damages will "fit" after the summary judgment motions are finally resolved.

denied in part, in that Novelis cannot recover treble damages for the alleged RPA violation.[7] Davis will not be permitted to offer opinions about RPA damages.

Pursuant to Rule 56(f), Novelis shall show cause on or before April 5, 2023, why partial summary judgment should not be granted on counterclaims II and III, for alleged breach of the 2012 License. Arconic may file a response on or before April 26, 2023. The court will deny without prejudice Arconic's *Daubert* arguments about the limitation of liability clause, 2012 License § 6.3, and windfall damages, and will permit those arguments to be reasserted if counterclaims II or III survive summary judgment.

An appropriate order follows.

Dated: March 8, 2023

By the Court:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge

---

[7] The other issues raised in the motions at ECF Nos. 988 and 1003 will be decided separately, some of which involve an R&R by the special master, subject to objections, if any, and resolution by the court.